1
2
3
4
5
6
7
8                       UNITED STATES DISTRICT COURT

9                      NORTHERN DISTRICT OF CALIFORNIA

10                             San Francisco Division

11   IAN VIANU and IRINA BUKCHIN, on          Case No. 19-cv-03602-LB
     behalf of themselves and all others similarly
12   situated,
                                              **ORDER DENYING MOTION TO**
13                  Plaintiffs,               **DISMISS**

14           v.                               Re: ECF No. 67

15   AT&T MOBILITY LLC,

16                  Defendant.

17                                     **INTRODUCTION**

18       Plaintiffs Ian Vianu and Irina Bukchin, both California residents, have wireless-service

19   contracts with AT&T Mobility LLC. On behalf of themselves and a putative class of similarly

20   situated California consumers, they sued AT&T, claiming that AT&T offers so-called flat monthly

21   wireless-service plans and — after the customers sign up for the wireless-service contracts at that

22   rate — adds an "Administrative Fee" that it misleadingly suggests is a legitimate surcharge (like a

23   government-type surcharge) when it is just an unfair and deceptive scheme to boost its monthly

24   rates.[1] The complaint has five California state-law claims: (1) unfair, unlawful, and fraudulent

25   conduct, in violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §

26

27   _____

28   [1] Compl. – ECF No. 1 at 2–3 (¶¶ 1–5). Citations refer to material in the Electronic Case File ("ECF");
     pinpoint citations are to the ECF-generated page numbers at the top of documents.

ORDER – No. 19-cv-03602-LB

United States District Court
Northern District of California

1    17200 *et seq.*; (2) untrue and misleading advertising, in violation of California's False Advertising

2    Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*; (3) deceptive conduct, in violation of

3    California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*; (4) a claim

4    for public-injunctive relief to permanently enjoin the false advertising and deception, in violation

5    Cal. Civ. Code § 3422; and (5) breach of the implied covenant of good faith and fair dealing.[2]

6    Claims one through three and five are class claims, and claim four is an individual claim (as are

7    the other claims, to the extent that they seek public-injunctive relief).[3]

8        AT&T moved to dismiss the plaintiffs' claims on the following grounds: (1) the contract's

9    100-day limitations period bars all claims; (2) the statute of limitations bars all claims; (3) the

10   plaintiffs' voluntary payment (with knowledge of the facts) bars their recovery for restitution and

11   damages under the UAL, FAL, and breach of the implied covenant of good faith and fair dealing

12   (a theory called the voluntary-payment doctrine); (4) the plaintiffs did not plausibly allege reliance

13   on the purported misstatements about the Administrative Fee, which bars their UCL, FAL, and

14   CLRA claims; and (5) the plaintiffs lack Article III standing to pursue injunctive relief.[4]

15       The court denies the motion to dismiss on the following grounds: (1) the court does not

16   enforce the 100-day contractual provision; (2) under the continuous-accrual doctrine, the claims

17   are timely under the relevant statutes of limitations; (3) the court does not reach the voluntary-

18   payment doctrine at the pleadings stage; (4) the plaintiffs pleaded reliance plausibly; and (5) the

19   plaintiffs have Article III standing. The court grants the motion to the extent that it holds that the

20   discovery rule does not apply, and AT&T's conduct was not a continuing violation.

21

22

23

24

---

25   [2] *Id.* at 27–36 (¶¶ 107–65).

26   [3] *Id.*

27   [4] Mot. – ECF No. 67 at 15–33. At the hearing, AT&T's counsel acknowledged that if its standing argument is successful, then it could invoke the arbitration clause. 5/28/2020 Tr. – ECF No. 87 – at 13 (p. 13:5–24); *cf.* Order Denying Mot. To Compel Arbitration – ECF No. 56.

