MICHAEL W. SOBOL (SBN 194857)
msobol@lchb.com
ROGER N. HELLER (SBN 215348)
rheller@lchb.com
DANIEL E. SELTZ (admitted *pro hac vice*)
dseltz@lchb.com
AVERY S. HALFON (admitted *pro hac vice*)
ahalfon@lchb.com
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  415.956.1000
Facsimile:  415.956.1008

DANIEL M. HATTIS (SBN 232141)
dan@hattislaw.com
PAUL KARL LUKACS (SBN 197007)
pkl@hattislaw.com
HATTIS & LUKACS
400 108th Ave NE, Ste. 500
Bellevue, WA 98004
Telephone:  (425) 233-8650
Facsimile:  (425) 412-7171

*Attorneys for Plaintiffs and the Proposed
Class*

EVAN M. TAGER (admitted *pro hac vice*)
etager@mayerbrown.com
ARCHIS A. PARASHARAMI (SBN 321661)
aparasharami@mayerbrown.com
KEVIN S. RANLETT (admitted *pro hac vice*)
kranlett@mayerbrown.com
MAYER BROWN LLP
1999 K Street N.W.
Washington, D.C. 20006
Telephone: (202) 263-3000
Facsimile:  (202) 263-3300


SEAN A. COMMONS (SBN 217603)
scommons@sidley.com
RARA KANG (SBN 307236)
rkang@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, CA 90013
Telephone:  (213) 896-6000
Facsimile:  (213) 896-6600

[additional counsel listed on signature page]
*Attorneys for Defendant*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

IAN VIANU and IRINA BUKCHIN, on behalf of themselves and all others similarly situated,

Plaintiffs

v.

AT&T MOBILITY LLC,

Defendant.

Case No.  3:19-cv-03602-LB

**STIPULATION AND ORDER REGARDING THE PRODUCTION OF ELECTRONICALLY STORED INFORMATION ("ESI") AND HARD COPY DOCUMENTS**

## I.    **PURPOSE**

This Stipulation and Order ("Order") regarding the production of Electronically Stored

Information ("ESI") and Hard Copy Documents (collectively, "Document" or "Documents") shall

govern discovery of Documents in this case as a supplement to the Federal Rules of Civil

Procedure, and any other applicable orders and rules. Nothing in this Order is intended to expand or limit the parties' obligations under the Federal Rules of Civil Procedure.

**II.    <u>COOPERATION</u>**

The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of ESI.

**III.    <u>PRESERVATION AND IDENTIFICATION OF ESI</u>**

1.    The Parties have discussed their preservation obligations and needs and agree that preservation of potentially-relevant ESI will be reasonable and proportionate. The parties have taken reasonable steps to preserve ESI that is potentially relevant to this case.

2.    Following the service of any requests for production of documents in this case, the parties shall within a reasonable time period meet and confer regarding appropriate custodians, custodial and non-custodial sources of ESI, and method(s) for the producing party to employ, in searching for responsive documents.

3.    Where applicable, sources of Documents include but are not limited to desktop servers, computers, laptops, local hard drives, file servers, databases, SANs, NASs, email servers, web servers, network home or personal file shares, any shared drives, document management systems (DMS), record management systems (RMS), content management systems (CMS), departmental/project/collaborative/shared storage spaces, removable storage, email, removable storage media, on-line data storage (e.g., Dropbox or Google Drive), messaging phones, tablets social media, and physical or hard copy files and documents.

4.    The Parties shall have a continuing obligation to take reasonable and proportional steps to identify and preserve custodial and non-custodial data sources that may contain information that is relevant to the claims and defenses in this litigation.

5.    If a producing party is aware of inaccessible data that is likely to contain unique, discoverable ESI, it will identify the source from which it claims the data is not reasonably accessible to the receiving party.

6.    Examples of data the Parties agree not to preserve are:

STIPULATION AND ORDER REGARDING THE
PRODUCTION OF ELECTRONICALLY STORED
INFORMATION ("ESI") AND HARD COPY

i.      Deleted, "slack," fragmented, or unallocated data only accessible by forensics;

ii.     Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system;

iii.    Structural files not material to individual file contents (e.g. .CSS, .XSL, .XML, .DTD, etc.); and

iv.     Data remaining from systems no longer in use that is unintelligible on the systems in use.

