1   Michael W. Sobol (State Bar No. 194857)
    Roger N. Heller (State Bar No. 215348)
2   Daniel E. Seltz (admitted pro hac vice)
    Jallé Dafa (State Bar No. 290637)
3   Avery S. Halfon (admitted pro hac vice)
    LIEFF CABRASER HEIMANN & BERNSTEIN LLP
4   275 Battery Street, 29th Floor
    San Francisco, CA 94111
5   Telephone: (415) 956-1000

6   Daniel M. Hattis (State Bar No. 232141)
    Paul Karl Lukacs (State Bar No. 197007)
7   HATTIS & LUKACS
    400 108th Ave NE, Ste. 500
8   Bellevue, WA 98004
    Telephone: (425) 233-8650

9

10  *Attorneys for Plaintiffs and the Proposed Class*

11

12                  UNITED STATES DISTRICT COURT

13                NORTHERN DISTRICT OF CALIFORNIA

14

15  IAN VIANU,
    ELIZABETH BLUM, and              Case No. 3:19-cv-03602-LB
16  DOMINIC GUTIERREZ, on behalf of
    themselves and all others similarly situated,
17                                    **FIRST AMENDED CLASS ACTION**
                  Plaintiffs          **COMPLAINT**
18
    v.                                **(1) VIOLATION OF CAL. BUSINESS &**
19                                    **PROFESSIONS CODE § 17200;**
    AT&T MOBILITY LLC,                **(2) VIOLATION OF CAL. BUSINESS &**
20                                    **PROFESSIONS CODE § 17500;**
                  Defendant.          **(3) VIOLATION OF CAL. CIVIL CODE**
21                                    **§ 1750;**
                                      **(4) PERMANENT PUBLIC INJUNCTIVE**
22                                    **RELIEF;**
                                      **(5) BREACH OF THE IMPLIED**
23                                    **COVENANT OF GOOD FAITH AND FAIR**
                                      **DEALING**
24

25                                    **JURY TRIAL DEMANDED**

26

27

28

                                      FIRST AMENDED CLASS ACTION COMPLAINT
                                      CASE NO. 3:19-CV-03602-LB
    2304106.1

Plaintiffs Ian Vianu, Elizabeth Blum, and Dominic Gutierrez (together, "Plaintiffs") bring each cause of action in this First Amended Class Action Complaint in their individual capacities and/or on behalf of a class of similarly situated consumers, as set forth below, against Defendant AT&T Mobility LLC ("AT&T") and respectfully allege as follows:

**INTRODUCTION**

1.      This case challenges a bait-and-switch scheme perpetrated by AT&T against its wireless service customers.  AT&T prominently advertises particular flat monthly rates for its post-paid wireless service plans.  Then, after customers sign up, AT&T actually charges higher monthly rates than the customers were promised and agreed to pay.  AT&T covertly increases the actual price by padding all post-paid wireless customers' bills each month with a bogus so-called "Administrative Fee" (currently $1.99 every month for each phone line) on top of the advertised price.  The Administrative Fee is not disclosed to customers before or when they sign up, and in fact it is never adequately and honestly disclosed to them.  The so-called Administrative Fee is not, in fact, a bona fide administrative fee, but rather is simply a means for AT&T to charge more per month for the service itself without having to advertise the higher prices.

2.      Through this scheme, AT&T has unfairly and improperly extracted hundreds of millions of dollars in ill-gotten gains from California consumers.

3.      The first time AT&T even mentions the existence of the Administrative Fee is on customers' monthly billing statements, which they begin receiving only after they sign up for the service and are financially committed to their purchase.

4.      Making matters worse, AT&T deliberately hides the Administrative Fee in its billing statements.  In AT&T's printed monthly billing statements, AT&T intentionally buries the Administrative Fee in a portion of the statement that: (a) makes it likely customers will not notice it; and (b) misleadingly suggests that the Administrative Fee is akin to a tax or another standard government pass-through fee, when in fact it is simply a way for AT&T to advertise and promise lower rates than it actually charges.  Thus, by AT&T's own design, the printed monthly statements serve to further AT&T's scheme and keep customers from realizing they are being overcharged.  Moreover, in AT&T's online billing statements that Plaintiffs and numerous other

2304106.1

AT&T wireless customers receive in lieu of printed statements (AT&T encourages customers to sign up for online billing), the default view for the billing statements does not even include any line item at all for the Administrative Fee that AT&T systematically charges to all of its post-paid customers.

5.     Deep within AT&T's website—where by design it is unlikely to be viewed by consumers, and certainly not before they purchase their wireless service plans—there is currently a purported description of the Administrative Fee.  Not only does this description fail to constitute an adequate disclosure of the Administrative Fee, it serves to further AT&T's deception and scheme by suggesting that the Administrative Fee is tied to certain costs associated with AT&T providing wireless telephone services (interconnect charges and cell site rental charges).  Assuming this description were accurate, it would merely reinforce that this undisclosed fee should be included in the advertised monthly price for the service because those are basic costs of providing wireless service itself, and thus a reasonable consumer would expect those costs to be included in the advertised price for the service.  Moreover, on information and belief, the fee is not, in fact, tied to the costs that AT&T's buried description suggests.  This is corroborated by the fact that AT&T has repeatedly increased the amount of the monthly Administrative Fee since the fee was first imposed, while during that same time period the stated costs that the Administrative Fee is purportedly paying for (i.e., interconnect charges and cell site rental charges) have actually *decreased* according to AT&T's financial statements.

6.     In all events, AT&T should clearly disclose the Administrative Fee and should clearly and accurately state the true monthly prices for its post-paid wireless service plans in its price representations and advertising.  AT&T has failed to do so, and continues to fail to do so.

7.     AT&T first began sneaking the Administrative Fee into all of its post-paid wireless service customers' bills in 2013, initially at a rate of $0.61 per month per line.  For customers who had signed up prior to that time, like Plaintiff Vianu, AT&T made no disclosure to them that this additional charge could or would be added to drive up the true monthly price. The first these customers could have possibly learned about the existence of the Administrative Fee was if they noticed it on a monthly statement when the fee was introduced, which they would have received

months or even years after they signed up with AT&T. For customers who signed up after the Administrative Fee was first introduced in 2013, like Plaintiffs Elizabeth Blum and Dominic Gutierrez, AT&T likewise made no disclosure to them in its advertising or during the sign-up process of the existence of the Administrative Fee or that the true monthly price of the service plans would actually be higher than advertised and represented because of this bogus fee.

8.      Since the Administrative Fee was first introduced in 2013, AT&T has increased the amount of the fee three times, including twice over a three-month period in 2018. The current amount that AT&T charges all post-paid wireless customers for this fee is $1.99 per line every month, i.e., more than 200% more than the original amount of the fee. In the past eight years, AT&T has used this Administrative Fee scheme to improperly squeeze California consumers for hundreds of millions of dollars, if not more, in additional charges.

9.      In essence, AT&T introduced the bogus Administrative Fee as a way to covertly increase the actual monthly price customers are charged for their service, and then has continued to use the Administrative Fee and unilateral increases thereto as a lever by which AT&T continues to ratchet up the price without the customer realizing and after the customer is already committed. This scheme has enabled, and continues to enable, AT&T to effectively increase its rates without having to publicly announce those higher rates, and allows AT&T to entice more customers by misrepresenting the costs customers would pay both in absolute terms and relative to other wireless providers in the industry.

10.     Plaintiffs, by this action, seek a public injunction to enjoin AT&T from its false advertising practice and to require AT&T to disclose to the consuming public, in advance, the true costs consumers will pay for its wireless services.

11.     Plaintiffs further seek, on behalf of themselves and a class of all similarly situated California consumers, an award of damages, restitution, pre- and post-judgment interest, attorneys' fees and costs, and permanent injunctive relief, including but not limited to that AT&T discontinue charging Plaintiffs and the putative class members the improper Administrative Fees.

## THE PARTIES

12.     Plaintiff Ian Vianu is a citizen and resident of Alameda County, California.

13.     Plaintiff Elizabeth Blum is a citizen and resident of Sacramento County, California.

14.     Plaintiff Dominic Gutierrez is a citizen and resident of Sacramento County, California.

15.     Defendant AT&T Mobility LLC ("AT&T") is a Delaware limited liability company with its principal office or place of business at 1025 Lenox Park Boulevard NE, Atlanta, GA 30319.  AT&T transacts business in this district and throughout the United States.

**JURISDICTION AND VENUE**

16.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because the amount in controversy, exclusive of interest and costs, exceeds $5,000,000, and this is a proposed class action in which there are members of the proposed Class who are citizens of a state different from AT&T.

17.     This Court has personal jurisdiction over AT&T because, without limitation: (1) AT&T has purposely availed itself of the privileges of conducting business activities in California; (2) AT&T currently maintains systematic and continuous business contacts with California including marketing, selling, and issuing wireless services to Plaintiffs and other California consumers; (3) AT&T has entered into contracts with Plaintiffs and other California consumers to provide wireless services; and (4) AT&T maintains offices and retail locations throughout California.  AT&T has sufficient minimum contacts with California to render the exercise of jurisdiction by this Court permissible.

18.     Venue is proper pursuant to 28 U.S.C. §1391 because Plaintiff Vianu resides in this District; many of the acts and transactions giving rise to this action occurred in this District; AT&T is authorized to conduct business in this District, has intentionally availed itself of the laws and markets within this District through distribution and sale of its services in this District, does substantial business in this District, and is subject to personal jurisdiction in this District.

19.     Intra-District Assignment.  This action is properly assigned to the San Francisco/Oakland Division, where Plaintiff Vianu resides.

2304106.1

1

## COMMON FACTUAL ALLEGATIONS

2     20.     AT&T falsely advertises its wireless services at lower monthly rates than it

3   actually charges customers, by not disclosing and not including in the advertised price a bogus

4   "Administrative Fee" which AT&T imposes on all post-paid wireless service customers each

5   month.

