Michael W. Sobol (State Bar No. 194857)
msobol@lchb.com
Roger N. Heller (State Bar No. 215348)
rheller@lchb.com
Daniel E. Seltz (admitted pro hac vice)
dseltz@lchb.com
Jallé Dafa (State Bar No. 290637)
jdafa@lchb.com
Avery S. Halfon (admitted pro hac vice)
ahalfon@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN,
LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  415.956.1000
Facsimile:  415.956.1008

Daniel M. Hattis (State Bar No. 232141)
dan@hattislaw.com
Paul Karl Lukacs (State Bar No. 197007)
pkl@hattislaw.com
HATTIS & LUKACS
400 108th Ave NE, Ste. 500
Bellevue, WA 98004
Telephone: (425) 233-8650
Facsimile:  (425) 412-7171

*Attorneys for Plaintiffs and the Proposed Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IAN VIANU, ELIZABETH BLUM, and DOMINIC GUTIERREZ, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AT&T MOBILITY LLC,<br><br>Defendant. | Case No. 3:19-cv-03602-LB<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND DIRECTION OF NOTICE UNDER RULE 23(E)**<br><br>Date:   June 9, 2022<br>Time:   9:30 a.m.<br>Judge:  Hon. Laurel Beeler |

TO THE ABOVE-NAMED COURT AND TO THE PARTIES AND TO THEIR

ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 9, 2022, at 9:30 a.m. at 450 Golden Gate Avenue,

Courtroom B, 15th Floor, San Francisco, CA, 94102, Plaintiffs Ian Vianu, Elizabeth Blum, and

Dominic Gutierrez (collectively, "Plaintiffs") will and hereby do move the Court for an order

pursuant to Fed. R. Civ. P. 23(e)(1) granting Plaintiffs' Motion for Preliminary Approval of Class

Settlement and for Direction of Notice Under Rule 23(e).  Plaintiffs request that in such order the

Court do the following:

a.	Grant preliminary approval of the parties' proposed Class Settlement Agreement

("Settlement")[1];

b.	Certify, for settlement purposes, the Settlement Class as defined in the Settlement,

pursuant to Fed. R. Civ. P. 23(a) and (b)(3);

c.	Appoint Plaintiffs as Settlement Class Representatives representing the Settlement

Class;

d.	Appoint Roger N. Heller, Michael W. Sobol, and Daniel E. Seltz of Lieff,

Cabraser, Heimann & Bernstein, LLP; and Daniel M. Hattis of Hattis & Lukacs as Settlement

Class Counsel;

e.	Approve the proposed notice program in the Settlement, including the proposed

forms of notice, and direct that notice be disseminated pursuant to such notice program and Fed.

R. Civ. P. 23(e)(1);

f.	Approve the proposed process set forth in the Settlement for Settlement Class

Members to submit claims;

g.	Appoint Angeion Group, LLC ("Angeion Group") as Settlement Administrator

and direct Angeion Group to carry out the duties and responsibilities of the Settlement

Administrator specified in the Settlement;

h.	Set deadlines for Settlement Class Members to submit claims, request exclusion

from the Settlement Class, and object to the Settlement;

---

[1] The Settlement is being filed herewith as Ex. 1 to the accompanying Declaration of Roger N. Heller ("Heller Decl.").

1       i.      Stay all non-Settlement-related proceedings in this lawsuit pending final approval

2 of the Settlement; and

3       j.      Schedule a Fairness Hearing and certain other dates in connection with the final

4 approval of the Settlement pursuant to Fed. R. Civ. P. 23(e)(2).

5       This motion is based on this notice of motion and motion, the accompanying memorandum

6 of points and authorities, the Settlement including all exhibits thereto, the declarations of Roger N.

7 Heller, Daniel M. Hattis, and the Plaintiffs filed herewith, the declaration of Steven Weisbrot of

8 Angeion Group filed herewith, the argument of counsel, all papers and records on file in this matter,

9 and such other matters as the Court may consider.

10

11     Dated: May 10, 2022                 Respectfully submitted,

12                                         LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

13                                 By: */s/ Roger N. Heller*
                                        Roger N. Heller (SBN 215348)

14                                       Michael W. Sobol (SBN 194857)
                                        Daniel E. Seltz (admitted pro hac vice)

15                                       Jallé Dafa (SBN 290637)
                                        Avery S. Halfon (admitted pro hac vice)

16                                       275 Battery Street, 29th Floor
                                      San Francisco, CA 94111-3339

17                                       Telephone: 415.956.1000
                                      Facsimile: 415.956.1008

18

19                                       Daniel M. Hattis (SBN 232141)
                                      Paul Karl Lukacs (SBN 197007)

20                                       HATTIS & LUKACS
                                      400 108th Ave NE, Ste. 500

21                                       Bellevue, WA 98004
                                      Telephone: (425) 233-8650

22                                       Facsimile:  (425) 412-7171

23                                     *Attorneys for Plaintiffs and the Proposed Class*

24

25

26

27

28

Michael W. Sobol (State Bar No. 194857)
msobol@lchb.com
Roger N. Heller (State Bar No. 215348)
rheller@lchb.com
Daniel E. Seltz (admitted pro hac vice)
dseltz@lchb.com
Jallé Dafa (State Bar No. 290637)
jdafa@lchb.com
Avery S. Halfon (admitted pro hac vice)
ahalfon@lchb.com
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  415.956.1000
Facsimile:  415.956.1008

Daniel M. Hattis (State Bar No. 232141)
dan@hattislaw.com
Paul Karl Lukacs (State Bar No. 197007)
pkl@hattislaw.com
HATTIS & LUKACS
400 108th Ave NE, Ste. 500
Bellevue, WA 98004
Telephone: (425) 233-8650
Facsimile:  (425) 412-7171

*Attorneys for Plaintiffs and the Proposed Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IAN VIANU, ELIZABETH BLUM, and DOMINIC GUTIERREZ, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AT&T MOBILITY LLC,<br>Defendant. | Case No. 3:19-cv-03602-LB<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND DIRECTION OF NOTICE UNDER RULE 23(E)**<br><br>Date:   June 9, 2022<br>Time:   9:30 a.m.<br>Judge:  Hon. Laurel Beeler |

**TABLE OF CONTENTS**

**Page**

INTRODUCTION .................................................................................................. 1

BACKGROUND ................................................................................................... 2

   I.     Procedural History ....................................................................... 2

   II.    Settlement Class Counsel's Investigation and Discovery .................. 3

   III.   Settlement Negotiations ................................................................ 4

SUMMARY OF THE SETTLEMENT TERMS .................................................... 5

   I.     The Settlement Class .................................................................... 5

   II.    The Settlement Fund .................................................................... 6

       A.    Payments to Settlement Class Members ..................................... 6

       B.    Administrative Costs ................................................................ 7

       C.    Attorneys' Fees, Expenses, and Service Awards ......................... 7

   III.   Notice Program ........................................................................... 7

       A.    Direct Notice to Settlement Class Members ................................ 8

       B.    Social Media Notice ................................................................ 9

       C.    Settlement Website and Toll-Free Number.................................. 9

       D.    CAFA Notice ......................................................................... 10

       E.    Claims Process ....................................................................... 10

       F.    Opt-Out and Objection Procedures ........................................... 10

   IV.   Release ..................................................................................... 11

ARGUMENT ..................................................................................................... 11

   I.     Overview of the Class Settlement Approval Process......................... 11

   II.    The Proposed Settlement Meets the Standards for Preliminary Approval .......... 11

       A.    The Settlement is the Product of Good Faith, Informed, Arm's-Length Negotiations (Fed. R. Civ. P. 23(e)(2)(B)) .................................. 12