28

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

**STATEMENT**

**1.  The Administrative Fee**

When the plaintiffs signed up for their wireless plans (Mr. Vianu in 2011 and Ms. Bukchin in 2007), their plans said that AT&T "may change any terms, conditions, rates, fees, expenses, or charges at any time" and that it "would provide notice of such charges (other than changes to governmental fees, proportional charges for government mandates, roamer rates or administrative charges) either in your monthly bill or separately."[5] The plaintiffs signed their contracts and their subsequent plan renewals or modifications, and all — Mr. Vianu's 2011 plan, December 2014 and January 2015 plan modifications, and April 2017 new plan and Ms. Bukchin's 2008 plan, September 2014 plan and addition of two phones in 2017 and 2018 — had this disclosure.[6]

AT&T began charging the Administrative Fee in May 2013, at an initial monthly rate of $0.61 per phone line.[7] It disclosed the fee first by notifying the plaintiffs in their pre-May 2013 statement that the monthly fee would be assessed starting May 1, 2013, and the fee appeared on the monthly statements thereafter.[8] AT&T increased the monthly per-phone several times: $0.76 in June 2016, $1.26 in April 2018, and $1.99 in June 2018, each time notifying the plaintiffs in the previous month's bill and thereafter reflecting the fee in the monthly bill.[9]

On its website, AT&T describes the Administrative Fee:

> The Administrative Fee is a charge assessed by AT&T that helps defray a portion of certain expenses AT&T incurs, including but not limited to: (a) charges AT&T or its agents pay to interconnect with other carriers to deliver calls from AT&T customers to their customers; and (b) charges associated with cell site rents and maintenance. It is not a

---

[5] Compl. – ECF No. 1 at 18 (¶ 65), 21 (¶ 78); Bukchin 2007 Contract, Ex. 5 to Dukes Decl. – ECF No. 68-1 at 5; Vianu 2011 Contract, Ex 2 to Rives Decl. – ECF No. 22-2 at 9 (§ 1.3). The court considers the contracts and other extra-complaint information under the incorporation-by-reference doctrine. *Knievel v. ESPN*, 393 F.3d 1068, 1076–77 (9th Cir. 2005).

[6] Compl. – ECF No. 1 at 18–19 (¶¶ 65–72); Customer Service Summaries, Exs. 1–3 to Dukes Decl. – ECF No. 24-1 at 6, 8–10, 14, 17-28, 42-45, 49, 51-62.

[7] *Id.* at 7 (¶ 25).

[8] Bukchin April 2013 Bill, Ex. 7 to Dukes Decl. – ECF No. 68-1 at 95; *see* Compl. – ECF No. 1 at 11 (¶ 38), 20 (¶ 74).

[9] Compl. – ECF No. 1 at 7 (¶ 26).

United States District Court
Northern District of California

tax or charge which the government requires AT&T to collect from its customers. This charge is subject to change from time to time as AT&T's costs change.[10]

AT&T describes its surcharges and other fees, including the Administrative Fee, on the monthly bills:

> In addition to the monthly cost of the rate plan and any selected features, AT&T imposes the following other charges, on a per line basis: (1) federal and state universal service charges, (2) a Regulatory Cost Recovery Charge of up to $1.25 to help defray its cost incurred in complying with obligations and charges imposed by state and federal telecom regulations, (3) an Administrative Fee on consumer and Individual Responsibility User (IRU) lines to help defray certain expenses AT&T incurs, such as interconnection and cell site rents and maintenance, and (4) other government assessments, including without limitation a gross receipts surcharge and a Property Tax Allotment surcharge of $0.20 - $0.45 applied per Corporate Responsibility User's assigned number. These fees are not taxes or government-required charges. See att.com/additionalcharges.[11]

AT&T does not charge the Administrative Fee to customers who prepay for a plan for a fixed period of time and instead charges only customers who purchase a flat-rate monthly plan (say, $40 a month, payable on a monthly basis).[12]

## 2. AT&T's Advertising and Other Allegations About the Disclosure of the Fee

AT&T promotes the flat-rate monthly plans through pervasive TV, radio, online, and other advertisements and through third parties such as Apple and Best Buy.[13] In these marketing channels, AT&T emphasizes its flat rates and does not disclose the Administrative Fee that it tacks on (in the monthly billing statements) to the advertised flat monthly rate.[14] AT&T does not tell customers about the Administrative Fee before they sign up for a wireless plan.[15] It increased the

---

[10] AT&T Website, Ex. 14 to Dukes Decl. – ECF No. 68-1 at 127.