## IV.     <u>SEARCH & REVIEW</u>

1.      As part of their meet and confer pursuant to Paragraph III.2, above, the Parties will meet and confer to discuss the use of search terms, filters and date ranges or the use of advanced search and retrieval technologies. The producing party shall specify the technique or techniques it will use to search for material it reasonably anticipates will be responsive to Requests for Production. If the requesting party objects to the particular technique or techniques, the parties will timely meet and confer regarding the matter and submit any unresolved disputes to the Court for resolution.

2.      A producing party that intends to use search terms will describe a Search Protocol that will include: (a) the criteria to be used to identify the universe of documents to which search terms will be applied (e.g., date range), and (b) proposed search terms to be applied to that universe of documents, subject to revision based on, for example, meet and confer of the parties and the number of hits returned by each term. A requesting party may also suggest search terms to be applied. Any Search Protocol will include a requirement for the producing party to provide hit reports for proposed search terms prior to utilizing the search terms to narrow the universe of documents to be searched. The Parties agree to meet and confer regarding the Search Protocol and to raise any disputes regarding the Search Protocol for resolution by the Court.

3.      If a producing party seeks to use search terms on one set of documents and TAR on a different set of documents, the producing party will identify each set of documents and state the rationale for the difference in method applied. The producing party does not, in providing

1   such a statement, waive any applicable privilege or work product protections. If the requesting

2   party objects to such an approach, the parties will timely meet and confer regarding the matter

3   and submit any unresolved disputes to the Court for resolution.

4       4.    A producing party that intends to use TAR will describe a TAR Protocol that will

5   include: (a) the TAR system to be used; (b) the criteria to be used to identify the universe of

6   documents to which TAR is to be applied; (c) its methodology for training the TAR model and

7   identifying responsive documents; (d) the methodology for validation testing to be used; (e) the

8   subject-matter expert who will oversee the implementation of the TAR Protocol; and (f) the

9   process by which documents excluded as not conducive to categorization (e.g. multimedia files,

10  primarily numerical spreadsheets, database files) will be reviewed for production.

11  **V.**    **PRODUCTION FORMATS**

12  The Parties agree to produce documents in the formats set forth in Appendix 1 and 2

13  hereto.

14  **VI.**    **DOCUMENTS PROTECTED FROM DISCOVERY**

15  The inadvertent production of documents (including both paper documents and

16  electronically stored information) subject to protection by the attorney-client and/or protected by

17  the work-product, joint defense or other similar doctrine, or by another legal privilege protecting

18  information from discovery, is addressed in the parties' Stipulated Protective Order.

19  **VII.**    **MODIFICATION**

20  This Order may be modified by a stipulation of the Parties or by the Court for good cause

21  shown.

22  **VIII.**    **MISCELLANEOUS PROVISIONS**

23      **A.**    **Objections Preserved**

24  Nothing in this Order shall be interpreted to require disclosure of either irrelevant

25  information or relevant information protected by the attorney-client privilege, attorney work-

26  product doctrine, or any other applicable privilege or immunity. Except as provided expressly

27  herein, the parties do not waive any objections as to the production, discoverability, authenticity,

28  admissibility, or confidentiality of Documents and ESI.

### B. **Technical Variances**

Recognizing that each producing party may experience production issues due to data systems or files that may not be fully compatible with the technical specifications set forth herein, any practice or procedure set forth herein may be varied by agreement of the parties, confirmed in writing, to accommodate such issues and/or where such variance is deemed appropriate to facilitate the timely and economical production of Documents or ESI. No party shall unreasonably object to any such variance.