6     21.     The so-called "Administrative Fee" is not, in fact, a bona fide administrative fee,

7   but rather is simply a way for AT&T to charge more per month for the service itself without

8   having to advertise the true, higher prices.

9     22.     Since it first began imposing the Administrative Fee, AT&T has increased the

10  dollar amount of the fee on three occasions, in essence using the fee as a lever to covertly,

11  improperly, and unilaterally jack up the monthly rates for the services without having to publicly

12  disclose to consumers the higher actual monthly prices.  AT&T has deliberately rolled out the

13  Administrative Fee and the increases thereto in a manner and timing that is designed by AT&T to

14  further ensure that they go unnoticed by customers.

15    23.     Through the scheme alleged herein, AT&T has, in effect, created a way to

16  advertise and promise a lower monthly service price than it actually charges, and to secretly

17  further increase its service price to existing customers at its whim, via this below-the-line hidden

18  and deceptive Administrative Fee.

19    24.     Revealingly, while it systematically imposes the Administrative Fee on all *post-*

20  *paid* wireless customers, AT&T does *not* impose an Administrative Fee or any similar

21  undisclosed charge on its *pre-paid* wireless service customers—i.e., the customers who pay

22  month-to-month, in advance, for AT&T wireless services[1]—even though AT&T's purported

23  service cost defrayment explanation for the Administrative Fee (charged to post-paid customers

24  only) would seem to apply to both groups equally if at all.  Presumably, this differential treatment

25  is explained by the fact that AT&T does not see an opportunity to bait-and-switch pre-paid

26  customers who know and pay the actual monthly charges before agreeing to receive the services.

27  _____

28  [1] A "pre-paid" plan is one where the customer pays up front for a month or other fixed time period of service to be received. A "post-paid" plan, by contrast, is one where the customer signs up for a plan and is then billed each month during the plan for the services they receive.

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 3:19-CV-03602-LB

2304106.1

### A.     The Administrative Fee

25.     The Administrative Fee is a uniform, per-phone line flat charge that AT&T adds to the bills of all AT&T post-paid wireless service customers across the country every month. AT&T unilaterally sets the amount of the Administrative Fee at its sole discretion.  It is unrelated to any taxes or government assessments.

26.     AT&T first began imposing the Administrative Fee in approximately May 2013, at an initial rate of $0.61 per month per phone line.  The fee was added to the bills of all post-paid wireless customers, including customers like Plaintiff Vianu who had signed up for the services well before the Administrative Fee even existed.

27.     Since the Administrative Fee was first imposed in 2013, AT&T has unilaterally increased the monthly amount of the fee three times.  AT&T increased the Administrative Fee to $0.76 per month per phone line starting in June 2016.  Then, in 2018, the increases became larger and more frequent (around the same time AT&T's parent company incurred significant debt in acquiring Time Warner Inc.).  AT&T raised the Administrative Fee to $1.26 per month per phone line starting in April 2018, and then again to $1.99 per month per phone line starting in June 2018, which is the current monthly fee as of this filing.  Thus, between March 2018 and June 2018 alone, AT&T increased the Administrative Fee from $0.76 to $1.99 per month per phone line, a whopping 162% increase in just three months.

### B.     AT&T Fails to Disclose the Administrative Fee to Customers.

28.     At all relevant times, AT&T has aggressively advertised its post-paid wireless service plans through pervasive marketing directed at the consuming public in California and throughout the United States, including via high-profile television, radio, and online advertisements, and on its website and through materials at its numerous retail stores and the stores of third party businesses (e.g., Apple Stores, Best Buy) where customers can sign up for AT&T wireless services.

29.     In all of these locations and through all of these channels, AT&T consistently and prominently advertises particular flat monthly prices for its post-paid wireless service plans, without disclosing or including the Administrative Fee in the advertised price.  Neither the

- 7 -

existence nor the amount of the Administrative Fee is disclosed or adequately disclosed to customers prior to or at the time they sign up for the services.

30.     By way of example only, AT&T ran two broad-scale national television advertisements in 2016 that promoted the price for its post-paid wireless services as $180 per month for four lines.[2]  The flat monthly rate was prominently featured in the advertisements. There was no asterisk next to the advertised price or other qualifier disclosing the Administrative Fee.  At the tail end of the advertisements, there was some *very* tiny fine print that appeared on the bottom of the screen, five sentences long and so tiny as to render it unreadable by any reasonable consumer.  The fourth of these five tiny print sentences said that "Fees, monthly & other charges, add'l usage & other restr's apply."  There was no voice reading this tiny print, and viewers were not directed, even in the print itself, to anywhere they might learn what such fees are.

31.     As another example, in 2017, AT&T ran a broad-scale national television advertisement promoting its wireless service plans for under $40 per line per month, again with no asterisk (adjacent to the advertised price or anywhere else) or voice reading of the fine print.[3] The flat monthly rate was prominently featured in the advertisement.  The advertisement did not mention the Administrative Fee.  This ad, too, had very tiny print on the screen, appearing for just a few seconds and unreadable by a reasonable consumer.  One of several tiny print sentences (appearing for about three seconds) said that "Other charges, add'l usage & other rest's apply." Viewers were not directed to anywhere they might learn what such fees are.

32.     The unreadable, tiny print references in these advertisements to fees and other charges does not remotely constitute an adequate disclosure of the Administrative Fee by AT&T, particularly in light of the prominence routinely given to the supposed flat monthly service charges in AT&T's marketing.  Moreover, in any event, as alleged herein, the Administrative Fee is not, in fact, a bona fide administrative fee, but rather is simply a way for AT&T to charge more

---

[2] These 2016 ads can be viewed at https://www.ispot.tv/ad/AOz0/at-and-t-unlimited-plan-instant-crowd and https://www.ispot.tv/ad/At1d/at-and-t-unlimited-plan-data-rich-song-by-ti.

[3] This 2017 ad can be viewed here: https://www.ispot.tv/ad/Avvw/at-and-t-unbelievable-song-by-emf.

1    for the service itself than is advertised.

2          33.    Likewise, for years, AT&T's proprietary website has advertised its post-paid

3    wireless service plans prominently featuring the supposed flat monthly prices for the services, and

4    not disclosing or adequately disclosing the Administrative Fee.  For example, when this case was

5    filed, AT&T's website listed four post-paid wireless plan options prominently at the top, and a

6    configurator which showed different prices for each plan depending on how many lines (between

7    one and four) the consumer selected. For instance, if a consumer chose a single line under the

8    "AT&T Unlimited &More" plan, the price displayed was $70 per line, for a total of $70 per

9    month.  If the consumer instead chose four lines under that same plan, the price displayed was

10   $40 per line, for a total of $160 per month.  Each of these options was presented as having a flat

11   rate per month, with no asterisk or any other suggestion that the monthly cost for the service

12   would actually be higher than the large bold flat monthly prices prominently presented.

13   Customers could click a link directly under those advertised prices to sign up for those services.

14   Neither the existence nor the amount of the Administrative Fee (which was in fact an additional

15   $1.99 monthly charge for each line, e.g., $7.96 per month for four lines) was disclosed or

16   adequately disclosed, though AT&T of course knew that it planned to charge the fee and in what

17   amount.  For customers who signed up for AT&T wireless service plans via the AT&T website,

18   there was no disclosure at all to them regarding the existence or the amount of the Administrative

19   Fee, including on the final order submittal page.  AT&T's website continues to prominently

20   represent supposed flat monthly prices for AT&T's post-paid wireless services and fails to

21   disclose or adequately disclose the Administrative Fee.

22         34.    Likewise, for years, for those customers who contact an AT&T service

23   representative about wireless service plans, either by phone or online, AT&T customer service

24   personnel, as a matter of company policy, are trained to present the customer with the advertised

25   flat monthly prices without disclosing the Administrative Fee.  If a potential customer calls

26   AT&T's customer sales agents, or reaches out via web chat, and asks what if any other fees will

27   be charged, the agents as a matter of company policy say that the only additions to the advertised

28   prices (besides subscriptions to extra services or features) are taxes or other government-related

- 9 -

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 3:19-CV-03602-LB

2304106.1

1    fees passed on by AT&T to the customers.

2          35.    Similarly, for years, if a consumer shops for a wireless service plan at an AT&T

3    store, they are presented with the advertised supposed monthly service prices and nothing is

4    disclosed to them about the Administrative Fee.  The AT&T stores use a uniform sales process in

5    which a sales representative walks customers through a proprietary sales application on an in-

6    store iPad.  For those customers who purchase their wireless service plans in-store, AT&T does

7    not disclose the Administrative Fee anywhere in this in-store sign-up process.  In fact, AT&T

8    does not disclose the total monthly price customers would pay after taxes, fees, and other charges

9    at any time before the customer receives their first monthly statement (weeks after signing up).

10   There is no option to view the total monthly charges on the in-store iPad sales application, and

11   sales agents are unaware of (or are trained to pretend to be unaware of) details beyond the fact

12   that *taxes* will be charged on top of the advertised monthly prices.

13         36.    Customers may also sign up for AT&T wireless service plans at certain authorized

14   third-party retail stores.  The customer experience in these stores is, in all material respects

15   pertinent to this action, the same as in the AT&T stores.  Thus, if a consumer shops for an AT&T

16   wireless service plan at a third-party retailer (e.g., Apple Store or Best Buy), they are presented

17   with the advertised supposed monthly service prices and nothing is disclosed to the customer

18   about the Administrative Fee.  At these stores, as at the AT&T stores, the customer purchase

19   process is conducted through an iPad or other electronic display, the relevant content of which is

20   determined by AT&T and does not include a disclosure of the Administrative Fee.  On

21   information and belief, the pricing information and disclosures which are provided to customers

22   in third-party stores are provided to the third-party retailers by AT&T.