       B.    Plaintiffs and Settlement Class Counsel Have and Continue to Zealously Represent the Class (Fed. R. Civ. P. 23(e)(2)(A)) .................. 13

       C.    The Settlement Represents a Strong Result for the Settlement Class, Particularly Given the Risks and Likely Duration of Ongoing Litigation (Fed. R. Civ. P. 23(e)(2)(C)) .................................... 13

       D.    The Settlement Treats Class Members Equitably (Fed. R. Civ. P. 23(e)(2)(D) ....................................................................... 15

       E.    The Proposed Method of Distributing Relief Is Effective (Fed. R. Civ. P. 23(e)(2)(C)(ii)) ................................................................ 16

       F.    Settlement Class Counsel Will Seek Reasonable Attorneys' Fees and Reimbursement of Their Litigation Expenses (Fed. R. Civ. P. 23(e)(2)(C)(iii)). ................................................................ 16

   III.   The Court Should Provisionally Certify the Settlement Class............... 17

       A.    The Requirements of Rule 23(a) are Satisfied ............................. 17

**TABLE OF CONTENTS**
**(continued)**

Page

1.    Numerosity (Rule 23(a)(1))............................................................ 17

2.    Commonality (Rule 23(a)(2)) ...................................................... 17

3.    Typicality (Rule 23(a)(3))............................................................ 17

4.    Adequacy of Representation (Rule 23(a)(4))............................... 18

B.    The Requirements of Rule 23(b)(3) Are Satisfied ................................... 18

IV.    The Proposed Notice Program Complies with Rule 23 and Due Process............ 19

V.    The Court Should Schedule a Fairness Hearing and Related Dates. ................... 20

CONCLUSION ........................................................................................................... 21

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591 (1997) ..................................................................................... 17, 19

*Butler v. Sears, Roebuck & Co.,*
702 F.3d 359 (7th Cir. 2012) ............................................................................. 19

*Churchill Vill., L.L.C. v. Gen. Elec.,*
361 F.3d 566 (9th Cir. 2004) ............................................................................. 12

*Class Plaintiffs v. City of Seattle,*
955 F.2d 1268 (9th Cir. 1992) ........................................................................... 12

*Eisen v. Carlisle & Jacquelin,*
417 U.S. 156 (1974) ........................................................................................... 20

*Evon v. Law Offices of Sidney Mickell,*
688 F.3d 1015 (9th Cir. 2012) ........................................................................... 18

*Hernandez v. Cty. of Monterey,*
305 F.R.D. 132 (N.D. Cal. 2015) ................................................................. 17, 18

*In re First Alliance Mortg. Co.,*
471 F.3d 977 (9th Cir. 2006) ............................................................................. 19

*In re Syncor ERISA Litig.,*
516 F.3d 1095 (9th Cir. 2008) ........................................................................... 12

*Jimenez v. Allstate Ins. Co.,*
765 F.3d 1161 (9th Cir. 2014) ........................................................................... 17

*Parsons v. Ryan,*
754 F.3d 657 (9th Cir. 2014) ............................................................................. 17

*Roberts v. AT&T Mobility LLC,*
N.D. Cal., Case No. 3:15-cv-03418-EMC ........................................................ 15

*Tyson Foods, Inc. v. Bouaphakeo,*
136 S. Ct. 1036 (2016) ....................................................................................... 19

*Viking River Cruises, Inc. v. Moriana,*
No. 20-1573 (U.S. cert. granted, Dec. 15, 2021) ................................................ 3

*Wal-Mart Stores, Inc. v. Dukes,*
564 U.S. 338 (2011) ........................................................................................... 17

*Wolin v. Jaguar Land Rover N. Am., LLC,*
617 F.3d 1168 (9th Cir. 2010) ........................................................................... 19

*Zamora Jordan v. Nationstar Mortg., LLC,*
2019 WL 1966112 (E.D. Wash. May 2, 2019) ................................................. 12

**Statutes**

28 U.S.C. ....................................................................................................... 2, 10

**Other Authorities**

Cal. Code Civ. Proc. § 1501.5 ............................................................................. 7

Cal. Code Civ. Proc. § 1531 ................................................................................ 7

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3    Fed. R. Civ. P. 12(b) ................................................................................................ 2

4    Fed. R. Civ. P. 23(a) ....................................................................................... 17, 18

     Fed. R. Civ. P. 23(b) ..................................................................................... passim

5    Fed. R. Civ. P. 23(c) .............................................................................................. 20

6    **Rules**

7    *Manual for Compl. Litig.,* § 21.632 (4th ed. 2014) ........................................... 17

     **Treatises**

8    5 *Moore's Federal Practice—Civil* § 23.22 (2016) ........................................... 17

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# INTRODUCTION

After nearly three years of litigation, the parties have reached an agreement to settle this case on a class basis.  Pursuant to the terms of the Settlement,[2] Defendant AT&T Mobility LLC ("AT&T") will pay $14 million to create a non-reversionary common Settlement Fund, from which payments will be made to Settlement Class Members.  All Settlement Class Members will be eligible to submit simple claims for settlement payments.  Payments to current customers will be via automatic account credit, and payments to former customers will be via mailed check.

The Settlement presented for the Court's consideration is fair, reasonable, and adequate, and warrants preliminary approval under applicable standards.  It is the product of hard-fought, arms-length negotiations between the parties through an experienced and well-respected mediator, Robert Meyer, Esq. of JAMS.  It follows extensive formal discovery and years of hard-fought litigation, including a litigated motion to dismiss and several motions regarding AT&T's attempt to compel individual arbitration and to stay the case.  In negotiating the Settlement, the parties and their counsel were well informed about the issues, the strengths and weaknesses of their respective positions, and the risks faced by each side of continued litigation.

The Settlement also provides for a robust class notice program that includes direct notice to all Settlement Class Members via a combination of email, mail, and text message (SMS); a tailored social media notice program; reminder emails and reminder SMS notice; the establishment of a dedicated Settlement Website where Settlement Class Members can obtain additional information and submit claims online; and an informational Toll-Free Number.  The proposed notice program comports with Rule 23, due process, and best practices.

Plaintiffs and their undersigned counsel believe the Settlement to be in the best interests of the Settlement Class Members and seek to begin the Court approval process that is required for all class action settlements.  Plaintiffs therefore respectfully request that the Court preliminarily approve the Settlement, certify the Settlement Class for settlement purposes, direct that notice be disseminated to the Settlement Class pursuant to the proposed notice program, schedule a Fairness Hearing, and grant the related relief requested herein.

---

[2] The Settlement is being filed herewith as Ex. 1 to the accompanying Heller Decl.

- 1 -

1

### BACKGROUND

2

**I.   Procedural History**

3

4

5

6

7

8

9

10

Plaintiffs filed this case on June 20, 2019, asserting claims on behalf of themselves and a proposed class of California AT&T post-paid wireless customers who were charged an Administrative Fee ("Admin Fee") by AT&T.  Plaintiffs alleged, generally, that AT&T's representations and advertisements regarding the monthly price of its post-paid wireless service plans were misleading because the prices did not include the Admin Fee, and that AT&T implemented and charged the Admin Fee in a deceptive and unfair manner.   Dkt. 1.  The parties consented to have this Court conduct all proceedings in this action pursuant to 28 U.S.C. § 636(c).  Dkt. 7, 19.