[11] *See, e.g.*, Bukchin May 2013 Bill, Ex. 8 to Dukes Decl. – ECF No. 68-1 at 100; Vianu January 2015 Bill, Ex. 10 to Dukes Decl. – ECF No. 68-1 at 110. The Bukchin April 2013 has a disclosure about surcharges and fees, but not the Administrative Fee.

[12] Compl. – ECF No. 1 at 6 (¶ 23).

[13] *Id.* at 7 (¶ 27).

[14] *Id.* (¶¶ 27–28).

[15] *Id.* at 8–10 (¶¶ 32–36).

fees in small increments to reduce the likelihood that customer will notice the fee creep.[16] It further obfuscated the fee in its monthly billing statements by listing it in a section titled "Surcharges and Other Fees" with government-type surcharges (such as "Federal Universal Service Charge" and "State Public Utility Charge") instead of listing it in the section titled "Total Monthly Charges."[17] It did so to give the false impression that the fee is like a tax or other government-related pass-through charge, when it is not."[18] Online bills do not list the fee unless the customer clicks various buttons to get through to the disclosure.[19]

The plaintiffs allege that the notice of the fee (to existing customers) in April 2013 was buried and inadequate, and so too were the disclosures in the billing statements.[20] They allege that the website disclosure is similarly buried.[21] The plaintiffs contend that the website disclosure actually buttresses their contention that the fee is an additional charge for the service because the costs that the fee defrays (interconnection and cell-site rents and maintenance) are the costs of providing cellular service.[22] Those costs (supposedly defrayed by the fee) are decreasing, and AT&T apparently began imposing the fee not to defray those costs, but instead to pay down the debt it incurred to acquire Time Warner.[23]

Customers signing up for the plans typically enter into long-term contracts or installment plans to pay for new devices, and they cannot terminate service early without incurring "balloon payments" and other penalties.[24]

---

[16] Id. at 14 (¶ 46).

[17] Id. at 11–12 (¶¶ 39–43); Vianu Bill, Ex. 8 to Dukes Decl. – ECF No. 68-1 at 99.

[18] Compl. – ECF No. 1 at 2 (¶ 4), 6–7 (¶ 24).

[19] Id. (¶ 42).

[20] Id. at 11 (¶ 38), 12 (¶ 48); Bukchin Bill, Ex. 7 to Dukes Decl. – ECF No. 68-1 at 95; Vianu Bill, Ex. 8 to Dukes Decl. – ECF No. 68-1 at 99.

[21] Compl. – ECF No. 1 at 16 (¶ 53).

[22] Opp'n – ECF No. 77 at 11.

[23] Compl. – ECF No. 1 at 7 (¶ 26), 16–18 (¶¶ 56–60, 63).

[24] Id. at 12–14 (¶¶ 44–45).

United States District Court
Northern District of California

United States District Court
Northern District of California

### 3. The Harm to the Plaintiffs

The plaintiffs signed up for wireless plans that AT&T advertised to them at a monthly price that did not include the Administrative Fee, and both relied on the price advertisements.[25] AT&T charged them for the Administrative Fee, and they were not aware of it until February 2018, and even then they did not know that it was a clandestine upcharge for the service.[26] Both still have wireless AT&T plans, and AT&T continues to assess the Administrative Fee on their bills.[27]

### 4. 100-Day Dispute-Resolution Provision

The wireless contracts contain the following dispute-resolution provision:

> IF YOU DISPUTE ANY CHARGES ON YOUR BILL, YOU MUST NOTIFY US IN WRITING AT AT&T BILL DISPUTE, 1025 LENOX PARK BLVD, ATLANTA, GA 30319, WITHIN 100 DAYS OF THE DATE OF THE BILL, OR YOU'LL HAVE WAIVED YOUR RIGHT TO DISPUTE THE BILL AND TO PARTICIPATE IN ANY LEGAL ACTION RAISING SUCH DISPUTE.