### C. **Privileged Documents and Privilege Log**

To the extent that a producing party reasonably determines that one or more responsive documents are not discoverable or a portion of a document needs to be redacted because it is subject to the attorney-client communication privilege or work product doctrine, or otherwise not discoverable on the basis of a recognized protection or privilege (collectively, the "Privileges" and each a "Privilege"), the party shall produce a log treating each document withheld or redacted for privilege from that production separately that sets forth: (a) the nature of the privilege(s) or other protection claimed; (b) the date of the document; (c) the name of the author(s)/addresser, addressee(s) and all recipients of the document (with respect to email threads, the author/addresser, addressee(s) and recipients of only the top email in the chain will be set forth in the author/addressee, addressee(s) and recipient fields of the log) and whether any person identified is an attorney or an employee of any Defendants' legal department; and (d) a description of the general subject matter contained in the document and the type of document (e.g., letter, memorandum, handwritten notes) sufficient to allow the receiving party to assess the claimed Privilege and/or to allow the Court to rule upon the applicability of the claimed protection. For redacted documents with multiple redactions, one log entry can be used to describe the multiple redactions, so long as a single entry is sufficient to adequately identify the basis for all redactions, as described in this paragraph. Names of counsel shall be identified through a separate list of counsel or designated with an asterisk on the log.

Correspondence including outside counsel that post-date the filing of the original complaint in this case need not be placed on a privilege log.

1

### D.    <u>Hard Copy Document Storage</u>

2

During the pendency of this litigation, the parties shall make reasonable efforts to preserve

3

the originals of all hard copy documents as to which there may be issues of legibility of all or any

4

part of the production copy. Each party reserves the right to request to inspect such original

5

documents of the opposing party or parties, which request shall not be unreasonably denied. If

6

such request to inspect is denied, the party may seek relief from the Court.

7

### E.    <u>Reproduction as Natives</u>

8

The parties agree that to the extent any party seeks production in native format of

9

specifically identified ESI produced originally in TIFF form because the imaged files are

10

unreadable or illegible or where the receiving party makes a reasonable request for production in

11

native format, the producing party shall respond reasonably and in good faith to any such request.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**APPENDIX 1**
**PRODUCTION DELIVERY REQUIREMENTS**

## I.   GENERAL PRODUCTION PROVISIONS

    **A.**    The parties have agreed that ESI should be produced as TIFF images and in Native format where applicable with accompanying data and image load files.

    **B.**    **TIFF Image Files:** The parties agree that all Documents, with the exception of Documents produced in Native Format, will be produced as single-page black and white Group IV TIFF image files of at least 300 dpi resolution with 1 bit depth. Page size shall be 8.5 x 11 inches, unless in the reasonable judgment of the producing party, a particular item requires a different page size. Each image file will use the Bates number of the page as its unique file name. Original document orientation as displayed in the native file should be maintained in the TIFF image (i.e., portrait to portrait and landscape to landscape).

    **C.**    **Text Files:** Each Document produced under this Order shall be accompanied by a document level text file containing all of the text for that document, not one text file per page. Each text file shall be named to use the Bates number of the first page of the corresponding document. The text files shall be generated by extracted text from native files and OCR text files from hard copy scanned documents as applicable. The .DAT load file shall include a link to the corresponding text file.

    **D.**    **OCR Text Files:** The parties will provide searchable OCR text of any paper or imaged Documents, unless the party determines that the utility of the OCR is outweighed by the expense. In that case, the producing party will produce the documents as they are kept in the ordinary course of business.

    **E.**    **Extracted Text Files from ESI:** The parties shall extract the text of each ESI item directly from the ESI native file, where extracted text is reasonably available. For contacts and calendars collected and/or processed after the execution date of this Order, fields should be extracted and produced as text.

    **F.**    **OCR Text for Redacted Documents:** The parties will provide searchable OCR text for any redacted files.

1    **G.    Bates Numbering**:

2    i.    Each TIFF image produced under this Order should be assigned a Bates

3    number that must: (1) be unique across the entire document production; (2) maintain a constant

4    length of nine numeric digits (including 0-padding) across the entire production; (3) contain only

5    alphanumeric characters, no special characters or embedded spaces; and (4) be sequential within a

6    given Document. The producing party will identify the Bates number range of each production in

7    a cover letter or production log accompanying the production. If a producing party skips a Bates

8    number or set of Bates numbers in a production, the producing party will identify and note the

9    gap in the cover letter or production log accompanying the production.

10    ii.    The producing party will brand all TIFF images in the lower right-hand

11    corner with its corresponding Bates number, using a consistent font type and size. If the receiving

12    party believes that a Bates number obscures the content of a Document, then the receiving party

13    may request that the Document be produced with the Bates number in a different position.