23         37.    Because the Administrative Fee is flat, uniform nationwide, and set by AT&T,

24   AT&T knows what the "fee" is at any given time before any prospective customer signs up, and

25   AT&T could easily and clearly disclose the fee as part of its advertised prices.  However, as

26   alleged herein, AT&T does not disclose the Administrative Fee or its amount to customers or

27   potential customers.  There is no disclosure or adequate disclosure of the amount of the fee, and

28   the only description of the Administrative Fee is buried deep in the fine print of its website—

- 10 -

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 3:19-CV-03602-LB

2304106.1

1   where AT&T knows customers are unlikely to visit and where they are not required to visit

2   before signing up—and the description itself is false and misleading, as alleged further herein.

3                **C.      AT&T Continues to Deceive Customers After They Sign Up.**

4            38.     AT&T continues to deceive customers about the Administrative Fee and the true

5   monthly price of the services, even after they have signed up for the services.

6            39.     For customers, like Plaintiff Vianu, who signed up with AT&T before the

7   Administrative Fee even existed, the first time they possibly could have learned about the fee's

8   existence was on their April 2013 billing statement one month prior to the fee being first imposed,

9   which would have been months or even years after the customer signed up.  For customers who

10  signed up after AT&T began imposing the fee, like Plaintiffs Blum and Gutierrez, the billing

11  statements are likewise the first possible chance they might have had to learn about the fee, and

12  by the time they received their first statement they were already committed to their purchase.

13           40.     Moreover, far from constituting even a belated disclosure, the monthly billing

14  statements serve to further AT&T's scheme and deception.  AT&T's monthly statements (which,

15  again, customers only begin receiving after they have signed up and are committed): (a) bury the

16  Administrative Fee and the increases thereto so that they will continue to go unnoticed by

17  customers; and (b) for those customers who do manage to spot the fee on their statements, the

18  statements present the Administrative Fee in a location and manner that misleads the customer

19  regarding the nature of the fee.

20           41.     AT&T's printed statements prior to September 2018 included a section titled

21  "Monthly Charges," which listed a "Total Monthly Charges" amount for the wireless services and

22  a breakdown of those charges.  The Administrative Fee was *not* included as a line item in this

23  section, nor was the dollar amount of the Administrative Fee included in the "Total Monthly

24  Charges."  Instead, the Administrative Fee was relegated to a different section, further down in

25  the statement, titled "Surcharges and Other Fees."  Every other charge in that "Surcharges and

26  Other Fees" section is for government costs that AT&T must pay (e.g., taxes), except the

27  Administrative Fee.  This placement strongly suggests to customers who even notice the fee that

28  the Administrative Fee is akin to a tax or is another government-related pass-through charge,

1   which it is not.

2        42.    AT&T's printed statements beginning in September 2018 similarly included a

3   section under each phone number titled "Monthly Charges," and a breakdown of those charges.

4   Neither the Administrative Fee nor its dollar amount is included as a line item in this section.

5   Instead, the Administrative Fee is relegated to a different section, further down in the statement,

6   titled "Surcharges & fees." Like in the "Surcharges and Other Fees" section in the bills prior to

7   September 2018, every other charge in the "Surcharges & fees" section is for government costs

8   AT&T must pay (e.g. taxes,), except the Administrative Fee. This again suggests to customers

9   who even notice the fee that the Administrative Fee is akin to a tax or is another government-

10  related pass-through charge, which it is not.

11       43.    Many, if not most, customers will not read the printed monthly statements

12  described above at all because AT&T encourages its customers to sign up for electronic billing

13  (in lieu of receiving paper statements).  Those who sign up for electronic billing (like all three

14  Plaintiffs) receive emails from AT&T directing them to an AT&T payment website.  On that

15  payment website, customers have the option to either click "Make a payment" or "See my bill."

16  If the customer clicks "Make a payment," they would not see any disclosure at all of the

17  Administrative Fee or any notice of increases thereto.  If the customer clicks "See my bill," they

18  are taken to a screen showing, as a default, only the total amount due.  To review details of the

19  bill, the customer would have to click a "+" sign, and then once the text is expanded, the

20  customer would have to click a second nested "+" sign to expand even more text.  There, in a

21  section separate from and below the "Monthly plan charges" is another section labelled

22  "Surcharges & fees," where the Administrative Fee is listed, similar to how it is misleadingly

23  listed in the printed statements.  No explanation of the Administrative Fee is provided there.

24       44.    If a customer happens to notice the Administrative Fee has been charged on their

25  monthly statement, and contacts AT&T via phone or online to inquire about the fee, AT&T

26  agents tell the customer that the Administrative Fee is like a tax or another pass-through

27  government charge.

28       45.    If customers realize that their actual total monthly bill is higher than promised

2304106.1

when they receive their monthly billing statements, they cannot simply back out of the deal without penalty, even if they notice the fee and overcharge on their very first statement.[4]

a.      First, when customers sign up they pay a one-time activation fee (currently $30) that is refundable for only three days—well before they receive even their *first* monthly bill (which they receive approximately two weeks after they sign up, either via an email notice directing them to a payment website as described above, or via a mailed printed billing statement if they have not signed up for electronic billing).

b.      Second, customers who signed up for a one-year or two-year service commitment (the majority of customers until at least 2016) are charged an early termination fee of up to $325 if they cancel their service more than 14 days after purchase (again, the customers don't even receive notice of their *first* statement until around that same date or later).

c.      Third, many customers purchase devices (such as new cellular phones) with their service plans; indeed, AT&T markets devices and wireless plans in bundles.  The devices can only be returned to AT&T within the first 14 days after purchase. If customers return a device within 14 days of purchase (again, typically still before receipt of the first monthly billing statement), they pay a restocking fee of up to $55 or 10% of accessory prices over $100. If they wait longer than 14 days, it is too late and they are on the hook for the full purchase price of the device.

d.      Fourth, since 2016, AT&T has offered installment plans to pay for new devices that are tied to customers' service plans.  Instead of a one-year or two-year service commitment, many AT&T wireless customers today ostensibly have a month-to-month service plan but sign 24-month or 30-month installment agreements with AT&T under which customers pay for their cellular phone (i.e., the device) in monthly installments. For example, a customer would pay, for an $800 phone, an equipment "installment" charge of $33.33 on each monthly AT&T bill for 24 months.  If a customer cancels her service plan any time before the installment plan is paid off, the full outstanding balance of her device becomes due immediately in a single balloon payment.  For example, even if the customer notices the Administrative Fee on her very

---

[4] *See* https://www.att.com/shop/wireless/returnpolicy.html.

2304106.1

1   first monthly statement (despite AT&T's efforts to hide it), and thereby immediately chooses to

2   cancel her service, AT&T will demand that the customer immediately pay the entire remaining

3   $800 balance all at once.  (If she returns the device within the 14-day return deadline, typically

4   prior to having received the first bill, she must still pay the restocking fee mentioned above.)  In

5   this way the installment plan balloon payment is similar to an early termination fee, creating a

6   large immediate cost to cancelling the AT&T service plan once customers learn their plans'

7   actual monthly prices are higher than advertised.

8       46.     The activation fee, restocking fee, early termination fee, and installment balloon

9   payment all function as ways to penalize and deter customers from cancelling after signing up,

10  and AT&T's policies (including the cancellation/return periods and how they relate to the timing

11  of the billing statements) are deliberately and knowingly designed by AT&T to lock customers in

12  if and when they deduce that they are being charged more per month than advertised.

13      47.     Because both the initial amount of the Administrative Fee charged in 2013 ($0.61)

14  and each of the three subsequent increases to the Administrative Fee have been by less than one

15  dollar each, AT&T knows that customers are unlikely to notice the increased charge on the total

16  price on their monthly bills.  Given that taxes and other government-related charges can already

17  vary by amounts smaller than one dollar from month to month, AT&T knows that customers

18  reasonably expect small changes in the total amount billed each month and will not be able to tell

19  that AT&T imposed or increased the Administrative Fee simply by comparing the total amount

20  billed that month to the total billed in the prior month or months.  For example, on information

21  and belief, AT&T intentionally split its 2018 increases of the Administrative Fee across a three-

22  month period (a $0.50 increase in April 2018, a one-month pause, and then another $0.73 increase

23  in June 2018) in order to make its planned total $1.23 fee increase harder for its customers to

24  detect.

25      48.     Each time AT&T has increased the Administrative Fee, AT&T has hidden the

26  increase by providing no disclosure or language whatsoever anywhere on the first billing

27  statement containing that increase.  Even a customer viewing the full long-form printed bill would

28  have zero notice that AT&T had increased the fee, or why their monthly total charge might be

- 14 -

1   higher than the prior month's total.

2        49.    The only place AT&T mentions to existing customers that it plans to increase the

3   Administrative Fee is on the printed monthly billing statement the month before the fee is actually

4   raised, and even then, each of the three times the fee was increased, AT&T buried that inadequate

5   "disclosure" among a mix of advertisements and notices unrelated to price increases.  For

6   example, before AT&T was set to increase the Administrative Fee to its current rate of $1.99 per

7   month in June 2018, AT&T buried an inadequate notice in its May 2018 printed billing

8   statements, in the third paragraph of a seldom-read section titled "News You Can Use."  The first

9   two paragraphs described how customers could "Get Customer Support Online" or "Build Your

10  Bundle. Find out about special offers."  Neither the title of this section nor the first two items

11  would alert customers that a *price increase* would be announced below (in the third item).

12       50.    Even if customers noticed that AT&T imposed or increased the Administrative

13  Fee, as discussed above, they would have to pay penalties at that point if they wanted to cancel

14  their AT&T service after learning of the fee or of a fee increase, as alleged herein.  AT&T has

15  drafted its contractual terms regarding cancellation fees and the like so that there are no

16  exceptions, meaning these cancellation fees and similar costs would apply no matter how high

17  AT&T chose to unilaterally increase the Administrative Fee.

18       51.    To wit, with respect to customers with a one-year or two-year service commitment

19  (which comprised the majority of customers until at least 2016), AT&T told an industry reporter,

20  after the fee was first imposed in 2013, that the Administrative Fee was "not a rate increase, and

21  customers won't be able to terminate their contract without penalty, that is, paying an early

22  termination fee."[5]  AT&T took this position even though its form Wireless Customer Agreement

23  stated that "if we increase the price of any of the services to which you subscribe . . . you may

24  terminate this agreement without paying an early termination fee . . . provided your notice of

25  termination is delivered to us within thirty (30) days" (capitalization omitted).