11

12

13

14

15

16

17

18

On August 16, 2019 AT&T filed a motion compel individual arbitration of Plaintiffs' claims and to stay this action. Dkt. 20.  Plaintiffs opposed that motion on September 12, 2019 and AT&T filed its reply on October 3, 2019.  Dkt. 30, 31.  The Court held a hearing on AT&T's arbitration motion on October 31, 2019, after which the Court entered a tentative order denying AT&T's motion based on application of the *McGill* Rule and the non-severability clause in AT&T's arbitration provision—tentative pending the disposition of then-pending *en banc* petitions in the *Tillage v. Comcast* and *McArdle v. AT&T* cases, in which the defendants/appellants were asking the Ninth Circuit to invalidate the *McGill* Rule.  Dkt. 42.

19

20

21

22

23

24

On March 2, 2020, after the *en banc* petitions in *Tillage/McArdle* were denied, the Court entered an order denying AT&T's arbitration motion. Dkt. 56.  AT&T filed a notice of appeal of the Court's order denying arbitration on March 13, 2020.  Dkt. 59.  On March 2, 2020, AT&T filed a motion to stay this case pending AT&T's appeal to the Ninth Circuit in this case and pending anticipated petitions for *certiorari* review in *Tillage/McArdle*.  Dkt. 57.  Plaintiffs opposed AT&T's motion to stay on March 11, 2020, and AT&T filed a reply on March 23, 2020.  Dkt. 58, 66.

25

26

On March 23, 2020, AT&T filed a motion to dismiss this case pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  Dkt. 67.

27

28

On April 9, 2020, following a hearing, the Court denied AT&T's motion to stay pending appeal and tabled AT&T's request for a stay based on the *certiorari* petitions in *Tillage/McArdle* in

2407356.8

1    light of AT&T's pending motion to dismiss and the anticipated timing of a decision on the

2    *certiorari* petitions in *Tillage/McArdle*.  Dkt. 72, 73.

3         Plaintiffs filed their opposition to AT&T's motion to dismiss on April 20, 2020, and AT&T

4    filed a reply on May 11, 2020.  Dkt. 77, 79.  The Court held a hearing on AT&T's motion to

5    dismiss on May 28, 2020.  Dkt. 81.   On June 11, 2020, the Court entered an Order denying in part

6    and granting in part AT&T's motion.  Specifically, the Court denied AT&T's motion except that

7    the Court held that the discovery rule did not apply and that AT&T's conduct was not a continuing

8    violation.  Dkt. 88.

9         In the meantime, on June 1, 2020 the United States Supreme Court denied the *certiorari*

10   petitions in *Tillage/McArdle*.  Dkt. 84.  On June 25, 2020, AT&T filed its Answer to the Complaint.

11   Dkt. 89.  On August 17, 2020, AT&T voluntarily dismissed its appeal of this Court's order denying

12   arbitration.  Dkt. 99.

13        On August 31, 2020, the Court entered a stipulated order incorporating a request for

14   damages under the Consumers Legal Remedies Act into the existing Complaint and incorporating a

15   denial of same into AT&T's existing Answer.  Dkt. 101.  On September 20, 2021, the Court entered

16   a stipulated order substituting in new Plaintiffs Elizabeth Blum and Dominic Gutierrez for one of

17   the original plaintiffs, Irina Bukchin, and permitting Plaintiffs to file an amended complaint.  Dkt.

18   117.  On September 21, 2021, Plaintiffs filed their operative First Amended Complaint.  Dkt. 118

19   ("FAC").  On October 21, 2021, AT&T filed its Answer to the FAC.  Dkt. 124.

20        On February 7, 2022, following the United States Supreme Court's grant of *certiorari* in

21   *Viking River Cruises, Inc. v. Moriana*, No. 20-1573 (U.S. cert. granted, Dec. 15, 2021) (involving

22   *Iskanian* Rule), AT&T filed a motion to stay this case pending the outcome in *Viking River* and also

23   filed a motion/renewed motion to compel individual arbitration of Plaintiffs' claims.  Dkt. 137, 138.

24        On March 4, 2022, approximately three weeks before Plaintiffs were scheduled to file their

25   motion for class certification, the parties filed a joint notice of settlement.  Dkt. 133, 140.

26   **II.    Settlement Class Counsel's Investigation and Discovery**

27        The Settlement in this case was negotiated by counsel who were well-informed about the

28   issues and litigation risks as a result of their substantial investigation and discovery efforts.  Prior to

filing suit, and continuing through the course of the litigation, proposed Settlement Class Counsel conducted an extensive investigation into the factual and legal issues raised in this litigation. These investigative efforts have included, *inter alia*, thoroughly investigating and analyzing AT&T's advertising, customer disclosures, and purchase/sign-up processes; analyzing the practices of AT&T's competitors; speaking with numerous AT&T wireless customers about their experiences; and investigating customer complaints and other pertinent public information. Proposed Settlement Class Counsel also extensively researched and analyzed the legal issues regarding the claims pled and AT&T's defenses and potential defenses. Heller Decl., ¶ 19.

Moreover, proposed Settlement Class Counsel have conducted extensive formal discovery in this case, including reviewing more than 60,000 pages of internal documents, marketing, and other materials produced by AT&T; deposing five pertinent AT&T executives/employees, including multiple Rule 30(b)(6) corporate designees; reviewing and analyzing customer data for a sample of class member accounts; reviewing and analyzing aggregate class-wide fee and other data; conducting third-party discovery of two accounting firms that assisted AT&T in connection with the Admin Fee; propounding and analyzing responses to substantial written discovery; and preparing responses to written discovery served by AT&T on Plaintiffs. Heller Decl., ¶ 20.

The parties were also informed by this Court's ruling on AT&T's motion to dismiss and by the proceedings and rulings on AT&T's various arbitration and stay motions. Heller Decl., ¶¶ 9-18, 21.

### III. Settlement Negotiations

The Settlement here is the product of hard-fought, arms-length negotiations. The parties and their counsel participated in an initial, full-day mediation with mediator Eric Green of Resolutions LLC on November 10, 2020. That first session did not result in a settlement. On February 17, 2022, the Parties and their counsel engaged in a second, full-day mediation with Robert Meyer, Esq. of JAMS, at which, after extensive arms-length negotiations, the Parties reached an agreement in principle to resolve this case. The parties did not discuss the issue of Settlement Class Counsel's fees and expenses as part of the negotiations (other than that any amount awarded would be paid from the common settlement fund). Since reaching an agreement in

1    principle, the parties have worked diligently to draft the written settlement agreement, notices, and

2    other settlement exhibits, and to select the proposed Settlement Administrator through a competitive

3    bidding process.  Heller Decl., ¶¶ 22-23.

4                            **SUMMARY OF THE SETTLEMENT TERMS**

**I.       The Settlement Class**

5

6          Plaintiffs seek certification under Rule 23(b)(3), for settlement purposes, of a "Settlement

Class," defined as:

7

8              All consumers residing in California (based on the accountholder's
              last known billing address) with a post-paid wireless service plan
9              from AT&T Mobility LLC through a Consumer or Individual
              Responsibility User (IRU) account and who were charged an
10             Administrative Fee on such account between June 20, 2015 and the
              date of preliminary settlement approval.