> Charges include without limitation, airtime, roaming, recurring monthly service, activation, administrative, and late payment charges; regulatory cost recovery and other surcharges; optional feature charges; toll, collect call and directory assistance charges; restoral and reactivation charges; any other charges or calls billed to your phone number; and applicable taxes and governmental fees, whether assessed directly upon you or upon AT&T.[28]

### 5. Procedural History

The complaint (filed on June 20, 2019) has five California state-law claims: (1) unfair, unlawful, and fraudulent conduct, in violation of the UCL, Cal. Bus. & Prof. Code § 17200 *et seq.*; (2) untrue and misleading advertising, in violation of the FAL, Cal. Bus. & Prof. Code § 17500, *et seq.*; (3) deceptive conduct, in violation of the CLRA, Cal. Civ. Code § 1750 *et seq.*; (4) a claim

---

[25] *Id.* at 18–24 (¶¶ 66, 70-71, 76, 79-80, 83–85, 90).

[26] *Id.* at 18–23 (¶¶ 68–69, 72–74, 78, 87, 89).

[27] *Id.* at 19 (¶ 72), 21 (¶ 78), 23 (¶ 89).

[28] Wireless Customer Service Agreement, Ex. 6 to Dukes Decl. – ECF No. 68-1 at 60 (§ 1.4); Vianu Customer Service Agreement, Ex. 2 to Rives Decl. – ECF No. 22-2 at 9 (§ 1.4); Bukchin Terms of Use, Ex. 5 to Dukes Decl. – ECF No. 68-1 at 39–40.

for public-injunctive relief to permanently enjoin the false advertising and deception, in violation Cal. Civ. Code § 3422; and (5) breach of the implied covenant of good faith and fair dealing.[29] Claims one through three and five are class claims, and claim four is an individual claim (as are the other claims, to the extent that they seek public-injunctive relief).[30]

The court denied AT&T's earlier motion to compel arbitration on the ground that it was barred by binding Ninth Circuit precedent.[31] AT&T then moved to dismiss the claims, generally under Federal Rule of Civil Procedure Rule 12(b)(6) and in part under Rule 12(b)(1).[32] All parties have consented to the undersigned's jurisdiction.[33] The court held a hearing on May 28, 2020.[34]

## STANDARD OF REVIEW

A complaint must contain a short and plain statement of the ground for the court's jurisdiction (unless the court already has jurisdiction and the claim needs no new jurisdictional support). Fed. R. Civ. P. 8(a)(1). The plaintiff has the burden of establishing jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Farmers Ins. Exchange v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 912 (9th Cir. 1990).

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of what the claims are and the grounds upon which they rest. *See* Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to

---

[29] Compl. – ECF No. 1 at 27–36 (¶¶ 107–65).

[30] *Id.*

[31] Order – ECF No. 56 (following *McCardle v. AT&T Mobility, LLC*, 772 F. Appx. 575 (9th Cir. 2019), *cert denied*, No. 19-1078 (2020)).

[32] Mot. – ECF No. 67 at 15–33.

[33] Consent Forms – ECF Nos. 7 & 19.

[34] Minute Entry – ECF No. 81.

United States District Court
Northern District of California

1  raise a claim for relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (internal citations

2  omitted).

3      To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient

4  factual allegations, which when accepted as true, "'state a claim to relief that is plausible on its

5  face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim

6  has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

7  reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility

8  standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that

9  a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 557). "Where a complaint

10  pleads facts that are merely consistent with a defendant's liability, it stops short of the line

11  between possibility and plausibility of 'entitlement to relief.'" *Id.* (internal quotation marks

12  omitted) (quoting *Twombly*, 550 U.S. at 557).

13      If a court dismisses a complaint, it should give leave to amend unless the "pleading could not

14  possibly be cured by the allegation of other facts." *Yagman v. Garcetti*, 852 F.3d 859, 863 (9th

15  Cir. 2017) (citations and internal quotation marks omitted).

16

17                                    **ANALYSIS**

18      AT&T moved to dismiss the complaint for the following reasons: (1) the contract's 100-day

19  limitations period bars all claims; (2) the statute of limitations bars all claims; (3) the voluntary-

20  payment doctrine bars the recovery of restitution and damages under the UCL, FAL, and breach of

21  the implied covenant of good faith and fair dealing; (4) the plaintiffs did not plausibly allege

22  reliance, which bars their UCL, FAL, and CLRA claims; and (5) the plaintiffs lack Article III

23  standing to pursue injunctive relief.[35]

24      The plaintiffs counter that (1) all claims are timely because AT&T engaged in multiple

25  wrongful acts within the limitations period, and under California's continuous-accrual doctrine,

26  each wrongful action triggered a new limitations period, (2) the discovery rule in any event tolls

27

28  _____
[35] Mot. – ECF No. 67 at 15–33.