14    **H.    Re-Production of Prior or Other Litigation Documents:** Where a requesting

15    party seeks re-production of a set of relevant documents produced in a prior litigation or any other

16    proceeding because the prior production is the only reasonably accessible source of those

17    documents or ESI to be produced by a party in this litigation, the producing party may re-produce

18    such documents in the manner in which they were produced in the prior case, including all

19    objective coding or metadata fields required by this protocol to the extent reasonably available to

20    the producing party as part of the productions set. For any such re-production in accordance with

21    this Paragraph, the producing party is not obligated to re-format the prior production in

22    accordance with the production specifications herein, but must provide Bates numbering and

23    confidentiality designations specific to this litigation.

24    **I.    Parent-Child Relationships:** Parent-child relationships for all embedded ESI

25    documents (e.g., the association between an attachment and its parent email, or a spreadsheet

26    embedded within a word processing document), must be preserved by assigning sequential Bates

27    numbers to all items within the parent-child group, and identifying those Bates numbers in the

28    relevant ESI metadata and coding fields specified in Appendix 2. For example, if a party is

- 2 -

producing an email with embedded attachments, the attachments must be processed and assigned Bates numbers in sequential order, following consecutively behind the parent email. Not all attachments may be produced – for example, privileged or nonresponsive attachments may be removed, but all documents within responsive families will be Bates numbered prior to production.

**J.** **Color Documents:** If an original ESI Document contains color text, markings or graphics, and the receiving party believes it is necessary to view such Document in its original color to understand its full meaning or content, then the receiving party may request that the ESI Document be produced in color format. The producing party shall then reproduce such Document(s) and/or ESI in color JPEG format, or in native format. This section also applies to documents that are produced as TIFF images.

**K.** **Confidentiality Designations:** If a particular Document has a confidentiality designation, the designation shall be stamped on the face of all TIFF images pertaining to such Document, in the lower left-hand corner of the Document, or as close thereto as possible while preserving the underlying image. If the receiving party believes that a confidentiality designation obscures the content of a Document, then the receiving party may request that the Document be produced with the confidentiality designation in a different position. No party may attach to any filing or any correspondence addressed to the Court (including any Magistrate Judge), or any adverse or third party, or submit as an exhibit at a deposition or any other judicial proceeding, a copy (whether electronic or otherwise) of any native format Document produced by any party without ensuring that the corresponding Bates number and confidentiality legend, as designated by the producing party, appears on the Document or a cover page accompanying the Document. For each document that is marked confidential, a Confidentiality field will be populated with the word "Confidential" in the .dat file. Also, any documents marked "Confidential" or "Highly Confidential – Attorneys' Eyes Only" must be handled in accordance with the Protective Order entered in this case.

1  **II.      PRODUCTION OF HARD COPY DOCUMENTS**

2          A.      All hard copy Documents that are scanned will be produced in electronic form.

3  Where necessary and practicable, hard copy Documents in color will be scanned in color to

4  ensure full information is communicated in the scanned copy. Scanned color documents will be

5  provided in JPG file format.

6          B.      **Unitization of Paper Documents:** To the extent practicable, hard copy

7  Documents shall be unitized using logical document determinations or "LDD."

8          C.      **Identification:** Where a Document or group of Documents has an identification

9  spine, "post-it note," or any other label, the information on the label shall be scanned and

10  produced to the extent practicable.

11          D.      **Custodian Identification:** The parties will utilize reasonable best efforts to ensure

12  that paper records for a particular custodian or department level custodian, which are included in

13  a single production, are produced in consecutive Bates stamp order.

14          E.      **Metadata:** The metadata associated with each hard copy Document need only

15  identify the Bates number, the custodian associated with that hard copy Document, and any

16  Confidential Designation or Redaction applied to that Document.

17  **III.     PRODUCTION OF "ESI"**

18          A.      **De-NISTING and System Files:** ESI productions shall be de-NISTed using the

19  industry standard list of such files maintained in the National Software Reference Library by the

20  National Institute of Standards & Technology. De-NISTED files need not be produced. The

21  parties may mutually agree upon any additional file types that can be excluded from review and

22  production. A producing party shall identify any additional standard, readable, and reviewable file

23  types which have been excluded from its document review population for any production made

24  following the date of this Order, and will utilize reasonable best efforts to do the same with

25  respect to any productions made prior to the date of this Order.