26       52.    AT&T's Wireless Customer Agreement has stated for years that customers with

27  service commitments may cancel service without paying an early termination fee by notifying

28

---

[5] https://www.cnet.com/news/is-at-ts-admin-fee-just-a-sneaky-way-of-raising-rates/

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 3:19-CV-03602-LB

2304106.1

AT&T within 30 days of a materially adverse change; but, the Wireless Customer Agreement *also* stated that changes to "surcharges" (which AT&T falsely and unfairly claimed the Administrative Fee is) are *not* materially adverse changes.  The current version of the agreement includes similar language, but, without any explanation, has added "fees" to the list of non-materially adverse changes.  Based on this language, AT&T does not allow customers with service commitments to cancel service after an increase to the Administrative Fee (no matter the amount of the increase) without paying an early termination fee of up to $325.

53.     As explained above, for customers with equipment installment plans, cancellation after discovery of an increase in the Administrative Fee would likewise require an immediate balloon payment of the entire equipment cost (often in the hundreds of dollars).

**D.     AT&T's Buried Description of the Administrative Fee is Inadequate and Misleading.**

54.     Buried deep within AT&T's website—in a location AT&T knows reasonable consumers are unlikely to venture, and where they are not required and are highly unlikely to venture before signing up for the services—is a purported description of the Administrative Fee. This description does not remotely constitute an adequate disclosure to customers or prospective customers of the Administrative Fee.  Moreover, this description was not even available prior to the time the Administrative Fee was first imposed in 2013—including, e.g., when Plaintiff Vianu and many other customers signed up with AT&T.  Moreover, this buried description is itself false and misleading in all events.

55.     The description in question states that the Administrative Fee helps defray a portion of (a) charges AT&T or its agents pay to interconnect with other carriers to deliver calls from AT&T customers to their customers, and (b) charges associated with cell site rents and maintenance.  The description states that the Administrative Fee amount is subject to change "as AT&T's costs change," further suggesting that the amount of the fee is tied to AT&T's costs for interconnections and cell sites.

56.     A similar description was provided in the fine print at the bottom of AT&T's printed billing statements through approximately July 2018.  There, AT&T likewise stated that

- 16 -

the Administrative Fee was "to help defray certain expenses AT&T incurs, such as interconnection and cell site rents and maintenance." Starting in July 2018, AT&T removed this description from its billing statements. Starting in June 2019, AT&T resumed including a similar statement in the fine print at the bottom of its printed billing statements.

57.    The buried website description and similar buried fine print descriptions on the printed bills, described above, constitute AT&T's lone descriptions of the Administrative Fee. These descriptions are grossly inadequate and misleading.

58.    On information and belief, AT&T's description of the Administrative Fee is highly misleading if not outright false. AT&T's own public filings with the Securities & Exchange Commission, during the time period since the Administrative Fee was first imposed, have repeatedly stated that interconnection charges have been *decreasing* for years, even as AT&T has *increased* the Administrative Fee *by more than 200%* during that same time frame.

59.    For example, in AT&T's 2015 Annual Report, under its Consumer Mobility segment, AT&T reported a $2.4 billion decrease in operations and support expenses compared to the year before. AT&T credited $434 million of the $2.4 billion decrease to reduced network costs "primarily due to lower interconnect costs."

60.    AT&T's 2016 Annual Report again credited "lower network costs of $246 [million] driven by a decline in interconnect costs" as a primary contributor to the $1.8 billion decrease in operations and support expenses.

61.    AT&T's 2017 Annual Report reported a $765 million decrease in overall "other costs of services" expenses, credited in part to "lower traffic compensation and wireless interconnect costs."

62.    According to AT&T's 2018 Annual Report and 2019 Annual Report, AT&T's "operations and support expenses" continued to decline in those years.

63.    AT&T's Annual Reports since 2015 have not mentioned cell site rental or maintenance costs at all, implying that those are not a primary contributing factor to AT&T's expenses.

64.    Even if the Administrative Fee were truly tied to the costs of interconnection and

- 17 -

1  cell sites, customers would reasonably expect those costs to be *included* in the basic monthly rate

2  AT&T charges for wireless services.  After all, interconnectivity (connecting customers to

3  networks) and cell site rental and maintenance are basic parts of providing wireless services.

4  AT&T would not be able to provide functional or competitive wireless services without those

5  basic parts.  Thus, in all events, AT&T should be including the Administrative Fee as part of the

6  advertised monthly prices for its services, which as discussed herein it has never done and still

7  does not do.  AT&T's failure to do so, in and of itself, constitutes an unfair and deceptive practice

8  that is actionable under the claims pled herein.

9       65.     Contrary to AT&T's description, the Administrative Fee is *actually* used by

10  AT&T as a way to covertly jack up its monthly service prices, and thereby squeeze hundreds of

11  millions of additional dollars out of its customers, without having to advertise the true, higher

12  prices.

13       66.     As alleged above, the increases to the Administrative Fee are not, as AT&T's

14  buried description suggests, tied to changes in the costs of providing the services.  Rather, on

15  information and belief, AT&T has increased the fee, and thus has increased the monthly amounts

16  billed to consumers, in large part to fund unrelated corporate liabilities of its parent company

17  AT&T Inc., including to pay down the debt incurred in connection with the acquisition of Time

18  Warner Inc. in 2018.

19  **PLAINTIFFS' FACTUAL ALLEGATIONS**

20  **Plaintiff Ian Vianu**

21       67.     Plaintiff Ian Vianu is, and at all relevant times has been, a California resident.

22       68.     Mr. Vianu first became an AT&T post-paid wireless customer on or around

23  December 21, 2011.  He signed up for his first AT&T post-paid wireless service plan for a single

24  phone line at an AT&T store in the California Bay Area.  He signed up for a service contract with

25  AT&T that was at least one-year in length.  He also purchased an iPhone along with the service

26  contract, as part of a bundle.

27       69.     When Mr. Vianu purchased his wireless service plan, AT&T prominently

28  advertised, to Mr. Vianu and to the public, that the plan would cost a particular monthly price.

- 18 -

1    AT&T did not disclose to Mr. Vianu, at any time before or when he signed up, that AT&T would

2    or might later add an Administrative Fee on top of the advertised and promised monthly price.

3          70.     Mr. Vianu continued to have the same AT&T post-paid service plan until

4    approximately December 2014.

5          71.     AT&T first began charging Mr. Vianu an Administrative Fee in May 2013, at

6    $0.61 per month.  Mr. Vianu did not receive notice or adequate notice that the Administrative Fee

7    would be charged or regarding the nature or basis of the fee.  AT&T has continued to charge Mr.

8    Vianu an Administrative Fee each month from May 2013 to the present.  During that time, AT&T

9    has increased the amount of the Administrative Fee charged to Mr. Vianu three times.  AT&T

10   increased the Administrative Fee to $0.76 in June 2016.  AT&T increased the Administrative Fee

11   again to $1.26 per month in April 2018.  AT&T increased the Administrative Fee again, just two

12   months later in June 2018, to $1.99 per month, which is the current fee amount as of this filing.

13         72.     Through its imposition of the Administrative Fees, AT&T has for several years

14   charged Mr. Vianu a higher price for the services each month than AT&T advertised and that he

15   was promised and expected to pay.

16         73.     On or around December 21, 2014, Mr. Vianu changed his AT&T wireless service

17   plan by visiting an AT&T store in San Francisco, California.  During this visit, Mr. Vianu also

18   purchased a new iPhone through AT&T on a 30-payment installment plan.  Again, when Mr.

19   Vianu made his purchase, AT&T prominently advertised, to Mr. Vianu and to the public, a

20   particular monthly price for the service plan, and did not disclose the Administrative Fee.  When

21   Mr. Vianu switched his plan at the AT&T store, a salesperson walked him through a proprietary

22   sales process on an iPad. During this process, AT&T represented to Mr. Vianu the supposed

23   monthly price for the service, upon which Mr. Vianu reasonably relied.  The price that AT&T

24   stated did not include the Administrative Fee, nor did it reflect the true total amount he would be

25   charged each month (inclusive of the Administrative Fee).  Nor did AT&T disclose that the total

26   price, inclusive of the Administrative Fee, would or might increase, including during the 30-

27   payment period under Mr. Vianu's installment plan, as a result of increases to the Administrative

28   Fee.

2304106.1

74.     Mr. Vianu made further changes to his AT&T service plan on or about January 11, 2015.  Again, the Administrative Fee was never disclosed to him.

75.     On or around April 29, 2017, Mr. Vianu visited an AT&T store in Berkeley, California, and purchased a new iPhone on a 30-payment "AT&T Next" installment plan. When Mr. Vianu purchased the new iPhone, he did not change his existing wireless plan. Again, the Administrative Fee was never disclosed to him.

76.     At the time he purchased his original AT&T wireless post-paid service plan in 2011, Mr. Vianu signed up for AT&T electronic billing, as AT&T encouraged him to do.  Mr. Vianu has been signed up for AT&T electronic billing at all times since then.  Through that channel, Mr. Vianu has paid and continues to pay his monthly AT&T bill by clicking on a link in a monthly AT&T billing email, which in turn takes him to a website where he can pay his bill. As alleged above, like the printed monthly statements, AT&T's electronic billing process is deliberately designed in a manner that keeps the Administrative Fee hidden from customers. AT&T's monthly electronic billing did not inform or adequately disclose to Mr. Vianu that AT&T was adding an Administrative Fee to his bill each month.