11             Excluded from the Settlement Class are any Judge presiding over
              this Action and any members of their families; AT&T and affiliated
12             entities and individuals and their respective officers and directors;
              and any otherwise covered consumers, other than Plaintiffs, who
13             assert claims and seek relief in connection with the Administrative
              Fee and who have provided AT&T with an unresolved written
14             Notice of Dispute (pursuant to AT&T's contractual dispute
              resolution procedures) before the Execution Date.
15

16   AT&T does not oppose certification of the Settlement Class, for settlement purposes only.

17   (Settlement §§ II.A.29, III)

18          Substantively, the Settlement Class definition tracks the proposed definition in the operative

19   FAC (Dkt. 118 ¶ 103), with the only differences being: (1) it adds the specific start date to the class

20   period based on the statute of limitations (i.e., four years before the initial Complaint was filed); (2)

21   it adds an end date to the class period (the date of preliminary approval); (3) it clarifies that both

22   consumer and IRU accounts are included;[3] and (4) it provides that certain customers who have

23   previously initiated separate disputes regarding the Admin Fee are excluded (i.e., they do not need

24   to opt out to be excluded).  According to AT&T's records, there are approximately 5,425,000

25   accounts in the Settlement Class.  (Settlement, p. 10 at n. 1)

26   _____

27   [3] IRU, or "individually responsibility users," are consumers who receive AT&T post-paid wireless
     services pursuant to a group (e.g., employer) plan but who are responsible for paying the monthly
     bill themselves.  By contrast, CRU, or "corporate responsibility users," are persons who receive
28   such services through a group plan but their employer is responsible for paying the monthly bill.
     CRU accounts are *not* included in the Settlement Class.

**II.     The Settlement Fund**

Under the Settlement, AT&T will pay Fourteen Million Dollars ($14,000,000.00) to establish a non-reversionary common Settlement Fund.  As detailed below, the Settlement Fund will be used to pay:  the settlement payments to Settlement Class Members; the costs of notice and other costs of the Settlement Administrator; and any attorneys' fees and expenses for Settlement Class Counsel and any Plaintiffs' service awards granted by the Court.  (Settlement § IV)

**A.     Payments to Settlement Class Members**

The entirety of the Net Distributable Funds—*i.e.*, the $14 million Settlement Fund, less: Administrative Costs, Court-awarded attorneys' fees and expenses for Settlement Class Counsel, and any Plaintiffs' service awards—will be distributed to the Settlement Class.  All Settlement Class Accounts will be eligible to submit a simple claim (electronically via the Settlement Website or by mail) to receive a settlement payment.  All Settlement Class Accounts that submit a valid claim by the Claim Deadline (90 days after the Notice Date) will receive an equal share of the Net Distributable Funds.  (Settlement § IV.C.)   Based on the estimated Administrative Costs, and assuming the Court awarded attorneys' fees equal to 25% of the common fund, Plaintiffs estimate the settlement payment amounts will be approximately $15.00-$29.00.

Payments to Settlement Class Members who are current AT&T customers will be via automatic credit to their AT&T accounts.  Payments to Settlement Class Members who are former AT&T customers will be via mailed check, with appropriate steps taken to locate updated address information and re-issue checks that are returned undeliverable.  (Settlement § IV.C.4)

Any residual funds remaining one year after checks are initially mailed—consisting of uncashed or undeliverable checks—will be treated as unclaimed property of the corresponding customers, subject to applicable state unclaimed property procedures.  (Settlement § IV.C.5)[4]  In no

_____

[4] Any additional administrative costs associated with this residual process will be paid from the residual funds, and will reduce *pro rata* the respective unclaimed property amounts for the Settlement Class Members with uncashed or undeliverable checks.  (Settlement § IV.C.5)  The unclaimed property process and timing vary by state.  In California, where most Settlement Class Members are expected to reside, following a "dormancy period," during which the funds would be claimable from the Settlement Administrator, and after a "due diligence" notice is sent to the individuals in question, the funds that remain unclaimed, along with the corresponding names, payment amounts, and last known addresses, would be sent to the California State Controller's Office for deposit in the State's general fund.  At that point, the Settlement Class Members in question will still be able to claim the funds by following the state unclaimed property procedure; in California, there is no time limit for submitting such claims (*i.e.*, the funds would be available to

1    event will any funds revert to AT&T.

2         **B.     Administrative Costs**

3         The fees and costs of the Settlement Administrator—in implementing the notice program,

4    administering the claims process, mailing checks, and performing the other administrative tasks

5    described in the Settlement—will be paid from the Settlement Fund.  (Settlement §§ II.A.2, IV.A,

6    V)

7         The proposed Settlement Administrator, Angeion Group, was selected through a

8    competitive bidding process.  Proposed Settlement Class Counsel received and analyzed bids from

9    four (4) very experienced administrators as part of this process.  Heller Decl., ¶ 23.  Angeion Group

10   is a well-known administration firm that has successfully administrated numerous class settlements

11   and judgments.  Weisbrot Decl., ¶¶ 1-10, Ex. A.  Angeion Group estimates that the Administrative

12   Costs in this case will be approximately $813,000.  *Id.*, ¶ 37.  Plaintiffs believe such amount is

13   reasonable given the class size, the availability of contact information for the Settlement Class, the

14   claims process and benefits of multiple methods of notice, and in light of the total Settlement Fund

15   amount (i.e., $14 million).

16        **C.     Attorneys' Fees, Expenses, and Service Awards**

17        Settlement Class Counsel will apply to the Court for an award of reasonable attorneys' fees

18   in an amount not to exceed $3.5 million (*i.e.*, 25% of the Settlement Fund), plus reimbursement of

19   litigation expenses.  Settlement Class Counsel will also apply for services awards of up to $3,500

20   for each Plaintiff, to compensate them for their efforts and commitment on behalf of the Settlement

21   Class.  Settlement Class Counsel's fee application will be filed no later than 15 days after the Notice

22   Date (*i.e.*, at least 45 days before the Exclusion/Objection Deadline).  Any attorneys' fees,

23   expenses, and service awards granted by the Court will be paid from the Settlement Fund.

     (Settlement § XI)

24   **III.   Notice Program**

25        The parties' proposed notice program is set forth in Section VI of the Settlement, and

26   consists of the following:

27

28

     claim in perpetuity).  *See* Cal. Code Civ. Proc. §§ 1501.5, 1531; https://ucpi.sco.ca.gov/.

**A.      Direct Notice to Settlement Class Members**

Notice will be sent directly to all Settlement Class Members, through a combination of email, first-class mail, and SMS (text message).  No later than fourteen (14) days after entry of the Preliminary Approval Order, AT&T will provide the Settlement Administrator with the Settlement Class Member contact information and other Customer Data.  (Settlement §§ II.A.10, VI.1)  The Settlement Administrator and AT&T will use that information to send notice, as described below.

*Email Notice:*  By no later than 45 days after entry of the Preliminary Approval Order (the "Notice Date"), the Settlement Administrator will email the email notice to every Settlement Class account for which an email address is included in the Customer Data.  The proposed form of the email notice is attached as Ex. A to the Settlement.  (Settlement § VI.2)

*SMS Notice:*  By no later than the Notice Date, AT&T will send, via text message, the SMS notice to the AT&T cellular telephone number(s) for each Settlement Class account for which AT&T's Customer Data identifies that both: (1) the account is a current AT&T account and (2) no accountholders for the account have opted out of receiving such messages.  Settlement Class Members will receive both email and SMS notice if they meet the criteria for both.