*United States District Court*
*Northern District of California*

the limitations period, and AT&T's conduct was a continuing violation, (3) the 100-day provision does not bar the lawsuit because the plaintiffs initiated the lawsuit within 100 days of challenged fees, and under the discovery rule, earlier charges are actionable, (3) they pleaded reliance adequately, (4) the voluntary-payment doctrine is a defense that is not resolvable at a motion to dismiss and in any event may not apply to consumer-protection claims, and (5) they plausibly pleaded standing.[36]

The court denies the motion to dismiss on the following grounds: (1) the court does not enforce the 100-day contractual provision; (2) under the continuous-accrual doctrine, the claims are timely under the relevant statutes of limitations; (3) the court does not reach the voluntary-payment doctrine at the pleadings stage; (4) the plaintiffs pleaded reliance plausibly; and (5) the plaintiffs have Article III standing. The court grants the motion to the extent that it holds that the discovery rule does not apply, and AT&T's conduct was not a continuing violation.

## 1. The Contract's 100-Day Provision

AT&T argues that the plaintiffs' claims are barred under the contractual obligation to raise any disputes about billings — including a dispute about administrative fees — with AT&T within 100 days.[37]

First, AT&T does not dispute the plaintiffs' contention that they incurred actionable administrative fees within 100 days of filing suit.[38] At minimum, the claim for charges incurred on or after March 12, 2019 survives.[39]

Second, the issue is whether — as the plaintiffs contend — fees incurred before that date are recoverable, either because the provision is unconscionable or because the discovery rule allows recovery, or — as AT&T contends — the provision is enforceable.

---

[36] Opp'n – ECF No. 77 at 13–31.

[37] Mot. – ECF No. 67 at 15–18; Reply – ECF No. 79 at 22.

[38] Opp'n – ECF No. 77 at 22; Reply – ECF No. 79 at 16.

[39] Reply – ECF No. 79 at 22 (conceding this point).

United States District Court
Northern District of California

United States District Court
Northern District of California

California courts enforce contractual-limitations provisions — including time periods of 90 days — if the time period is substantively reasonable, even if the contract is a consumer contract or a contract of adhesion. *Soltani v. W. & S. Life Ins. Co.*, 258 F.3d 1038, 1044–45 (9th Cir. 2001); *see Janda v. T-Mobile USA, Inc.*, 278 F. App'x 705, 709 (9th Cir. 2010); *Brisbane Lodging, L.P. v. Webcor Builders, Inc.*, 216 Cal. App. 4th 1249, 1262 (2013); *Hambrecht v. Quist Venture Partners v. Am. Med. Int'l, Inc.*, 38 Cal. Ap. 4th 1532, 1548 (1995); *accord Levitsky v. Farmers Ins. Grp. Of Cos.*, No. A096220, 2002 WL 1278071, at *4 (Cal. Ct. App. June 10, 2002). "Reasonable" means that the time is enough to "effectively pursue a judicial remedy" and does not "show imposition or undue advantage in some way." *Moreno v. Sanchez*, 106 Cal. App. 4th 1415, 1430 (2003) (quotation omitted); *accord Soltani*, 258 F.3d at 1042–45.

Conversely, California courts strike contractual-limitations provisions if they are unconscionable. *See* Cal. Civ. Code § 1670.5(a). In California, contractual unconscionability has both procedural and substantive components. *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000). "Procedural and substantive unconscionability 'need not be present in the same degree.'" *Id.* (quoting *Sanchez v. Valencia Holdings Co., LLC*, 61 Cal. 4th 899, 910 (2015)). "Rather, there is a sliding scale: 'the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.'" *Id.* (quoting *Sanchez*, 61 Cal. 4th at 910). Under California law, the party opposing the disputed provision bears the burden of proving unconscionability. *Id.* (citing *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 236 (2012)).