26          If a party excludes from review a standard, readable, and reviewable file type not within

27  the industry standard, that party must disclose such an exclusion to the other parties.

28

STIPULATION AND ORDER REGARDING THE
PRODUCTION OF ELECTRONICALLY STORED
INFORMATION ("ESI") AND HARD COPY

**B.** **Native Files:** Certain files types, such as spreadsheet-application files (e.g., MS Excel, .csv) and multimedia audio/visual files such as voice and video recordings (e.g., .wav, .mpeg, and .avi), shall be produced in native format. For files produced in native format, the producing party shall provide a single-page TIFF slipsheet with the applicable Bates stamp indicating that a native item was produced. The corresponding load (.DAT) file shall include a NativeFilelink which provides the relative path linking information for each native file that is produced. In addition, the confidentiality designation will be indicated in the name of the native file where reasonably feasible.

**C.** **Metadata Fields and Processing:**

i. ESI shall be processed in a manner that preserves the source native file and relevant metadata without modification, including their existing time, date, and time-zone metadata consistent with the requirements provided in this Order. The producing party will provide information on the time zone the data was processed in to the receiving party.

ii. **Hidden text:** ESI shall be processed, to the extent practicable, in a manner that preserves hidden columns or rows, hidden text, notes, or worksheets, speaker notes, tracked changes, redlines and comments. Upon request, a producing party will produce files with any such information in native format.

iii. **Compressed Files and Encrypted Files:** Compressed file types (i.e., .CAB, .GZ, .TAR, .Z, .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual files. The producing party will take reasonable steps, prior to production, to unencrypt any discoverable electronically stored information that exists in encrypted format (e.g., because password-protected) and that can be reasonably unencrypted.

iv. **Microsoft "Auto" Feature and Macros:** For Microsoft Excel, Microsoft Word, and Microsoft PowerPoint documents that contain "auto" features, (e.g., where documents have an automatically updated date and time in the document), the metadata associated with such files shall accurately reflect the automatically populated fields (i.e., the metadata date or other

automatically populated field will reflect the date and/or entry for how the document was used or held in the ordinary course of business).

v.      **Metadata and Coded Fields:** ESI items shall be produced with all of the metadata and coding fields set forth in Appendix 2.

**D.**      This Order does not create any obligation to create or manually code fields that are not automatically generated by the processing of the ESI, or that do not exist as part of the original metadata of the Document; provided, however, that the producing party must populate, where possible, the (a) BegBates, (b) EndBates, (c) BegAttach, (d) EndAttach, (e) Custodian, (f) NativeFileLink fields, if applicable, (g) TextPath, (h) Redaction status, and (i) Confidentiality designation. These fields should be populated for all produced ESI, regardless of whether the fields can be populated pursuant to an automated process.

## IV.      DATABASES, STRUCTURED, AGGREGATED OR APPLICATION DATA

**A.**      The Parties will produce documents collected from databases or other structured databases in a reasonably useable format. Prior to production of any such data, the parties will meet and confer to address the production format. Prior to or during any such meet and confer, the producing party will provide sufficient information to enable the receiving party to evaluate the best method and format of production. If the parties cannot reach agreement, the matter will be decided by the Court.

## V.      RESPONSIVENESS, PRIVILEGE & REDACTIONS

**A.**      The parties agree that if an attachment to an email is wholly nonresponsive to the discovery requests, it need not be produced, but must be Bates numbered with a cover sheet prior to removal. Non-privileged cover emails to responsive documents, however will be deemed responsive and produced.

**B.**      To the extent that a producing party reasonably determines that email or related attachments that are responsive to the requesting party's document request are not discoverable because they are subject to a Privilege, the producing party shall produce a log treating each email and attachment withheld separately in accordance with Paragraph VIII.C of the ESI Protocol.