77.     The first Mr. Vianu ever learned of the Administrative Fee's existence was in early 2018, when he examined a PDF version of his full printed statement to understand why his bill had increased by some $15.00.  Prior to that time, he had no idea about the existence of the Administrative Fee.  Based on the location of the Administrative Fee on the statement he examined, Mr. Vianu believed when he read the statement that the Administrative Fee was a pass-through government cost that AT&T was required to charge, like a tax.  At the bottom of the billing statement, there was fine print misleadingly describing the Administrative Fee, as described in more detail above.

78.     From April 29, 2017 through October 21, 2019, Mr. Vianu was enrolled in an "AT&T Next" installment plan for his cellular phone.  If Mr. Vianu had cancelled his AT&T wireless service before the installment payments were complete, he would have had to pay the full remaining balance immediately in a single balloon payment.  For example, when AT&T raised the Administrative Fee to $1.99 in June 2018, Mr. Vianu had an outstanding balance of

- 20 -

1    $346.61 on his AT&T Next plan for his cellular phone.  If Mr. Vianu did not wish to pay this

2    newly increased Administrative Fee, he would have needed to cancel his service, upon which

3    AT&T would have immediately required him to make a $346.61 balloon payment to AT&T.

4            79.     When Mr. Vianu agreed to purchase his AT&T service plans, he was relying on

5    AT&T's prominent representations, in each instance, regarding the monthly price of the services.

6    While he understood that taxes might be added to the price, he did not expect that AT&T would

7    charge a bogus so-called Administrative Fee on top of the advertised service price or that the true

8    price of the services would include an additional Administrative Fee which AT&T could and

9    would increase at its whim.  That information would have been material to him.  Had he known

10   that information he would not have been willing to pay as much for his plans and/or would have

11   acted differently.

12           80.     Mr. Vianu remains a current AT&T post-paid wireless customer as of this filing,

13   and is currently enrolled in a 30-payment "AT&T Next" installment plan for the phone for which

14   he receives his current service.  Mr. Vianu has been an AT&T customer for years and would like

15   to, and intends to, sign up for AT&T post-paid wireless service plans in the future, however he

16   would very much like to be able to rely on the truth of AT&T's advertisements and

17   representations regarding the price of the services.

18   **Plaintiff Elizabeth Blum**

19           81.     Plaintiff Elizabeth Blum is, and at all relevant times has been, a California

20   resident.

21           82.     Ms. Blum first became an AT&T post-paid wireless customer on or around the end

22   of 2015. She signed up for her AT&T post-paid wireless service plan for a single phone line at an

23   AT&T store in Davis, California.

24           83.     When Ms. Blum purchased her AT&T service plan, AT&T prominently

25   advertised, to Ms. Blum and to the public, that the plan would cost a particular monthly price.

26   AT&T did not disclose to Ms. Blum, at any time before or when she signed up, that AT&T would

27   charge her the Administrative Fee on top of the advertised and promised monthly price.

28           84.     AT&T charged Ms. Blum an Administrative Fee of $0.61 per month per line

- 21 -

beginning on her first bill.  Ms. Blum did not receive notice or adequate notice that the Administrative Fee would be charged or regarding the nature or basis of the fee.  AT&T increased the Administrative Fee charged to Ms. Blum to $0.76 in June 2016. AT&T charged the Administrative Fee to Ms. Blum every month from her sign-up until she ended her account.

85.    Ms. Blum continued to have the same AT&T post-paid service plan until on or around January 29, 2018.  On or around January 29, 2018, Ms. Blum transferred her AT&T phone number to the newly established AT&T account of her husband, Dominic Gutierrez.

86.    Through its imposition of the Administrative Fees, AT&T charged Ms. Blum a higher price for her service each month than AT&T advertised and that Ms. Blum was promised and expected to pay.

87.    When Ms. Blum purchased her first AT&T service plan on or around the end of 2015, she signed up for AT&T electronic billing and AutoPay, as AT&T encouraged her to do. Ms. Blum was signed up for AT&T electronic billing and AutoPay at all times from the date of her sign-up until she transferred her phone number to her husband's account in late January 2018. Through the electronic billing process, Ms. Blum received a monthly AT&T billing email which stated her bill total and informed her that her bill would be automatically paid by the payment due date because she had AutoPay.  As alleged above, like the printed monthly statements, AT&T's electronic billing process is deliberately designed in a manner that kept the Administrative Fee hidden from customers.  AT&T's AutoPay feature further discouraged customers from reviewing their monthly bill and noticing the Administrative Fee or increases to the fee.  Even if Ms. Blum reviewed the electronic bills, as discussed above, the electronic billing was designed in a way to hide the Administrative Fees.  AT&T's monthly electronic billing did not inform or adequately disclose to Ms. Blum that AT&T was adding an Administrative Fee to her bill each month.

88.    Ms. Blum first learned of the Administrative Fee's existence in August 2021.

89.    When Ms. Blum agreed to purchase her AT&T service plan on or around the end of 2015, she was relying on AT&T's prominent representations regarding the monthly price of the service.  While she understood that taxes might be added to the price, she did not expect that AT&T would charge a bogus so-called Administrative Fee on top of the advertised service price

1   or that the true price of her service would include an additional Administrative Fee which AT&T

2   could and would increase at its whim.  That information would have been material to her.  Had

3   she known that information, she would not have been willing to pay as much for her plan and/or

4   would have acted differently.

5         90.   Ms. Blum would like to, and intends to, sign up for AT&T post-paid wireless

6   service plans in the future, however she would very much like to be able to rely on the truth of

7   AT&T's advertisements and representations regarding the price of the services.

8   **Plaintiff Dominic Gutierrez**

9         91.   Plaintiff Dominic Gutierrez is, and at all relevant times has been, a California

10   resident.

11         92.   Mr. Gutierrez first became an AT&T post-paid wireless customer on or around

12   January 29, 2018.  He signed up for his first AT&T post-paid wireless service plan over the phone

13   with an AT&T agent.  Gutierrez signed up for three lines of service on the account: one line for

14   his wireless phone, one line for his laptop, and one line for his wife Elizabeth Blum who

15   transferred her service to Mr. Gutierrez's new account.

16         93.   When Mr. Gutierrez purchased his AT&T service plan, AT&T prominently

17   advertised, to Mr. Gutierrez and to the public, that the plan would cost a particular monthly price.

18   AT&T did not disclose to Mr. Gutierrez, at any time before or when he signed up, that AT&T

19   would charge him the Administrative Fee on top of the advertised and promised monthly price.

20         94.   AT&T charged Mr. Gutierrez an Administrative Fee of $0.76 per month per line

21   beginning on his first bill in March 2018.  Mr. Gutierrez did not receive notice or adequate notice

22   that the Administrative Fee would be charged or regarding the nature or basis of the fee.  AT&T

23   has continued to charge Mr. Gutierrez an Administrative Fee each month, for each of his service

24   lines, from February 2018 to the present.  During that time, AT&T has increased the amount of

25   the Administrative Fee charged to Mr. Gutierrez two times.  AT&T first increased the

26   Administrative Fee to $1.26 per month in April 2018—just one month after he purchased his

27   AT&T service plan.  AT&T then increased the Administrative Fee again, two months later in

28   June 2018, to $1.99 per month, which is the current fee amount as of this filing.

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 3:19-CV-03602-LB

2304106.1

95.     Through its imposition of the Administrative Fees, AT&T has for several years charged Mr. Gutierrez a higher price for the services each month than AT&T advertised and that he was promised and expected to pay.

96.     When he purchased his AT&T service plan in February 2018, Mr. Gutierrez signed up for AT&T electronic billing and AutoPay, as AT&T encouraged him to do.  Mr. Gutierrez has been signed up for AT&T electronic billing and AutoPay at all times since then. Through this billing process, Gutierrez receives a monthly AT&T billing email which states his bill total and informs him that his bill will be automatically paid by the payment due date because he has AutoPay.  As alleged above, like the printed monthly statements, AT&T's electronic billing process is deliberately designed in a manner that keeps the Administrative Fee hidden from customers.  AT&T's AutoPay feature further discourages customers from reviewing their monthly bill and noticing the Administrative Fee or increases to the fee.  Even if he reviews the electronic bills, as discussed above, the electronic billing is designed in a way to hide the Administrative Fees.  AT&T's monthly electronic billing did not inform or adequately disclose to Gutierrez that AT&T was adding an Administrative Fee to his bill each month.

97.     Mr. Gutierrez first learned of the Administrative Fee's existence in October 2020.

98.     On or around April 12, 2021, Mr. Gutierrez's wife Elizabeth Blum, who was an authorized user on Mr. Gutierrez's AT&T account, called AT&T to purchase a new phone.  On that phone call with an AT&T agent, Ms. Blum purchased a new iPhone 12 mini smartphone on a 30-payment "AT&T Next" installment plan, to be charged to Mr. Gutierrez's account.

99.     Mr. Gutierrez remains a current AT&T post-paid wireless customer as of this filing. Mr. Gutierrez is currently enrolled in an "AT&T Next" installment plan for the iPhone 12 mini used by his wife Ms. Blum. If Mr. Gutierrez were to cancel his AT&T wireless service before the installment payments are complete, he would have to pay the full remaining balance immediately in a single balloon payment.

100.     When Mr. Gutierrez agreed to purchase his AT&T service plan, he was relying on AT&T's prominent representations regarding the monthly price of the service.  While he understood that taxes might be added to the price, he did not expect that AT&T would charge a

- 24 -

bogus so-called Administrative Fee on top of the advertised service price or that the true price of the services would include an additional Administrative Fee which AT&T could and would increase at its whim.  That information would have been material to him.  Had he known that information, he would not have been willing to pay as much for his plan and/or would have acted differently.

101.    Mr. Gutierrez would like to, and intends to, sign up for AT&T post-paid wireless service plans in the future, however he would very much like to be able to rely on the truth of AT&T's advertisements and representations regarding the price of the services.