The proposed form of the SMS notice is attached as Ex. D to the Settlement.  Each SMS notice will include a hyperlink to the substance of the email notice.  SMS notice recipients will not be charged for such messages.  By no later than three days after sending the SMS notices, AT&T will send the Settlement Administrator a list of Settlement Class accounts that were successfully sent an SMS notice.  (Settlement § VI.3)

*Mail Notice:*  Postcard notice will be sent, via first class U.S. mail, postage pre-paid, to Settlement Class accounts that do not receive email notice and/or SMS notice.  The Settlement Administrator will use the mailing addresses in the Customer Data, as updated through the National Change of Address Database.  The proposed form of the postcard notice is attached as Ex. B to the Settlement.  The Settlement Administrator will promptly re-mail any postcard notices returned undeliverable with forwarding address information to the new address.  For postcard notices returned undeliverable without forwarding address information, the Settlement Administrator will attempt an industry standard "skip trace" to identify updated address information and if successful

1  will re-mail postcard notices to the new address.  (Settlement § VI.4)

2       *Reminder Email Notice*:   By no later than 14 days after the Notice Date, the Settlement

3  Administrator will send a Reminder Email Notice, substantially in the form attached as Exhibit E to

4  the Settlement, to each Settlement Class Account that was sent the email notice.  Depending on the

5  volume of Claim Form submissions and in consultation with the parties, prior to the Claim

6  Deadline, the Settlement Administrator may cause a second reminder email notice to be sent to

7  Settlement Class Accounts that were sent the Reminder Email Notice or to a portion of them that

8  have not yet submitted a Claim Form.  (Settlement, § VI.9.a)

9       *Reminder SMS Notice*:  Between 21 days and 14 days before the Claim Deadline, AT&T

10  will send via SMS a Reminder SMS Notice, substantially in the form attached as Exhibit F to the

11  Settlement, to the AT&T cellular telephone number(s) for each Settlement Class Account for which

12  the SMS notice was previously sent successfully and for which a Claim Form has not yet been

13  submitted for the account.  (Settlement, § VI.9.b)

14       **B.      Social Media Notice**

15       Starting no later than the Notice Date, the Settlement Administrator will also implement a

16  social media campaign to provide additional notice to Settlement Class Members, which will

17  include: (a) a custom Facebook/Instagram campaign whereby additional notice will provided

18  directly via Facebook/Instagram to Settlement Class Members with identifiable

19  Facebook/Instagram accounts; and (b) a supplemental interest-based Facebook and Instagram

20  campaign designed to target Settlement Class Members.  (Settlement, § VI.8; Weisbrot Decl., ¶¶

21  23-30)

22       **C.      Settlement Website and Toll-Free Number**

23       In addition, the Settlement Administrator will establish a Settlement Website

24  (www.ATTVianuClassActionSettlement.com), where Settlement Class Members can view the

25  Settlement, a long-form Website Notice (substantially in the form attached as Ex. C to the

26  Settlement), and other key case documents, and obtain further information about the Settlement and

27  their rights.  Settlement Class Members will also be able to submit claims electronically via the

28  Settlement Website.  The Settlement Website will be optimized for display on mobile phones.  The

Settlement Administrator will also establish a Toll-Free Number where Settlement Class Members can obtain additional information and request that a hard copy claim form be mailed to them.  The Settlement Website and Toll-Free number will be operational until at least one year after settlement payment checks are mailed.  (Settlement §§ VI.5&6)

**D.     CAFA Notice**

Within ten days of the filing of this motion, AT&T (or the Settlement Administrator at AT&T's direction) will serve a notice of the proposed Settlement, in accordance with 28 U.S.C § 1715, upon the appropriate State and Federal officials.  (Settlement § VI.7)

**E.     Claims Process**

Settlement Class Members may submit claims for settlement payments by submitting a claim form by the Claim Deadline (*i.e.*, within 90 days after the Notice Date).  Claims may be submitted electronically via the Settlement Website, or by mail.  The claim form is simple. (Settlement §§ IV.C.2; Ex. G (Claim Form))

The email/SMS notices will include hyperlinks to the Settlement Website where Settlement Class Members can submit online claims, and the mailed notices will prominently list the URL for the Settlement Website where they can submit online claims.  The notices will also include unique Personal ID numbers to help facilitate submitting claims.  (Settlement § IV.C.2, Ex. A-F)

**F.     Opt-Out and Objection Procedures**

Any person within the Settlement Class definition may request to be excluded from the Settlement Class by mailing or emailing a request, including their contact information and stating their desire to be excluded, to the Settlement Administrator, emailed/postmarked by the deadline stated in the Notice.[5]  Any Settlement Class Member who does not submit a timely and valid exclusion request may object to the Settlement, Settlement Class Counsel's application for attorneys' fees and expenses, and/or the request for service awards.  To be considered, an objection must be in writing, must be filed with or mailed to the Court, must be filed/postmarked by the

---

[5] If the person submitting the request for exclusion is doing so on behalf of a Settlement Class Member (such as an attorney or estate), the request must also include the full name of the person submitting the request and the basis of his, her or its authority to act on behalf of the Settlement Class Member.  Any request for exclusion from a Settlement Class Member that is a co-accountholder on a Settlement Class Account must be submitted by all co-accountholders on that account.  (Settlement § VII.A)

2407356.8

deadline stated in the notice, and must include the information proscribed by the Website Notice.
The parties propose that the deadline for exclusion requests and objections (the
"Exclusion/Objection Deadline") be set sixty (60) days after the Notice Date.  (Settlement §§ VII,
VIII)

**IV.     Release**

In exchange for the consideration provided under the Settlement, Settlement Class Members
will release AT&T and its affiliates from any claims about the issues in this case.  The scope of the
release substantively tracks the scope of the operative FAC.[6]  (Settlement § IX)

<u>ARGUMENT</u>

**I.     Overview of the Class Settlement Approval Process**

Pursuant to Rule 23(e), a class action settlement must be approved by the court before it can
become effective.  The process for court approval is comprised of two principal steps:

> (1)     Preliminary approval of the proposed settlement and direction of
> notice to the class; and
>
> (2)     A final approval hearing, at which argument concerning the
> fairness, adequacy, and reasonableness of the settlement is
> presented.

By this motion, Plaintiffs respectfully ask the Court to take the first step and enter an order
preliminarily approving the Settlement and directing class notice, pursuant to the parties' proposed
notice program, under Rule 23(e)(1).

**II.     The Proposed Settlement Meets the Standards for Preliminary Approval**

In evaluating a motion for preliminary settlement approval, the court conducts a preliminary
assessment of the factors that will be evaluated at the final approval stage.  Those factors include
whether: (1) the class representatives and class counsel have adequately represented the class; (2)
the proposed settlement was negotiated at arm's length; (3) the relief provided is adequate under
pertinent case circumstances; and (4) the settlement treats class members equitably relative to each
other.  Fed. R. Civ. P. 23(e)(2).  The Court will grant preliminary approval and direct notice to the
class if it finds it "is likely to approve the proposal under Rule 23(e)(2)."  Fed. R. Civ. P. 23(e)(1).
The ultimate touchstone for the analysis is whether the proposed settlement is "fair, reasonable, and

---

[6] *See* Settlement § IX.B (claims "arising from or relating to the allegations in the Complaint or First
Amended Complaint in this Action"); Dkt. 118 (FAC).

1    adequate."  *Id.*; *see also Zamora Jordan v. Nationstar Mortg., LLC*, 2019 WL 1966112, at *2 (E.D.

2    Wash. May 2, 2019) (noting that "the factors in [the 2018] amended Rule 23(e)(2) generally

3    encompass the list of relevant factors previously identified by the Ninth Circuit").

4         In evaluating settlement approval, the Court should consider the strong public policy

5    favoring "settlements, particularly where complex class action litigation is concerned."  *In re*

6    *Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *accord Churchill Vill., L.L.C. v. Gen.*

7    *Elec.*, 361 F.3d 566, 576 (9th Cir. 2004).  The Settlement here readily meets all standards for

8    preliminary settlement approval.