The plaintiffs contend that the provision is procedurally and substantively unconscionable.

The contract is a contract of adhesion. The plaintiffs contend that they thus establish procedural unconscionability.[40] AT&T did not meaningfully oppose the argument.[41] The weight of authority establishes that the provision was procedurally unconscionable. *See Ting v. AT&T*,

---

[40] Opp'n – ECF No. 77 at 23.

[41] *See* Reply – ECF No. 79 at 16–17.

1   319 F.3d 1126, 1148 (9th Cir. 2003); *Stern v. AT&T Mobility Corp.*, NO. CV 05-8842 CAS

2   (CTX), 2008 WL 11334082, at *5 (C.D. Cal. June 7, 2008); *AT&T Mobility II, LLC v. Pestano*,

3   No. C07-05463 WHA, 2008 WL 68253, at *5 (N.D. Cal. Mar. 7, 2008).

4         The issue then is whether it is substantively unconscionable.

5         "Substantive unconscionability focuses on the one-sidedness of the contract terms" and

6   whether it will have an overly harsh effect on the disadvantaged party. *Ting*, 319 F.3d at 1149

7   (citing *Armendariez*, 24 Cal. 4th at 114); *Harper v. Ultimo,* 113 Cal. App. 4th 1402, 1407 (2003).

8         Here, like the disputed provision in *Stern*, the claim is based on the contention that AT&T

9   charged an Administrative Fee that was actually related to the service (covered by the flat monthly

10  fee) and was billed misleadingly as government-type pass-through charge. *Stern*, 2008 WL

11  11334082, at *6. Moreover, the plaintiffs plausibly pleaded that the billing description did not

12  apprise customers about the basis for the charges. *Id.* AT&T argues that *Stern* is distinguishable

13  because there, the plaintiffs did not authorize the charges.[42] But that is essentially the argument

14  here: the plaintiffs bargained for a flat rate for wireless service, had a service-related fee concealed

15  as a pass-through cost, and could not see that from the bill.

16        The other cases that AT&T cites do not change this conclusion. They establish — as AT&T

17  contends — that a contract-limitations period governs disputes if the provision is reasonable. But

18  (for example) a 90-day-limitations period in a bailment contract for damage to a vehicle in a

19  parking lot (an obvious claim) is different than a fee masquerading as a pass-through cost. *Cf.*

20  *Ward v. Sys. Auto Parks & Garages, Inc.*, 149 Cal. App. 2d 879, 880–81 (1957). That said, if the

21  "Administrative Fee" were in the "Monthly Charges" section (for example), AT&T's argument

22  might carry the day.

23        In sum, the contract's 100-day provision does not bar the claims. Instead, as discussed in the

24  next section, they are cabined by the relevant statutes of limitations.

25

26

27

28  [42] *Id.* at 17.

United States District Court
Northern District of California

### 2.   The Statutes of Limitations

The statutes of limitations that apply — three or four years, depending on the claim — do not bar the claims because each bill triggers a new limitations period under the continuous-accrual doctrine. *Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1192 (2013). As the plaintiffs point out, California courts apply the doctrine to cases involving monthly billing obligations.[43] *See, e.g.*, *id.* at 1200–01 (unlawful charges in monthly bills); *Armstrong Petroleum Corp. v. Tri–Valley Oil & Gas Co.*, 116 Cal. App. 4th 1375, 1388–89 (2004) (monthly payments on an oil-and-gas lease); *Tsemetzin v. Coast Fed'l Sav. & Loan Ass'n*, 57 Cal. App. 4th 1334, 1344 (1997) (monthly rent payments); *accord Underwood v. Future Income Payments, LLC*, No. SA CV 17-1570-DOC (DFMx), 2018 WL 4964333 (C.D. Cal. April 26, 2018). *Underwood*, for example, was a class action against defendants that loaned money to military personnel and recouped the loans through monthly deductions from the plaintiffs' pensions. 2019 WL 4964333, at *1. The named plaintiff's loan agreement predated the limitations period. *Id.* at *8. The court held that each deduction was a separate violation of the UCL and CLRA. *Id.* at *10–11. Here, the claims are for unfair and deceptive practices involving add-on fees masquerading as pass-through fees. These monthly billing obligations trigger new limitations periods.