**C.**      **Redactions:**

The parties agree that where ESI items need to be redacted, they shall be produced in TIFF format with each redaction clearly indicated or where TIFF format is not practicable, in redacted native format, as noted below. Any unaffected data fields shall be provided. The redaction of any material for privilege or other reason shall be governed by the applicable rules and case law regarding privilege and the provisions contained in the Protective Order entered in this action. Documents that are to be produced in native format, but that require redactions may be produced as TIFF images with the relevant portions redacted, or if a TIFF image production is not practicable (e.g., the file is a video or very large spreadsheet), the producing party may produce a copy of the native file with the relevant portions replaced with "REDACTED" or a similar mark. If modification of a native file is required for redaction purposes, metadata information associated with that file should remain unchanged, unless it also requires redaction. For each document that is redacted, a Redaction field will be populated with the word "REDACTED" in the .DAT file. Also, the producing party will keep an original copy of the native document.

**D.**     **Printing Specifications for Excel and PowerPoint Files:**

For Excel and PowerPoint type files that are printed to TIFF for redaction and redacted, the following printing options shall be enabled:

| Excel Print to TIFF Options |
| --- |
| • Unhide columns and rows |
| • Unhide worksheets |
| • Autofit columns and rows, settings to be over by columns first and, then down by rows |
| • Wrap text |
| • Print gridlines |
| • Do not apply Autofilter |
| • Display headings |
| • Display comments |
| • Header and Footer filename field handling: Show field code |

| PowerPoint Print to TIFF Options |
| --- |
| • Print notes pages |
| • Print hidden slides |
| • Print comments |

i.     The producing party shall also make reasonable efforts to ensure that any spreadsheets produced only as TIFF images because of redactions are formatted so as to be

legible. For redacted items which were originally ESI, all metadata fields noted in this protocol that do not contain privileged or protected information will be provided and will include all non-redacted data. A document's status as redacted does not relieve the producing party from providing all of the metadata required herein.

**E.** **De-duplication and Document Families:**

      i.     ESI may be de-duplicated globally at the parent level using MD5 hash or SHA-1 hash. For emails, de-duplication may be performed using a hash calculated using combination of metadata fields. Such hash shall, at a minimum, account for all sender and recipient metadata including BCC recipients, the email subject, date sent, and attachment names.

      The parties are permitted to produce the longest unique email chain and do not need to separately produce the lesser-included emails unless those lesser-included emails have bcc recipients or unique attachments not included in the longest chain. If a lesser-included email has a bcc recipient or unique attachment, then the lesser-included email must be separately produced with the attachments

      If a party produces only inclusive email, the parties agree to redact any privileged content or message component and produce in full the rest of the conversation in the inclusives.

      "Near duplicate" documents shall be produced rather than removed. The producing party need only produce a single copy of a particular ESI.

      The hash value for each item shall be reflected in the .DAT load file in the HashValue field specified in Appendix 2. If a producing party elects to de-duplicate globally, the producing party shall identify custodians who were in possession of a de-duplicated Document in the AllCustodian metadata field specified in Appendix 2. This means that the field "AllCustodian" will be populated showing all custodians who had a copy of the same document which is not being produced because of de-duplication.

      ii.     De-duplication shall not break apart families and shall be performed at a family level. A document and all other documents in its attachment range, emails with attachments and files with extracted embedded OLE documents all constitute family groups. Except as specified in Section V.A above, if any member of a family group is produced, all

members of that group must be also be produced or else logged and no such member shall be withheld from production as a duplicate. The producing party agrees that the presence of a custodian's name contained in the "AllCustodian" field in the metadata for a particular document is evidence that the custodian possessed that document in his/her custodial file.

F.     <u>**Load Files:**</u>

The data load file should be in standard Concordance format (.DAT). The .DAT file shall contain a relative path to the corresponding Native file.

Concordance Data Load Files:

The data load file should use standard Concordance delimiters:

- Comma - ¶ (ASCII 20);
- Quote - þ (ASCII 254);
- Newline - ® (ASCII174).
- The first line of the .DAT file should contain the field names arranged in the same order as the data is arranged in subsequent lines.
- All date fields should be produced in mm/dd/yyyy format, if possible. Date fields may be combined date/time fields
- All produced attachments should sequentially follow the parent Document/email.