### CLASS ALLEGATIONS

102.    As described herein, Plaintiffs bring this lawsuit on behalf of themselves and all others similarly situated, pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and (b)(3).

103.    Plaintiffs seek to represent the following Class:

> **All individual consumers in California who currently subscribe or formerly subscribed to a post-paid wireless service plan from AT&T Mobility LLC ("AT&T") and were charged what AT&T labeled an "Administrative Fee" within the applicable statutes of limitations.**

104.    Excluded from the above Class are AT&T and any entities in which AT&T has a controlling interest, their officers, directors, employees, and agents, the judge to whom this case is assigned, members of the judge's staff, and the judge's immediate family.

105.    **Numerosity.**  The members of the Class are so numerous that joinder of all members would be impracticable.  While Plaintiffs do not know the exact number of Class members prior to discovery, upon information and belief, there are at least a million Class members.

106.    **Commonality and Predominance**.  This action involves multiple common questions which are capable of generating class-wide answers that will drive the resolution of this case.  These common questions predominate over any questions affecting individual Class members, if any.  These common questions include, but are not limited to, the following:

a.    Whether AT&T adequately disclosed the Administrative Fee and its dollar amount as part of the advertised price of its post-paid wireless services;

b.     Whether the Administrative Fee and the true price of AT&T's post-paid wireless services are material information, such that a reasonable consumer would find that information important to their purchase decision;

c.     Whether AT&T's advertising and representations of services prices that do not include the Administrative Fee, together with its billing and collecting of the Administrative Fee on top of such prices, is unfair and/or deceptive;

d.     Whether a reasonable consumer is likely to be deceived by AT&T's conduct and omissions alleged herein;

e.     Whether AT&T's description of the Administrative Fee is false and/or misleading; and

f.     Whether AT&T has violated the covenant of good faith and fair dealing, implied in its form contracts with its Plaintiffs and the Class, by imposing and increasing the Administrative Fee in the manner alleged herein.

107.   **Typicality**.  Plaintiffs, like all Class Members, are current or former California subscribers of post-paid AT&T wireless service plans who have been charged Administrative Fees by AT&T.  Their claims all arise from the same course of conduct by AT&T and are based on the same legal theories.  Plaintiffs' claims are typical of the Class members' claims.

108.   **Adequacy**.   Plaintiffs and their counsel will adequately protect the Class' interests.  Plaintiffs have no interests antagonistic to Class members' interests and are committed to representing the best interests of the Class.  Moreover, Plaintiffs have retained counsel who are highly experienced in prosecuting complex class action and consumer protection cases.

109.   **Superiority.** A class action is superior to all other available methods for fairly and efficiently adjudicating this controversy.  Each Class member's interests are small compared to the burden and expense required to litigate each of their claims individually, so it would be impractical and would not make economic sense for Class members to seek individual redress for AT&T's conduct.  Individual litigation would add administrative burden on the courts, increasing the delay and expense to all parties and to the court system.  Individual litigation would also create the potential for inconsistent or contradictory judgments regarding the same uniform

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 3:19-CV-03602-LB

2304106.1

1    conduct.  A single adjudication would create economies of scale and comprehensive supervision

2    by a single judge.  Moreover, Plaintiffs do not anticipate any difficulties in managing a class

3    action trial.

4        110.    By its conduct and omissions alleged herein, AT&T has acted and refused to act

5    on grounds that apply generally to the Class, such that final injunctive relief and/or declaratory

6    relief is appropriate respecting the Class as a whole.

7        111.    The nature of AT&T's misconduct is non-obvious and/or obscured from public

8    view, and neither Plaintiffs nor the members of the Class could have, through the use of

9    reasonable diligence, learned of the accrual of their claims against AT&T at an earlier time. This

10   Court should, at the appropriate time, apply the discovery rule to extend any applicable

11   limitations period (and the corresponding class period) to the date on which AT&T first began

12   charging the Administrative Fee.[6]

13                    **NULLITY OF ARBITRATION PROVISION**

14       112.    AT&T's arbitration provision is null and void as to Plaintiffs and the Class.  *See*

15   Dkt. 56.

16                            **CAUSES OF ACTION**

17                          **FIRST CAUSE OF ACTION:**
                **Violation of California's Unfair Competition Law ("UCL")**
18               **California Business & Professions Code § 17200,** *et seq.*

19       113.    Plaintiffs reallege and incorporate by reference every allegation set forth in the

20   preceding paragraphs as though alleged in this cause of action.

21       114.    California Business & Professions Code § 17200, *et seq.*, also known as

22   California's Unfair Competition Law (UCL), prohibits any unfair, unlawful, or fraudulent

23   business practice.

24       115.    By its conduct and omissions alleged herein, AT&T's has violated the "unfair"

25   prong of the UCL, including without limitation by: (a) pervasively misrepresenting AT&T

26   wireless service plan prices while failing to disclose and/or to adequately disclose that AT&T

27   _____

28   [6] Plaintiffs recognize that the Court has rejected application of the discovery rule in this case
     (Dkt. 88 at 9, 13-14, 16).  Plaintiffs are including this paragraph to preserve arguments on this
     issue for any appeal.

FIRST AMENDED CLASS ACTION COMPLAINT
                                                CASE NO. 3:19-CV-03602-LB
     2304106.1

actually charges higher monthly prices than advertised, through its imposition of Administrative Fees on top of the advertised price; (b) pervasively representing lower-than-actual AT&T wireless service plan prices that do not include the Administrative Fee and then subsequently charging the Administrative Fee (an additional charge for the service itself) on top of such prices; (c) continuing to hide, obscure, and misrepresent the Administrative Fees even after customers have signed up; (d) charging a so-called "Administrative Fee" that is not in fact a bona fide administrative fee; (e) imposing and increasing the Administrative Fee on customers without notice or adequate notice; (f) preventing existing customers from canceling their services after learning the actual total monthly amount they are charged or learning of the Administrative Fee or increases to the Administrative Fee; and (g) imposing and increasing the Administrative Fee as a covert way to increase the actual monthly prices customers pay for their services without having to advertise the actual higher prices and/or in response to unrelated corporate costs incurred by its corporate parent.

116.    AT&T's conduct and omissions alleged herein are immoral, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiffs and the Class. Perpetrating a years-long scheme of misleading and overcharging customers is immoral, unethical, and unscrupulous.  Moreover, AT&T's conduct is oppressive and substantially injurious to consumers. By its conduct alleged herein, AT&T has improperly extracted millions of dollars from California consumers. There is no utility to AT&T's conduct, and even if there were any utility, it would be significantly outweighed by the gravity of the harm to consumers caused by AT&T's conduct alleged herein.

117.    AT&T's conduct and omissions alleged herein also violate California public policy, including as such policy is reflected in Cal. Civ. Code § 1750 *et seq.* and Cal. Civ. Code §§ 1709-1710.

118.     By its conduct and omissions alleged herein, AT&T has violated the "unlawful" prong of the UCL, including by making material misrepresentations and omissions in violation of Cal. Bus. & Prof. Code § 17500 *et seq.* and Cal. Civ. Code § 1750, *et seq.,* engaging in deceit in violation of Cal Civ. Code §§ 1709-1710, and violating the implied covenant of good faith and

1    fair dealing, in violation of California common law.

2        119.    AT&T has violated the "fraudulent" prong of the UCL by making material

3    misrepresentations and omissions, including regarding: (a) the true prices of its post-paid wireless

4    service plans; (b) the existence and amount of Administrative Fees; and (c) the nature and basis of

5    the Administrative Fees.

6        120.    With respect to omissions, AT&T at all relevant times had a duty to disclose the

7    information in question because, *inter alia*: (a) AT&T had exclusive knowledge of material

8    information that was not known to Plaintiffs and the Class; (b) AT&T concealed material

9    information from Plaintiffs and the Class; and (c) AT&T made partial representations, including

10    regarding the supposed monthly prices of the services, which were false and misleading absent

11    the omitted information.

12        121.    AT&T's material misrepresentations and nondisclosures were likely to mislead

13    reasonable consumers, existing and potential customers, and the public.

14        122.    AT&T's misrepresentations and nondisclosures deceive and have a tendency to

15    deceive the general public and reasonable consumers.

16        123.    AT&T's misrepresentations and nondisclosures are material, such that a

17    reasonable person would attach importance to the information and would be induced to act on the

18    information in making purchase decisions.

19        124.    Plaintiffs and members of the proposed Class reasonably relied on AT&T's

20    material misrepresentations and nondisclosures, and would not have purchased, or would have

21    paid less money for, AT&T's wireless service plans had they known the truth.

22        125.    By its conduct and omissions alleged herein, AT&T received more money from

23    Plaintiffs and the Class than it should have received, including the excess Administrative Fees

24    that AT&T charged Plaintiffs and the Class on top of the advertised prices for the service plans,

25    and that money is subject to restitution.

26        126.    By its conduct and omissions alleged herein, AT&T caused the demand for its

27    post-paid wireless service plans to be artificially increased and caused all customers of those

28    plans, including Plaintiffs and the Class, to pay premiums to AT&T.

127.     As a direct and proximate result of AT&T's unfair, unlawful, and fraudulent conduct, Plaintiffs and the proposed Class members lost money.

128.     AT&T's conduct has caused substantial injury to Plaintiffs, proposed Class members, and the public.  AT&T's conduct is ongoing and is likely to continue and recur absent a permanent injunction.  Accordingly, Plaintiffs seek an order enjoining AT&T from committing such unlawful, unfair, and fraudulent business practices.  Plaintiffs further seek an order granting restitution to Plaintiffs and the Class in an amount to be proven at trial.   Plaintiffs further seek an award of attorneys' fees and costs under Cal. Code Civ. Proc. § 1021.5.