9         **A.      The Settlement is the Product of Good Faith, Informed, Arm's-Length**
         **Negotiations (Fed. R. Civ. P. 23(e)(2)(B))**

10        "Before approving a class action settlement, the district court must reach a reasoned

11   judgment that the proposed agreement is not the product of fraud or overreaching by, or collusion

12   among, the negotiating parties."  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1290 (9th Cir.

13   1992); *see also* Fed. R. Civ. P. 23(e)(2)(B).  The Settlement submitted for the Court's consideration

14   here is the product of hard-fought, arms-length negotiations between the parties and their qualified

15   and informed counsel.  The parties participated in two full-day mediations with experienced and

16   well-respected mediators, Eric Green of Resolutions LLC and Robert Meyer, Esq. of JAMS,

17   respectively, and were able to reach an agreement on deal terms through those efforts.  Over the

18   past two-plus months, the parties have been working diligently to draft the written settlement

19   agreement, prepare the forms of notice and other settlement exhibits, and select a proposed

20   Settlement Administrator through a competitive bidding process.  Heller Decl., ¶¶ 22-23.

21   Throughout their negotiations, the parties were represented by counsel experienced in the

22   prosecution, defense, and settlement of complex class actions.[7]

23        Moreover, as discussed above, the Settlement is informed by counsel's substantial

24   investigation and discovery regarding the legal and factual issues in the litigation, which included,

25   *inter alia*, conducting a pre-filing factual investigation; reviewing and analyzing more than 60,000

26   pages of internal documents, marketing, and other materials produced by AT&T, customer data for

27   a sample of accounts, and substantial aggregate class-wide data; deposing five AT&T

28

---

[7] Heller Decl., ¶¶ 3-8, Ex. B; Hattis Decl., ¶¶ 4-6.

employees/executives involved in the Admin Fee, including multiple Rule 30(b)(6) corporate

designees; conducting third-party discovery of two accounting firms that assisted AT&T regarding

the Admin Fee; substantial written discovery; and ongoing communications with class members.

*See supra* Background § II.  Further, as the Court is aware, there was significant motion practice in

this case, including a litigated motion to dismiss and several arbitration/stay-related motions.

Moreover, Plaintiffs were preparing their class certification motion, which was scheduled to be filed

on March 23, 2022, at the time the parties reached an agreement in principle.  In negotiating the

Settlement, the parties and their counsel were informed by their work in briefing these issues and,

of course, by the various court rulings.

### B.   Plaintiffs and Settlement Class Counsel Have and Continue to Zealously Represent the Class (Fed. R. Civ. P. 23(e)(2)(A))

Plaintiffs and proposed Settlement Class Counsel have prosecuted this action on behalf of

the Settlement Class with vigor and dedication for nearly three years.  *See* Fed. R. Civ. P.

23(e)(2)(A).  As discussed above and in the attached declarations, Settlement Class Counsel have

thoroughly investigated and researched the factual and legal issues involved, conducted substantial

discovery, and engaged in extensive motions practice, and engaged and worked with experts, all in

furtherance of prosecuting the claims here.  *See supra* Background § II.  Likewise, Plaintiffs have

personally been actively engaged—they each provided pertinent information about their

experiences and accounts, searched for and provided documents and information in response to

AT&T's written discovery requests, and regularly communicated with their counsel up to and

including evaluating and approving the proposed Settlement.[8]

### C.   The Settlement Represents a Strong Result for the Settlement Class, Particularly Given the Risks and Likely Duration of Ongoing Litigation (Fed. R. Civ. P. 23(e)(2)(C))

The Settlement provides substantial monetary relief—a $14 million non-reversionary fund.

Based on estimated Administrative Costs, and assuming the Court awarded attorneys' fees equal to

25% of the common fund, Plaintiffs estimate that the settlement payments for claimants will be

approximately $15.00-$29.00.[9]  That amount represents a strong result given the potential recovery

---

[8] Vianu Decl., ¶¶ 5-7; Blum Decl., ¶¶ 5-7; Gutierrez Decl., ¶¶ 5-7.
[9] The payment amount will depend in part on the claims rate.  Claims rates can vary based on a number of factors.  Plaintiffs are assuming a claims rate of between 6% and 12% for purposes of estimating the payment amount here.

1   and the substantial risks and delay of ongoing litigation in this case.

2           To put the estimated settlement payment amount in perspective, according to AT&T's

3   records, Settlement Class Accounts paid an average of approximately $2.65 per month in Admin

4   Fee charges during the class period.[10]  The estimated $15.00-$29.00 payment amount thus

5   represents a refund of approximately 6-11 months of the average fees.  As an additional point of

6   comparison, according to AT&T's records Settlement Class Accounts were charged on average a

7   *total* of approximately $180.00 in Admin Fees *during the entire class period*.  The estimated

8   $15.00-$29.00 payment amount thus represents a refund of approximately 8.3%-16.1% of the

9   average total fees paid during the class period.

10          To be sure, there are multiple ways to measure potential damages in this case, but the above

11   calculations provide useful perspective on the value and adequacy of the payment amount and the

12   Settlement in this case.  The estimated payment amount represents a strong result for the Settlement

13   Class, particularly given the substantial risks, costs, and delay of continued litigation.  Liability

14   remains very much disputed in this case.  Among other arguments and defenses that AT&T has

15   asserted and/or indicated it will assert are: (a) AT&T adequately discloses the Admin Fee and true

16   cost of the service to customers and prospective customers; (b) Settlement Class Members were on

17   notice of the Admin Fee at least after it appeared on their initial bills and on each of their

18   subsequent monthly bills; (c) the Admin Fee is appropriate in amount, accurately explained, and

19   supported by AT&T's costs; and (d) AT&T's form terms of service permitted charging and

20   increasing the Admin Fee.  AT&T also is expected to argue that, as a matter of equity, any

21   restitution here, if any, would need to be limited to the initial month(s) of Admin Fee charges for

22   each account given the fee's disclosure on the monthly bills.  AT&T also disputes whether this case

23   can be manageably tried on a class basis.  Further, while Plaintiffs have thus far been able to

24   overcome AT&T's efforts to compel arbitration, AT&T continues to pursue that path and, in fact,

25   recently moved to stay this case and filed a renewed arbitration motion after the U.S. Supreme

26   Court granted *certiorari* review in the *Viking River* case.

27

28   [10] The monthly per-line Admin Fee amount changed three times during the class period, reaching its current rate of $1.99 per line per month in mid-2018.  Some accounts have multiple lines on the account.

While Plaintiffs believe that they can overcome AT&T's defenses and challenges, they are indicative of the risks, hurdles, and delays that Plaintiffs and the Settlement Class face should this matter proceed in litigation.  The proposed Settlement provides considerable monetary relief for the Settlement Class while allowing them to avoid the risks of unfavorable, and in some cases dispositive, rulings on these and other issues.  The Settlement also provides another important benefit—prompt relief.  Continued litigation would likely add several more years before there is a resolution, given the remaining issues and likelihood of additional appeals.[11]

**D.      The Settlement Treats Class Members Equitably (Fed. R. Civ. P. 23(e)(2)(D)**

Under the Settlement, all Settlement Class Accounts are eligible to submit claims, and the settlement payment amounts will be equal for all claimants.  (Settlement § IV.C).  This allocation is fair, reasonable, and equitable.  As discussed above, the estimated settlement payment amount represents a refund of approximately 6-11 months of fees.  While Settlement Class Accounts incurred different amounts of total Admin Fees over the class period, all Settlement Class Accounts were subject to the same alleged deception and violation of their rights.  Moreover, AT&T has argued that Settlement Class Members should be deemed on notice of the Admin Fee after the initial month(s) of the charge appearing on their bills and that as a matter of equity their restitution, if any, should be capped accordingly.  While the parties disagree about this and other arguments, Plaintiffs and Settlement Class Counsel believe the Settlement's equal allocation of settlement funds is fair, reasonable, and equitable under the circumstances here.