AT&T contends that there can be no FAL claim because the plaintiffs were already customers and did not rely on any false advertising.[44] Its arguments do not change the outcome. First, the complaint alleges that the plaintiffs were subject to false advertising during the limitations periods (by, for example, updating plans within the limitations period, seeing the pervasive flat-rate advertising during that process, and not receiving any disclosure about the Administrative Fee).[45] Second, the claims are predicated not only on false advertising but also on unfair practices. Third, while AT&T alleges that the plan renewals and modifications were not recurring events because the plaintiffs knew about the Administrative Fee,[46] the plaintiffs' best theory is that AT&T was

---

[43] Opp'n – ECF No. 77 at 14–15 (collecting cases).

[44] Reply – ECF No. 79 at 13.

[45] Compl. – ECF No. 1 at 19 (¶ 72), 22 (¶ 84).

[46] Reply – ECF No. 79 at 16.

1    trying to pass the fee off as something that it was not. Put another way, the court's view is that the

2    bills show the existence of the fee, but the plaintiffs plausibly plead that AT&T's characterization

3    of the fee was deceptive and unfair. In any event, whether the plaintiffs were sufficiently on notice

4    of the fee is a question of fact not appropriately resolved at the pleadings stage.

5        The same analysis disposes of AT&T's argument that instituting the Administrative Fee in

6    2013 was a single harm.[47] It was not. The plaintiffs plausibly plead that the disclosures — initially

7    by the notice and then in the monthly billings — were an ongoing deceptive and unfair practice.

8        The plaintiffs also contend that the discovery rule applies in part because they did not read the

9    billing statements and even if they did, AT&T misleadingly and unfairly represented the fee as

10   something that it was not.[48] The court does not apply the discovery rule here.

11       "Generally speaking, a cause of action accrues at 'the time when the cause of action is

12   complete with all of its elements.'" *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 806

13   (2005) (quoting *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 397 (Cal. 1999)). The discovery rule is an

14   exception to this general rule of accrual and postpones "accrual of a cause of action until the

15   plaintiff discovers, or has reason to discover, the cause of action." *Id.* at 806 (citing *Norgart*, 21

16   Cal. 4th at 39).

17           A plaintiff has reason to discover a cause of action when he or she "has reason at least to
          suspect a factual basis for its elements." Under the discovery rule, suspicion of one or more
18        of the elements of a cause of action, coupled with knowledge of any remaining elements,
          will generally trigger the statute of limitations period. *Norgart* explained that by discussing
19        the discovery rule in terms of a plaintiff's suspicion of "elements" of a cause of action, it
          was referring to the "generic" elements of wrongdoing, causation, and harm. In so using
20        the term "elements," we do not take a hypertechnical approach to the application of the
          discovery rule. Rather than examining whether the plaintiffs suspect facts supporting each
21        specific legal element of a particular cause of action, we look to whether the plaintiffs have
          reason to at least suspect that a type of wrongdoing has injured them.
22

23   *Id.* (internal citations omitted). The plaintiffs must establish that the discovery rule postpones the

24   accrual of their claim: "to rely on the discovery rule for delayed accrual of a cause of action, [a]

25   plaintiff whose complaint shows on its face that his claim would be barred without the benefit of

26

27   ─────────────────
     [47] *Id.* at 14–15.

28   [48] Opp'n – ECF No. 77 at 18–20.

United States District Court
Northern District of California

the discovery rule must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Id* at 808 (quotation omitted).

The plaintiffs received notice of the fee before AT&T imposed it in 2013, they received monthly notice thereafter on their bills, and the website disclosed the nature of the fee. Given these facts, the plaintiffs have not met their burden to show why they could not discover the Administrative Fee before they allegedly discovered it in 2018.[49] *See Beasley v. Conagra Brands, Inc.*, 374 F. Supp. 3d 869, 883–84 (N.D. Cal. 2019) ("Here, plaintiff has pled the time of his discovery, but he has failed to plead the manner of the discovery or the inability to have made earlier discovery despite reasonable diligence.").