**Sample Concordance .DAT Load File**:

þBegBatesþ¶þBegattatchþ¶þCustodianþ¶þNative Pathþ¶þExtracted Textþ
þABC000001þ¶þABC000001þ¶þSampleþ¶þ\VOL001\NATIVES\001\ABC000001.xlsþ¶þTEXT\001\ABC000001.t
tþþABC000002þ¶þABC000001þ¶þSampleþ¶þNATIVES\001\ABC000002.gifþ¶þTEXT\001\ABC000002.txtþ

The image load file must be in standard Option (.OPT) format and must reference each TIFF file in the corresponding production, and the total number of TIFF files referenced in the load file must match the total number of image files in the production. The total number of Documents referenced in a production's data load file should match the total number of designated Document breaks in the corresponding image load file for that production. In any deliverable volume, documents should be organized in such a way that each folder in the volume contains 1000 files (each TIFF page or native file is a single file) as one file per folder.

- Every image in the delivery volume should be cross-referenced in the image load file.
- The imageID key should be named the same as the Bates number of the page.

- Load files should not span across media (e.g., CDs, DVDs, hard drives, etc.), i.e., a separate volume should be created for each piece of media delivered.

Sample Concordance/Opticon Image (.OPT) Load File:

MSC000001,MSC001, \VOL001\IMAGES\001\MSC000001.TIF,Y,,,2

MSC000002,MSC001, \VOL001\IMAGES\001\MSC000002.TIF,,,,

MSC000004,MSC001, \VOL001\IMAGES\001\MSC000004.TIF,Y,,,2

MSC000005,MSC001, \VOL001\IMAGES\001\MSC000005.TIF,,,,

OCR/Extracted Text Files:

- OCR or Extracted Text files shall be provided in a separate directory containing Document level text files. The .DAT file shall contain a relative path to the corresponding text file. OCR or Extracted text itself should not be included in the .DAT file:

PROD001\TEXT\001\ABC00015.txt

## APPENDIX 2:  ESI METADATA AND CODING FIELDS

The chart below describes the metadata fields to be produced, where reasonably available, in generic, commonly used terms which the producing party is to adapt to the specific types of ESI it is producing, to the extent such metadata fields exist associated with the original electronic Documents and are automatically generated as part of the electronic data discovery process. Any ambiguity about a metadata field should be discussed with the receiving party prior to processing the subject ESI for production.

| Field Name | Field Description |
| --- | --- |
| BegBates | First Bates number (production number) of an item |
| EndBates | Last Bates number (production number) of an item<br>**The EndBates field should be populated for single-page items. |
| AttachName | File name of the attachment, with any attachments separated by semi-colon. |
| BegAttach/Group ID | First Bates number of family group. |
| EndAttach | Last Bates number of attachment range (*i.e.*, Bates number of the last page of the last attachment) |
| PgCount | Number of pages in the item |
| Custodian | Name of person or source from whose/which files the item is produced |
| CustodianOther | Name of the person(s), in addition to the Custodian, from whose files the item would have been produced if it had not been de-duplicated |
| FileSize | Size (in kilobytes) of the source native file |
| SourceFilePath[1] | The directory structure or path where the original file was stored on the party's source computer system, ending in the filename. Any container name (such as ZIP or PST containers) is included in the path. |
| HashValue | The MD5 or SHA-1 or IntMsgID hash value of the item. |

---

[1] This field may be excluded if the producing party determines it includes information protected by any applicable privilege or immunity.

| Field Name | Field Description |
|---|---|
| NativeFileLink | Relative path for documents provided in native format only. **The linked file must be named per the BegBates value. |
| SourceParty | Name of party producing the item |
| RecordType | Indicates item type (*e.g.*, email, edoc, attachment) |
| FileType | (*e.g.*, Outlook, Adobe Acrobat, MS Word, etc.) |
| FileExtension | Indicates file extension of the file e.g., .docx, .pptx |
| DateSent (mm/dd/yyyy) | Date email or calendar item was sent |
| TimeSent (hh:mmAM/PM) | Time email or calendar item was sent  (Date and time fields may be combined) |
| DateReceived | Date email or calendar item was received |
| TimeReceived | Time email or calendar item was received (Date and time fields may be combined) |
| To | The names and/or SMTP email addresses of all recipients that were included on the "To" line of the email or calendar item |
| From | The name and/or SMTP email address of the sender of the email or calendar item |
| CC | The names and/or SMTP email addresses of all recipients that were included on the "CC" line of the email or calendar item |
| BCC | The names and/or SMTP email addresses of all recipients that were included on the "BCC" line of the email or calendar item |
| Number of Attachments | Number of attached, embedded or grouped items |
| DateCreated (mm/dd/yyyy) | Date the item was created |
| TimeCreated (hh:mm AM/PM) | Time the item was created (Date and time fields may be combined) |
| ModifiedBy | Person who last modified or saved the item, as populated in the metadata or document properties of the native file |
| LastModDate (mm/dd/yyyy) | Date the item was last modified |