129.     Absent injunctive relief, AT&T will continue to injure Plaintiffs and the Class members.  AT&T's misrepresentations and omissions regarding the true service plan prices and regarding the Administrative Fees are ongoing.  Moreover, AT&T continues to charge customers the unfair and unlawful Administrative Fees.  Even if such conduct were to cease, it is behavior that is capable of repetition or re-occurrence by AT&T, which is a dominant player in the industry and has many millions of customers in California alone.

130.     Plaintiffs individually seek public injunctive relief, under the UCL, to protect the general public from AT&T's false advertisements and omissions—including AT&T's advertising of monthly service rates that do not reflect the true rates, and AT&T's failure to disclose or adequately disclose the true rates or the Administrative Fees.

**SECOND CAUSE OF ACTION:**
**Violation of California's False Advertising Law ("FAL")**
**California Business & Professions Code § 17500,** *et seq.*

131.     Plaintiffs reallege and incorporate by reference every allegation set forth in the preceding paragraphs as though alleged in this cause of action.

132.     By its conduct and omissions alleged herein, AT&T has committed acts of untrue and misleading advertising, as defined by and in violation of California Business & Professions Code § 17500, *et seq.*, also known as California's False Advertising Law (FAL).  These acts include but are not limited to: (a) misrepresenting the prices of its wireless service plans; (b) failing to disclose or adequately disclose the true prices of its wireless service plans and the existence, amount, or nature of Administrative Fees; (c) continuing to hide, obscure, and

2304106.1

1    misrepresent the Administrative Fee even after customers sign up; and (d) describing the

2    Administrative Fee, in its buried description, in a manner that is false and misleading.

3           133.    With respect to omissions, AT&T at all relevant times had a duty to disclose the

4    information in question because, *inter alia*: (a) AT&T had exclusive knowledge of material

5    information that was not known to Plaintiffs and the Class; (b) AT&T concealed material

6    information from Plaintiffs and the Class; and (c) AT&T made partial representations, including

7    regarding the supposed monthly prices of the services, which were false and misleading absent

8    the omitted information.

9           134.    AT&T's misrepresentations and nondisclosures deceive and have a tendency to

10   deceive the general public.

11          135.    AT&T's misrepresentations and nondisclosures are material, in that a reasonable

12   person would attach importance to the information and would be induced to act on the

13   information in making purchase decisions.

14          136.    Plaintiffs and members of the proposed Class reasonably relied on AT&T's

15   material misrepresentations and nondisclosures, and would not have purchased, or would have

16   paid less money for, AT&T's service plans had they known the truth.

17          137.    By its conduct and omissions alleged herein, AT&T received more money from

18   Plaintiffs and the Class than it should have received, including the excess Administrative Fees

19   that AT&T charged Plaintiffs and the Class on top of the advertised prices for the service plans,

20   and that money is subject to restitution.

21          138.    By its conduct and omissions alleged herein, AT&T caused the demand for its

22   post-paid wireless service plans to be artificially increased and caused all customers of those

23   plans, including Plaintiffs and the Class, to pay premiums to AT&T.

24          139.    As a direct and proximate result of AT&T's violations of the FAL, Plaintiffs and

25   the proposed Class members lost money.

26          140.    AT&T's conduct has caused substantial injury to Plaintiffs, proposed Class

27   members, and the public. AT&T's conduct is ongoing and is likely to continue and recur absent a

28   permanent injunction. Accordingly, Plaintiffs seek an order enjoining AT&T from committing

2304106.1

1    such violations of the FAL.  Plaintiffs further seek an order granting restitution to Plaintiffs and

2    the Class in an amount to be proven at trial.   Plaintiffs further also seek an award of attorneys'

3    fees and costs under Cal. Code Civ. Proc. § 1021.5.

4         141.    Absent injunctive relief, AT&T will continue to injure Plaintiffs and the Class

5    members.  AT&T's misrepresentations and omissions regarding the true service plan prices and

6    regarding the Administrative Fees are ongoing.  Moreover, AT&T continues to charge customers

7    the unfair and unlawful Administrative Fees.  Even if such conduct were to cease, it is behavior

8    that is capable of repetition or re-occurrence by AT&T, which is a dominant player in the industry

9    and has many millions of customers in California alone.

10        142.    Plaintiffs individually seek public injunctive relief, under the FAL, to protect the

11   general public from AT&T's false advertisements and omissions—including AT&T's advertising

12   of monthly service rates that do not reflect the true rates, and AT&T's failure to disclose or

13   adequately disclose the true rates or the Administrative Fees.

14                        **THIRD CAUSE OF ACTION:**
                **Violation of the Consumer Legal Remedies Act ("CLRA")**
15                     **California Civil Code § 1750, _et seq._**

16        143.    Plaintiffs reallege and incorporate by reference every allegation set forth in the

17   preceding paragraphs as though alleged in this cause of action.

18        144.    AT&T is a "person" within the meaning of Cal. Civ. Code § 1761(c).

19        145.    Plaintiffs and the proposed Class members are "consumers," as defined by Cal.

20   Civ. Code §1761(d).

21        146.    The wireless service plans that AT&T marketed and sold are "services," as defined

22   by Cal. Civ. Code §1761(a) and (b).

23        147.    The purchases of AT&T's wireless service plans by Plaintiffs and proposed Class

24   members are "transactions," as defined by Cal. Civ. Code § 1761(e).

25        148.    Plaintiffs and proposed Class members purchased AT&T's wireless service plans

26   for personal, family, and household purposes as meant by Cal. Civ. Code § 1761(d).

27        149.    Venue is proper under Cal. Civil Code § 1780(d) because a substantial portion of

28   the transactions at issue occurred in this county.  Plaintiffs' declarations establishing that this

1    Court is a proper venue for this action are attached hereto as **Exhibit A**.

2         150.    AT&T intentionally deceived Plaintiffs and proposed Class members, and

3    continues to deceive the public, by misrepresenting the prices of its services and by failing to

4    disclose or adequately disclose the Administrative Fee or the true prices of the services.  AT&T

5    has intentionally deceived Plaintiffs and the proposed Class members, and continues to deceive

6    the public, by misrepresenting and failing to disclose or adequately disclose material information

7    about the true prices of the services and about the existence, amount, and basis of the

8    Administrative Fee.

9         151.    AT&T's conduct alleged herein has violated the CLRA in multiple respects,

10   including, but not limited to, the following:

11             a.       AT&T advertised its wireless service plans with an intent not to sell them

12   as advertised (Cal. Civ. Code § 1770(a)(9));

13             b.       AT&T misrepresented that its wireless service plans were supplied in

14   accordance with previous representations when they were not (Cal. Civ. Code § 1770(a)(16)); and

15             c.       AT&T inserted unconscionable provisions in its consumer agreements,

16   including an arbitration clause which waives the right to seek public injunctive relief in any

17   forum, in violation of California law.

18        152.    With respect to omissions, AT&T at all relevant times had a duty to disclose the

19   information in question because, *inter alia*: (a) AT&T had exclusive knowledge of material

20   information that was not known to Plaintiffs and the Class; (b) AT&T concealed material

21   information from Plaintiffs and the Class; and (c) AT&T made partial representations, including

22   regarding the supposed monthly prices of the services, which were false and misleading absent

23   the omitted information.

24        153.    AT&T's misrepresentations and nondisclosures deceive and have a tendency to

25   deceive the general public.

26        154.    AT&T's misrepresentations and nondisclosures are material, in that a reasonable

27   person would attach importance to the information and would be induced to act on the

28   information in making purchase decisions.

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 3:19-CV-03602-LB

2304106.1

155.    Plaintiffs and members of the proposed Class reasonably relied on AT&T's material misrepresentations and nondisclosures, and would not have purchased, or would have paid less money for, AT&T's service plans had they known the truth.

156.    As a direct and proximate result of AT&T's violations of the CLRA, Plaintiffs and the proposed Class members have been damaged.

157.    AT&T's conduct alleged herein caused substantial injury to Plaintiffs, proposed Class members, and the public.  AT&T's conduct is ongoing and is likely to continue and recur absent a permanent injunction.  Accordingly, Plaintiffs seek an order enjoining AT&T from committing such practices.  Plaintiffs also seek attorneys' fees and costs.

158.    Plaintiffs individually seek public injunctive relief, under the CLRA, to protect the general public from AT&T's false advertisements and omissions.

159.    In accordance with California Civil Code § 1782(a), on June 20, 2019, Plaintiffs' counsel served AT&T with notice of its CLRA violations by certified mail, return receipt requested.  A true and correct copy of that notice was filed as Dkt. 1-1.  AT&T failed to provide appropriate relief for its CLRA violations within 30 days of the notification letter.  Plaintiffs seek compensatory and exemplary damages as permitted by Cal. Civ. Code §§ 1780 and 1782(b).  *See also* Dkt. 101 (stipulated Order that: "(a) the CLRA Claim in the [initial Complaint, Dkt.1] shall be deemed to incorporate a request, on behalf of Plaintiffs and the proposed class, for compensatory and exemplary damages; and (b) AT&T's Answer [to the initial Complaint, Dkt. 89] shall be deemed to deny that either Plaintiffs or the proposed class are entitled to compensatory and exemplary damages").

## FOURTH CAUSE OF ACTION:
### (Individually)

### Permanent Public Injunctive Relief
### Under California Civil Code § 3422 and All Inherent or Other Authority

160.    Plaintiffs reallege and incorporate by reference every allegation set forth in the preceding paragraphs as though alleged in this cause of action.

161.    If not enjoined by this Court, AT&T will continue to injure the general public through its false advertising and omissions alleged herein, which are directed at the consuming

public, including in California.

162.    In order to prevent injury to the general public, Plaintiffs individually seek public injunctive relief in the form of a judgment and injunction to permanently enjoin AT&T from its false advertising and to require AT&T to disclose to the public in advance the true prices consumers will pay for AT&T's wireless services if they sign up, or as the Court otherwise deems just and proper.

163.    The balance of the equities favors the entry of permanent public injunctive relief. The general public will continue to be harmed, and AT&T's unlawful behavior is likely to continue, absent the entry of permanent public injunctive relief.  Therefore, a public injunction is in the public interest.