Moreover, as discussed above, the claims process and claim form are simple and user-friendly.  Claims can be submitted electronically via the Settlement Website, or by mail, and the individually-tailored direct notices will include the URL and hyperlinks to the Settlement Website where online claims can be submitted, as well as unique Personal ID numbers, to facilitate submitting claims.   (Settlement § IV.C.2, Ex. G).

---

[11] The N.D. Cal. Guidelines for class settlements advise that parties seeking preliminary settlement approval should include certain information about a prior settlement in a similar case, for comparative purposes.  Attached as Ex. 3 to the accompanying Heller Decl. is a chart comparing the proposed Settlement here and the settlement approved in *Roberts v. AT&T Mobility LLC*, N.D. Cal., Case No. 3:15-cv-03418-EMC, which involved the same defendant, a very similar notice program, and also included a very similar claims process as part of the settlement there.

E. **The Proposed Method of Distributing Relief Is Effective (Fed. R. Civ. P. 23(e)(2)(C)(ii))**

The Settlement provides for an efficient and effective distribution of settlement payments. Payments to current customers will be via automatic account credits to their AT&T accounts. Payments to former customers will be via mailed checks, with appropriate steps taken to find updated address information and re-mail undeliverable checks as needed.  (Settlement § IV.C.4.e-g)

F. **Settlement Class Counsel Will Seek Reasonable Attorneys' Fees and Reimbursement of Their Litigation Expenses (Fed. R. Civ. P. 23(e)(2)(C)(iii)).**

Settlement Class Counsel will move for an award of reasonable attorneys' fees and reimbursement of their litigation expenses. Fed. R. Civ. P. 23(e)(2)(C)(iii).  Settlement Class Counsel currently anticipate requesting that the Court award 25% of the common Settlement Fund (*i.e.*, $3.5 million) for attorneys' fees, plus reimbursement of litigation expenses.  Settlement Class Counsel will file their fee application, which will provide the supporting basis for their request, at least 45 days in advance of the Exclusion/Objection Deadline, and it will be available on the Settlement Website after it is filed.  As with the payments to Settlement Class Members, any attorneys' fees and expenses awarded by the Court will be paid from the Settlement Fund following the Effective Date of the Settlement.  (Settlement § XI)

Based on their preliminary review, Settlement Class Counsel's total combined hours in this case through April 30, 2022 are approximately 4,484.9 hours, for a total combined lodestar of approximately $2,632,977.50 during that period.[12]  Settlement Class Counsel's total combined litigation expenses in this case through December 31, 2020 are approximately $75,000.00.[13]  Based on the above numbers, a fee equal to 25% of the Settlement Fund would represent a 1.329 multiplier on Settlement Class Counsels' approximate lodestar through April 30, 2022.  Settlement Class Counsel will continue to incur time in seeking settlement approval and on implementation efforts should the Settlement be approved, will continue to review their respective records, and will provide updated information regarding the time and expenses for which compensation is sought, and additional detail regarding the work they performed and their expenses, in their fee application.[14]

---

[12] Heller Decl., ¶¶ 24-25; Hattis Decl., ¶¶ 7-8.
[13] Heller Decl., ¶ 25.
[14] Finally, there are no agreements between the parties other than the Settlement.  *See* Fed. R. Civ.

1   **III.    The Court Should Provisionally Certify the Settlement Class**

2         When a settlement is reached before certification, a court must determine whether to certify

3   the settlement class.  *See, e.g.*, *Manual for Compl. Litig.*, § 21.632 (4th ed. 2014); *Amchem Prods.,*

4   *Inc. v. Windsor*, 521 U.S. 591, 613-14 (1997).  Class certification is warranted when the

5   requirements of Rule 23(a) and at least one subsection of Rule 23(b) are satisfied.  Certification of

6   the Settlement Class is warranted here.

7         **A.      The Requirements of Rule 23(a) are Satisfied**
                **1.      Numerosity (Rule 23(a)(1))**

8         Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is

9   impracticable."  Fed. R. Civ. P. 23(a)(1).  A "class of 41 or more is usually sufficiently numerous."

10  5 *Moore's Federal Practice—Civil* § 23.22 (2016); *see also Hernandez v. Cty. of Monterey*, 305

11  F.R.D. 132, 153 (N.D. Cal. 2015).  Numerosity is easily satisfied here.  According to AT&T's

12  records, the Settlement Class, as defined, includes approximately 5,425,000 accounts.

13        **2.      Commonality (Rule 23(a)(2))**

14        Rule 23(a)(2) requires that there be one or more questions common to the class.

15  Commonality "does not turn on the number of common questions, but on their relevance to the

16  factual and legal issues at the core of the purported class' claims."  *Jimenez v. Allstate Ins. Co.*, 765

17  F.3d 1161, 1165 (9th Cir. 2014).  "Even a single question of law or fact common to the members of

18  the class will satisfy the commonality requirement."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338,

19  369 (2011).  This case raises multiple common questions, including whether AT&T's alleged

20  omissions were material, whether AT&T's characterization of the Admin Fee on the bills was

21  accurate, and whether AT&T's charging of the Admin Fee was unfair.

22        **3.      Typicality (Rule 23(a)(3))**

23        Under Rule 23(a)(3), a plaintiff's claims are "typical" if they are "reasonably coextensive

24  with those of absent class members; they need not be substantially identical."  *Parsons v. Ryan*, 754

25  F.3d 657, 685 (9th Cir. 2014) (citation omitted).  "The test of typicality is whether other members

26  have the same or similar injury, whether the action is based on conduct which is not unique to the

27  named plaintiffs and whether other class members have been injured by the same course of

28  P. 23(e)(3) ("the parties seeking approval must file a statement identifying any agreement made in
    connection with the proposal").

2407356.8

conduct." *Hernandez*, 305 F.R.D. at 159 (citation and internal quotations omitted).  Plaintiffs' claims and those of the Settlement Class are based on the same course of conduct and the same legal theories.  Moreover, Plaintiff and the Settlement Class Members all suffered the same type of alleged harm—i.e., incurred Admin Fees.

### 4.     Adequacy of Representation (Rule 23(a)(4))

Rule 23(a)(4)'s adequacy inquiry asks "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012).  Proposed Settlement Class Counsel have extensive experience litigating and resolving class actions, and are well qualified to represent the Settlement Class.[15] Since filing this case, Settlement Class Counsel have vigorously prosecuted this action on behalf of the Settlement Class, including, *inter alia*, substantial motions practice, conducting extensive investigation and discovery, engaging experts, participating in multiple mediations, and negotiating the proposed Settlement.  They have and will continue to fairly and adequately protect the interests of the Settlement Class.[16]  Likewise, Plaintiffs have demonstrated their commitment to the Settlement Class, including by providing pertinent information about their experiences and accounts, searching for and providing documents and information in response to AT&T's written discovery requests, regularly communicating with their counsel about the case, and reviewing and approving the proposed Settlement.[17]  Finally, Plaintiffs' and Settlement Class Counsel's interests are aligned with and not antagonistic to the interests of the Settlement Class.  Plaintiffs and Settlement Class Members share an interest in obtaining relief from AT&T for the alleged violations.