The plaintiffs also allege that AT&T's conduct is a continuing violation.[50] It is not. A continuing violation occurs when a "'wrongful course of conduct [becomes] apparent only through the accumulation of a series of harms' but not when a plaintiff experiences 'a series of discrete, independently actionable alleged wrongs.'" *Brodsky v. Apple, Inc.*, No. 19-cv-00712-LHK, 2020 WL 1694363, at * (N.D. Cal. Apr. 7, 2020) (quoting *Aryeh*, 55 Cal. 4th at 1198).

In sum, the relevant statutes of limitations define the time boundaries of the claims.

### 3. The Voluntary-Payment Doctrine

AT&T contends that the voluntary-payment doctrine bars the plaintiffs' recovery for restitution and damages under the UCL, FAL, and breach of the implied covenant of good faith and fair dealing claims for monetary relief.[51] This is a defense, and the plaintiffs plausibly pleaded their claims of unfair and deceptive practices. The court does not reach the issue at the pleadings stage.

---

[49] Compl. – ECF No. 1 at 20 (¶ 74), 23 (¶ 87).

[50] Opp'n – ECF No. 77 at 20.

[51] Mot. – ECF No. 67 at 26–28.

United States District Court
Northern District of California

#### 4. Reliance

AT&T contends that the plaintiffs did not plausibly allege reliance on the purported misstatements about the Administrative Fee, which bars their UCL, FAL, and CLRA claims.[52] The plaintiffs alleged reliance plausibly.

First, they do not have to allege reliance for the "unfair" and "unlawful" prongs of the UCL because these claims are not predicated on fraud. *Svenson v. Google, Inc.*, NO. 13-CV-04080-BLF, 2015 WL 1503429, at * 9–10 (N.D. Cal. 2015)

Two, the court already rejected AT&T's argument that the plaintiffs cannot establish reliance based on AT&T's flat-rate advertising because they knew about the fee when they renewed their service.[53] The point is that they renewed service for a flat-rate plan and, while they knew about the fee, AT&T deceptively and unfairly disclosed it as a pass-through cost. Also, this is a question of fact that is not appropriate for resolution at the pleadings stage. *Kellman v. Whole Foods Market, Inc.*, 313 F. Supp. 3d 1031, 1049 (N.D. Cal. 2018)

Third, AT&T characterizes the claims — even couched as unlawful and unfair — as essentially based in fraud.[54] The plaintiffs pleaded unlawful and unfair practices plausibly, but even if they did not, they plausibly pleaded reliance for any misrepresentation theory.

#### 5. Standing

AT&T contends that the plaintiffs lack standing to pursue injunctive relief because now they know about the fee and are at no risk of being harmed in the future.[55] But the plaintiffs are current AT&T customers, allegedly locked into service plans. As the court said at the hearing, it seems a funny position to require the plaintiffs to break their contract to challenge unfair practices about fees for their services. The contracts are long-term contracts, and breaking them comes with a penalty. Analogizing to the labeling cases, a previously deceived customer has standing to pursue

---

[52] *Id.* at 28–31.

[53] Reply – ECF No. 79 at 19.

[54] *Id.* at 19–20.

[55] Mot. – ECF No. 67 at 31–33; Reply – ECF No. 79 at 20.

1    injunctive relief, even if he knows now that the advertising was false, if he plausibly alleges that

2    he might buy the product in the future. *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969–70

3    (9th Cir. 2018). Existing customers who may renew again with appropriate disclosures seem

4    sufficiently analogous at the pleadings stage to *Davidson* to clear the standing hurdle. *Eiess v.*

5    *USAA Fed. Sav. Bank*, 404 F. Supp. 3d 1240, 1258 (N.D. Cal. 2019) ("Ms. Eiess remains a USAA

6    customer and nothing indicates that she wants to stop being a customer. She thus has standing

7    under *Davidson*.").

8

9                                    **CONCLUSION**

10        The court denies the motion to dismiss except that it holds that the discovery rule does not

11   apply, and AT&T's conduct was not a continuing violation.

12        This disposes of ECF No. 67.

13        **IT IS SO ORDERED.**

14        Dated: June 11, 2020

15                                    _____

16                                    LAUREL BEELER
                                      United States Magistrate Judge
17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California