| Field Name | Field Description |
|---|---|
| LastModTime (hh:mm AM/PM) | Time the item was last modified |
| FileName | The filename of the source native file for an ESI item |
| Title | Any value populated in the Title field of the source file metadata or item properties |
| Subject/E-Mail Subject | Any value populated in the Subject field of the source file metadata or document properties(*e.g.*, subject line of email or calendar item) |
| Author | Creator of the document; any value populated in the Author field of the source file metadata or document properties |
| TextPath | Full relative path to the location of the document-level text file. |
| Redacted | User-generated field that will indicate redactions. With the word "REDACTED". Otherwise, blank. |
| Confidentiality | User-generated field that will indicate confidentiality. With the word "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY" as applicable.  Otherwise, blank. |

1

IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

2

3

Dated: August 17, 2020

4

Lieff Cabraser Heimann & Bernstein, LLP          Sidley Austin LLP

5

6

By: */s/ Roger N. Heller*                                        By: */s/ Sean A. Commons*
Michael W. Sobol (SBN 94857)                          Sean A. Commons (SBN 217603)

7

Roger N. Heller (SBN 215348)                            Rara Kang (SBN 307236)
Daniel E. Seltz (pro hac vice granted)                 SIDLEY AUSTIN LLP

8

Avery S. Halfon (pro hac vice granted)               555 West Fifth Street, Suite 4000
LIEFF CABRASER HEIMANN &                         Los Angeles, CA 90013

9

BERNSTEIN, LLP                                                 Telephone:  (213) 896-6000
275 Battery Street, 29th Floor                             Facsimile:   (213) 896-6600

10

San Francisco, CA  94111-3339
Telephone:  415.956.1000                                  Evan M. Tager (admitted *pro hac vice*)

11

Facsimile:  415.956.1008                                    Archis A. Parasharami (SBN 321661)
                                                                           Kevin S. Ranlett (admitted *pro hac vice*)

12

Daniel M. Hattis (SBN 232141)                         MAYER BROWN LLP
Paul Karl Lukacs (SBN 197007)                        1999 K Street N.W.

13

HATTIS & LUKACS                                           Washington, D.C. 20006
400 108th Ave NE, Ste. 500                              Telephone: (202) 263-3000

14

Bellevue, WA 98004                                          Facsimile: (202) 263-3300
Telephone: (425) 233-8650

15

Facsimile:  (425) 412-7171                                Samantha C. Booth (SBN 298852)
                                                                           Two Palo Alto Square, Suite 300

16

*Attorneys for Plaintiffs and the Proposed*          3000 El Camino Real
*Class*                                                                Palo Alto, CA 94306

17

                                                                           Telephone: (650) 331-2000
                                                                           Facsimile:  (650) 331-2060

18

                                                                           *Attorneys for Defendant*

19

20

PURSUANT TO STIPULATION, IT IS SO ORDERED.

21

DATED: _____       _____

22

                                                           Judge: Hon. Laurel Beeler
                                                           United States District/Magistrate Judge

23

24

25

26

27

28

STIPULATION AND ORDER REGARDING THE
PRODUCTION OF ELECTRONICALLY STORED
INFORMATION ("ESI") AND HARD COPY

1

**ECF CERTIFICATION**

2          Pursuant to Local Rule 5-1(i)(3), the filing attorney attests that he has obtained concurrence

3    regarding the filing of this document from the signatories to the document.

4

5    Dated:  August 17, 2020          */s/ Daniel E. Seltz*

6                                      Daniel E. Seltz

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 5 -