### FIFTH CAUSE OF ACTION:
#### Breach of the Implied Covenant of Good Faith and Fair Dealing

164.    Plaintiffs reallege and incorporate by reference every allegation set forth in the preceding paragraphs as though alleged in this cause of action.

165.    Plaintiffs allege this cause of action in the alternative.

166.    To the extent AT&T's Wireless Customer Agreement could be read as granting AT&T discretion to impose and/or increase the Administrative Fee, which Plaintiffs do not concede, that discretion is not unlimited, but rather is limited by the covenant of good faith and fair dealing implied in every contract by California law.

167.    AT&T has violated the covenant of good faith and fair dealing by its conduct alleged herein.

168.    AT&T has abused any discretion it had under the contract to impose or increase the Administrative Fee.  On information and belief, AT&T imposed and increased the Administrative Fee that it charged, not, as AT&T misleadingly stated in its buried description, in response to cell site rental and maintenance costs or interconnectivity costs, which AT&T's financial statements show have gone down at the same time AT&T has significantly increased the amount of the fee.  Rather, AT&T imposed and has increased the Administrative Fee as a covert way to increase customers' monthly rates without having to advertise such higher rates.  On

1  information and belief, AT&T increased the Administrative Fee in large part to fund unrelated

2  corporate liabilities of its parent company AT&T Inc., including to pay down the debt incurred in

3  connection with the acquisition of Time Warner Inc. in 2018.

4      169.    AT&T's imposition and increasing of the Administrative Fees defied customers'

5  reasonable expectations, was objectively unreasonable, frustrated the basic terms of the parties'

6  agreement, and defied even AT&T's own buried description of the fee.  AT&T's conduct alleged

7  herein was arbitrary and in bad faith.

8      170.    AT&T's conduct described herein has had the effect, and the purpose, of denying

9  Plaintiffs and Class members the full benefit of their bargains with AT&T.

10     171.    Plaintiffs and the Class members have performed all, or substantially all, of the

11 obligations imposed on them under their contracts with AT&T.  There is no legitimate excuse or

12 defense for AT&T's conduct.

13     172.    Any attempts by AT&T to defend its overcharging through reliance on contractual

14 provisions will be without merit.  Any such provisions are either inapplicable or are

15 unenforceable because they are void, illusory, lacking in mutuality, are invalid exculpatory

16 clauses, violate public policy, are procedurally and substantively unconscionable, and are

17 unenforceable in light of the hidden and deceptive nature of AT&T's misconduct, among other

18 reasons. Any such provisions, if any, would not excuse AT&T's abuses of discretion or otherwise

19 preclude Plaintiffs and the Class from recovering for breaches of the covenant of good faith and

20 fair dealing.

21     173.    Plaintiffs and members of the Class sustained damages as a result of AT&T's

22 breaches of the covenant of good faith and fair dealing.  Plaintiffs seek damages in an amount to

23 be proven at trial.

24                              **PRAYER FOR RELIEF**

25     174.    In order to prevent injury to the general public, Plaintiffs individually request that

26 the Court enter a public injunction, under the UCL, FAL, and CLRA, enjoining AT&T from

27 falsely advertising the prices of its wireless service plans and from concealing the true prices of

28 its wireless service plans;

2304106.1

1    175.    Further, on behalf of themselves and the proposed Class, Plaintiffs request that the

2    Court order relief and enter judgment against AT&T as follows:

3         a.    Declare this action to be a proper class action, certify the proposed Class,

4    and appoint Plaintiffs and their counsel to represent the Class;

5         b.    Permanently enjoin AT&T from engaging in the misconduct alleged

6    herein, and order AT&T to discontinue charging the Administrative Fees to its customers in

7    California;

8         c.    Order AT&T to pay damages and restitution to Plaintiffs and the Class in

9    an amount to be proven at trial;

10        d.    Order AT&T to pay exemplary and/or punitive damages;

11        e.    Order AT&T to pay court attorneys' fees, costs, and pre-judgment and

12    post-judgment interest;

13        f.    Retain jurisdiction to monitor AT&T's compliance with the permanent

14    injunctive relief; and

15        g.    Provide all other relief to which Plaintiffs and the Class may show

16    themselves justly entitled.

17

18

19

20

21

22

23

24

25

26

27

28

2304106.1

## JURY DEMAND

176.    Plaintiffs demand a trial by jury on all issues so triable.


Dated: September 20, 2021                    Respectfully submitted,

                                             LIEFF CABRASER HEIMANN & BERNSTEIN, LLP


                                             By:  /s/ Michael W. Sobol
                                             _____

                                             LIEFF CABRASER HEIMANN & BERNSTEIN LLP
                                             Michael W. Sobol (State Bar No. 194857)
                                             Roger N. Heller (State Bar No. 215348)
                                             Daniel E. Seltz (admitted pro hac vice)
                                             Jallé Dafa (State Bar No. 290637)
                                             Avery S. Halfon (admitted pro hac vice)
                                             275 Battery Street, 29th Floor
                                             San Francisco, CA 94111
                                             (415) 956-1000
                                             (415) 956-1008 (fax)

                                             HATTIS & LUKACS
                                             Daniel M. Hattis (State Bar No. 232141)
                                             Paul Karl Lukacs (State Bar No. 197007)
                                             400 108th Ave NE, Ste. 500
                                             Bellevue, WA 98004
                                             (425) 233-8650
                                             (425) 412-7171 (fax)

                                             *Attorneys for Plaintiffs and the Proposed Class*

2304106.1

# EXHIBIT A

1   Michael W. Sobol (State Bar No. 194857)
Roger N. Heller (State Bar No. 215348)
2   Sarah R. London (State Bar No. 267083)
Avery S. Halfon (pro hac vice forthcoming)
3   LIEFF CABRASER HEIMANN & BERNSTEIN LLP
275 Battery Street, 29th Floor
4   San Francisco, CA 94111
Telephone: (415) 956-1000
5

6   Daniel M. Hattis (State Bar No. 232141)
Paul Karl Lukacs (State Bar No. 197007)
   HATTIS & LUKACS
7   400 108th Ave NE, Ste 500
Bellevue, WA 98004
8   Telephone: (425) 233-8650

9

10  *Attorneys for Plaintiffs and the Proposed Class*

11               UNITED STATES DISTRICT COURT

12             NORTHERN DISTRICT OF CALIFORNIA

13

14
   IAN VIANU,
15  ELIZABETH BLUM, and        Case No. 3:19-cv-03602-LB
   DOMINIC GUTIERREZ, on behalf of
16  themselves and all others similarly situated,

17          Plaintiffs        **CLASS ACTION**

18  v.

19  AT&T MOBILITY LLC,        **DECLARATION OF**
                       **DOMINIC GUTIERREZ**
20         Defendant.

21

22

23

24

25

26

27

28

1    I, Dominic Gutierrez, hereby declare and state as follows:

2    1.    I am over the age of 18, and a Plaintiff in this action. The facts contained in this

3    declaration are based on my personal knowledge, and if called upon to do so, I could and would

4    testify competently hereto.

5    2.    The First Amended Complaint in this action, filed concurrently with this

6    declaration, is filed in the proper place for trial under California Civil Code § 1780(d), because

7    this is a county in which the Defendant does business and where a substantial portion of the

8    transactions occurred.

9

10    I declare under penalty of perjury under the laws of the United States and the State of

11    California that the foregoing is true and correct.

12    Executed in Sacramento, California.

13

14    Date: 8/30/2021

15    Dominic Gutierrez

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF DOMINIC GUTIERREZ

1   Michael W. Sobol (State Bar No. 194857)
    Roger N. Heller (State Bar No. 215348)
2   Sarah R. London (State Bar No. 267083)
    Avery S. Halfon (pro hac vice forthcoming)
3   LIEFF CABRASER HEIMANN & BERNSTEIN LLP
    275 Battery Street, 29th Floor
4   San Francisco, CA 94111
    Telephone: (415) 956-1000
5
    Daniel M. Hattis (State Bar No. 232141)
6   Paul Karl Lukacs (State Bar No. 197007)
    HATTIS & LUKACS
7   400 108th Ave NE, Ste 500
    Bellevue, WA 98004
8   Telephone: (425) 233-8650

9
    *Attorneys for Plaintiffs and the Proposed Class*
10

11                    UNITED STATES DISTRICT COURT

12                  NORTHERN DISTRICT OF CALIFORNIA

13

14
    IAN VIANU,
15  ELIZABETH BLUM, and                    Case No. 3:19-cv-03602-LB
    DOMINIC GUTIERREZ, on behalf of
16  themselves and all others similarly situated,
                                           **CLASS ACTION**
17                    Plaintiffs

18  v.
                                           **DECLARATION OF**
19  AT&T MOBILITY LLC,                     **ELIZABETH BLUM**

20                    Defendant.

21

22

23

24

25

26

27

28
                                           DECLARATION OF ELIZABETH BLUM

DocuSign Envelope ID: 07D6A3BB-ED0D-45E4-8F6A-6BBA5548245F

1    I, Elizabeth Blum, hereby declare and state as follows:

2    1.    I am over the age of 18, and a Plaintiff in this action. The facts contained in this

3    declaration are based on my personal knowledge, and if called upon to do so, I could and would

4    testify competently hereto.

5    2.    The First Amended Complaint in this action, filed concurrently with this

6    declaration, is filed in the proper place for trial under California Civil Code § 1780(d), because

7    this is a county in which the Defendant does business and where a substantial portion of the

8    transactions occurred.

9

10    I declare under penalty of perjury under the laws of the United States and the State of

11    California that the foregoing is true and correct.

12    Executed in Sacramento, California.

13

14    Date: _8/24/2021_____

DocuSigned by:

*Elizabeth Blum*

B21E060717D14B6...

Elizabeth Blum

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF ELIZABETH BLUM