### B.     The Requirements of Rule 23(b)(3) Are Satisfied

In addition to the requirements of Rule 23(a), at least one of the prongs of Rule 23(b) must be satisfied.  Here, Plaintiffs seek certification under Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently

---

[15] Heller Decl., ¶¶ 3-8, Ex. B; Hattis Decl., ¶¶ 4-6.
[16] *See supra* Background §§ I-II.
[17] Vianu Decl., ¶¶ 5-7; Blum Decl., ¶¶ 5-7; Gutierrez Decl., ¶¶ 5-7.

1    adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

2         "The predominance inquiry 'asks whether the common, aggregation-enabling, issues in the

3    case are more prevalent or important than the non-common, aggregation-defeating, individual

4    issues.'" *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (citation omitted)).  At its

5    core, "[p]redominance is a question of efficiency." *Butler v. Sears, Roebuck & Co.*, 702 F.3d 359,

6    362 (7th Cir. 2012).  The Ninth Circuit favors class treatment of claims stemming from a "common

7    course of conduct," like those alleged in this case. *See In re First All. Mortg. Co.*, 471 F.3d 977,

8    989 (9th Cir. 2006).

9         Common questions predominate.  The Settlement Class Members' claims all arise under the

10   same California laws and the same alleged course of conduct.  The questions that predominate

11   include whether AT&T's alleged omissions were material, whether AT&T's characterization of the

12   Admin Fee on the bills was accurate, and whether AT&T's charging of the Admin Fee was unfair.

13   Moreover, under the proposed Settlement, there will not need to be a class trial, meaning there are

14   no potential concerns about any individual issues, if any, creating trial inefficiencies.  *See Amchem*

15   *Prods.,* 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district

16   court need not inquire whether the case, if tried, would present intractable management

17   problems … for the proposal is that there be no trial.").

18        Fed. R. Civ. P. 23(b)(3)'s superiority inquiry calls for a comparative analysis of whether a

19   class action is "superior to other available methods for the fair and efficient adjudication of the

20   controversy." *Id.* at 615; *see also Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175

21   (9th Cir. 2010) ("[T]he purpose of the superiority requirement is to assure that the class action is the

22   most efficient and effective means of resolving the controversy.").  Class treatment is superior to

23   other methods for the resolution of this case, including from a judicial efficiency perspective and

24   given the relatively small amounts of alleged damages for each individual consumer.  Moreover,

25   Settlement Class Members remain free to exclude themselves if they wish to do so.

26   **IV.    The Proposed Notice Program Complies with Rule 23 and Due Process.**

27        Before a proposed class settlement may be finally approved, the Court "must direct notice in

28   a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P.

2407356.8

PLAINTIFFS' MEM. IN SUPPORT OF MOT.
FOR PRELIM. APPROVAL OF CLASS SETTLEMENT
CASE NO. 3:19-CV-03602-LB

23(e)(1)(B).  Where certification of a Rule 23(b)(3) settlement class is sought, the notice must also comply with Rule 23(c)(2)(B), which requires:

> the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means. The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176 (1974).

The proposed notice program here (Settlement § VI) meets all applicable standards.  The notice program includes direct notice to all Settlement Class Members, via a combination of email, first class U.S. Mail, and SMS (text message); reminder email and SMS notices; a targeted social media notice campaign; the establishment of a Settlement Website where Settlement Class Members can submit claims online and view the Settlement, the long-form Website Notice, and other key case documents; and the establishment of a Toll-Free Number where Settlement Class Members can get additional information.  Moreover, the proposed forms of notice (Settlement Ex. A-D) inform Settlement Class Members, in clear and concise terms, about the nature of this case, the Settlement, how to submit claims and the deadline to do so, and their other rights and options, including all of the information required by Rule 23(c)(2)(B).  The Court should approve the proposed notice program.

**V.      The Court Should Schedule a Fairness Hearing and Related Dates.**

The next steps in the settlement approval process are to notify Settlement Class Members of the proposed Settlement, allow Settlement Class Members an opportunity to exclude themselves or file comments or objections, and hold a Fairness Hearing.  Towards those ends, the parties propose the following schedule:

| Last day for AT&T to provide its Customer Data to the Settlement Administrator | **14 days after entry of Preliminary Approval Order** |
|---|---|

PLAINTIFFS' MEM. IN SUPPORT OF MOT.
FOR PRELIM. APPROVAL OF CLASS SETTLEMENT
CASE NO. 3:19-CV-03602-LB

| | |
|---|---|
| Notice Date | **45 days after entry of Preliminary Approval Order** |
| Last day for Plaintiffs and Settlement Class Counsel to file motion for final approval of the Settlement, and motion for attorneys' fees, expenses and service awards | **15 days after Notice Date** |
| Exclusion/Objection Deadline | **60 days after Notice Date** |
| Last day for the Parties to file any responses to objections, and any replies in support of motion for final settlement approval and/or Settlement Class Counsel's application for attorneys' fees, expenses and service awards | **14 days before Fairness Hearing** |
| Claim Deadline | **90 days after Notice Date** |
| Fairness Hearing | **[TBD]** |

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court do the following:

(a)     Grant preliminary approval of the proposed Settlement;

(b)     Certify, for settlement purposes, the Settlement Class as defined in the Settlement, pursuant to Fed. R. Civ. P. 23(a) and (b)(3);

(c)     Appoint Plaintiffs as Settlement Class Representatives representing the Settlement Class;

(d)     Appoint Roger N. Heller, Michael W. Sobol, and Daniel E. Seltz of Lieff, Cabraser, Heimann & Bernstein, LLP; and Daniel M. Hattis of Hattis & Lukacs as Settlement Class Counsel;

(e)     Approve the proposed notice program in the Settlement, including the proposed forms of notice, and direct that notice be disseminated pursuant to such notice program and Fed. R. Civ. P. 23(e)(1);

(f)     Approve the proposed process set forth in the Settlement for Settlement Class Members to submit claims;

(g)     Appoint Angeion Group as Settlement Administrator and direct Angeion Group to carry out the duties and responsibilities of the Settlement Administrator specified in the Settlement;

(h)     Set deadlines for Settlement Class Members to request exclusion from the Settlement Class, to object to the Settlement, and to submit claims;

(i)     Stay all non-Settlement-related proceedings in this lawsuit pending final approval of the Settlement; and

(j)     Schedule a Fairness Hearing and certain other dates in connection with the final approval of the Settlement pursuant to Fed. R. Civ. P. 23(e)(2).

Dated: May 10, 2022                    Respectfully submitted,

2407356.8

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

By: */s/ Roger N. Heller*
    Roger N. Heller (SBN 215348)
    Michael W. Sobol (SBN 194857)
    Daniel E. Seltz (admitted pro hac vice)
    Jallé Dafa (SBN 290637)
    Avery S. Halfon (admitted pro hac vice)
    275 Battery Street, 29th Floor
    San Francisco, CA 94111-3339
    Telephone: 415.956.1000
    Facsimile: 415.956.1008

    Daniel M. Hattis (SBN 232141)
    Paul Karl Lukacs (SBN 197007)
    HATTIS & LUKACS
    400 108th Ave NE, Ste. 500
    Bellevue, WA 98004
    Telephone: (425) 233-8650
    Facsimile:  (425) 412-7171

    *Attorneys for Plaintiffs and the Proposed Class*

2407356.8