UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| IAN VIANU, ELIZABETH BLUM, and DOMINIC GUTIERREZ, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AT&T MOBILITY LLC,<br><br>Defendant. | Case No. 19-cv-03602-LB<br><br>**ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF CLASS-ACTION SETTLEMENT**<br><br>Re: ECF No. 145 |

**INTRODUCTION**

This is a class action against AT&T Mobility LLC. The plaintiffs — current and former wireless-service customers of AT&T — allege that AT&T engages in a "bait-and-switch scheme" with customers by which it advertises particular flat monthly rates for wireless-service plans but then (after customers sign up) "covertly" adds a monthly administrative fee.[1] The plaintiffs' claims are for violations of California's Unfair Competition Law (UCL), California's False Advertising Law (FAL), and California's Consumer Legal Remedies Act (CLRA), plus permanent public injunctive relief and breach of the implied covenant of good faith and fair dealing.[2] The parties

---

[1] First Am. Compl. (FAC) – ECF No. 118 at 2 (¶ 1). Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] *Id.* at 27–36 (¶¶ 113–73).

United States District Court
Northern District of California

settled their case and the plaintiffs moved for preliminary approval of the proposed settlement.[3] The court grants the unopposed motion.

### STATEMENT

**1. The Lawsuit**

The plaintiffs filed the lawsuit on June 20, 2019, claiming the following: (1) violations of the UCL, Cal. Bus. & Prof. Code § 17200, *et seq.*; (2) violations of the FAL, Cal. Bus. & Prof. Code § 17500, *et seq.*; (3) violations of the CLRA, Cal. Civ. Code § 1750, *et seq.*; (4) a claim for public-injunctive relief to permanently enjoin the false advertising and deception, in violation of Cal. Civ. Code § 3422; and (5) breach of the implied covenant of good faith and fair dealing.[4] On August 16, 2019, AT&T moved to compel arbitration, but the court ultimately denied the motion.[5] AT&T later moved to dismiss, but the court denied the motion except for holding that, for statute-of-limitations purposes, the discovery rule did not apply and AT&T's conduct was not a continuing violation.[6] The plaintiffs then filed a first amended complaint on September 21, 2021, with the same five claims but replaced one of the named plaintiffs with two others and added a request for damages for the CLRA claim.[7] AT&T answered the first amended complaint on October 21, 2021.[8]

At the time of settlement, AT&T had recently filed motions to stay the case and compel arbitration, prompted by the Supreme Court's grant of certiorari in *Viking River Cruises, Inc. v. Moriana*, No. 20-1573 (U.S. cert. granted, Dec. 15, 2021).[9] Also, the plaintiffs "were preparing their class-certification motion, which was scheduled to be filed on March 23, 2022."[10]

---

[3] Settlement Agreement, Ex. 1 to Heller Decl. – ECF No. 145-1 at 14–62; Mot. – ECF No. 145.

[4] Compl. – ECF No. 1.

[5] Mot. to Compel Arbitration – ECF No. 20; Order – ECF No. 56.

[6] Mot. to Dismiss – ECF No. 67; Order – ECF No. 88.

[7] FAC – ECF No. 118.

[8] Answer – ECF No. 124.

[9] Mot. for Stay – ECF No. 137; Mot. to Compel Arbitration – ECF No. 138.

[10] Mot. – ECF No. 145 at 21.

United States District Court
Northern District of California

United States District Court
Northern District of California

1
2
3
4
5

The parties engaged in extensive discovery, including "reviewing more than 60,000 pages of internal documents," "deposing five pertinent AT&T executives/employees," review and analysis of data on class members' accounts and fees paid, "third-party discovery of two accounting firms that assisted AT&T in connection with" the administrative fee, and "substantial written discovery."[11]

6
7
8
9

The parties reached their settlement after two mediations. The first was on November 10, 2020, with Eric Green. The second was on February 17, 2022, with Robert Meyer of JAMS. At the second mediation, the parties reached an agreement in principle to settle, and subsequently they finalized the settlement.[12] The settlement agreement was executed on May 10, 2022.[13]

10
11

On May 10, 2022, the plaintiffs moved for preliminary approval of the settlement.[14] The court held a hearing on June 16, 2022. The parties consented to magistrate-judge jurisdiction.[15]

12

13

## 2.   The Proposed Settlement

14
15

All defined terms in this Preliminary Approval Order have the same meaning as in the Settlement Agreement. (The terms are capitalized below, even if that is grammatically awkward.)

16

### 2.1   Settlement Class

17

The Settlement Class is defined as follows:

18
19
20

All consumers residing in California (based on the Accountholder's last known billing address) with a post-paid wireless service plan from AT&T Mobility LLC through a Consumer or Individual Responsibility User (IRU) account and who were charged an Administrative Fee on such account between June 20, 2015 and the date of preliminary settlement approval.[16]

21
22

The definition is limited to those with consumer or IRU accounts to specify that those with "corporate responsibility user" accounts ("persons who receive [AT&T wireless] services through

23
24

---

[11] Heller Decl. – ECF No. 145-1 at 9 (¶ 20).

25

[12] *Id.* at 9–10 (¶¶ 22–23).

26

[13] Settlement Agreement, Ex. 1 to Heller Decl. – ECF No. 145-1 at 59–62.

[14] Mot. – ECF No. 145.

27

[15] Consents – ECF Nos. 7, 19.

28

[16] Settlement Agreement, Ex. 1 to Heller Decl. – ECF No. 145-1 at 24–25 (§ II.A.30).

a group plan" and whose employers pay the monthly bill) are not included.[17] Also excluded from the Settlement Class are consumers "who assert claims and seek relief in connection with the Administrative Fee and who have provided AT&T with an unresolved written Notice of Dispute (pursuant to AT&T's contractual dispute resolution procedures) before the Execution Date."[18] The Execution Date was May 10, 2022.[19]

"According to AT&T's records there are approximately 5,425,000 Settlement Class Accounts."[20] (Under the Settlement Agreement, AT&T accounts are used to determine class membership: "[o]nly one valid Claim may be submitted for each Settlement Class Account."[21])

## 2.2   Settlement Amount and Allocation

The gross Settlement Fund is $14,000,000 and is fully non-reversionary.[22] The Net Distributable Funds — the funds recovered by the Settlement Class — will be determined after the following deductions: (1) Administrative Costs (estimated at $813,000 and including an Administrative Costs Advance of $600,000); (2) any attorney's fees and costs approved by the court (fees are not to exceed $3,500,000, which is twenty-five percent of the Settlement Fund); and (3) any service awards for the Plaintiffs approved by the court (not to exceed $3,500 for each Plaintiff).[23] Settlement Class Counsel will move for an award of attorney's fees and costs "[n]o later than fifteen days following the Notice Date."[24]

The Net Distributable Funds will be distributed equally to all Settlement Class Members who submit a claim form. Specifically, "[a]ll Settlement Class Accounts will be eligible to submit a simple claim (electronically via the Settlement Website or by mail)" and "[a]ll Settlement Class

---

[17] Mot. – ECF No. 145 at 13 & n.3.

[18] Settlement Agreement, Ex. 1 to Heller Decl. – ECF No. 145-1 at 25 (§ II.A.30).

[19] *Id.* at 57 (§ XII.S), 59–62.

[20] *Id.* at 25 n.1.

[21] *Id.* at 30 (§ IV.C.2.d).

[22] *Id.* at 27–28 (§ IV.A).

[23] *Id.* at 21 (§ II.A.4), 27–28 (§ IV.A), 50 (§ XI.A), 51 (§ XI.F); Weisbrot Decl. – ECF No. 145-6 at 9 (¶ 37).

[24] Settlement Agreement, Ex. 1 to Heller Decl. – ECF No. 145-1 at 50 (§ XI.A).

United States District Court
Northern District of California

Accounts that submit a valid claim by the Claim Deadline . . . will receive an equal share of the Net Distributable Funds."[25] The plaintiffs estimate that the individual payment amounts will be about $15–$29.[26]

How each Settlement Class Member who submits a claim form will receive his/her payment depends on whether he/she is still an AT&T customer. If so, payment "will be via automatic credit to their AT&T accounts." If not, payment "will be via mailed check, with appropriate steps taken to locate updated address information and re-issue checks that are returned undeliverable."[27] "Any residual funds remaining one year after checks are initially mailed . . . will be treated as unclaimed property of the corresponding customers, subject to applicable state unclaimed property procedures."[28]

### 2.3   Release

"Settlement Class Members will release AT&T and its affiliates from any claims about the issues in this case. The scope of the release substantively tracks the scope of the operative [first amended complaint]."[29] Settlement Class Members also waive their rights under California Civil Code § 1542 and any similar provisions of federal or state law.[30]

### 2.4   Administration

Angeion Group is the proposed Settlement Administrator.[31] Angeion "was selected through a competitive bidding process" and "is a well-known administration firm that has successfully administrated numerous class settlements and judgments."[32]

---

[25] Mot. – ECF No. 145 at 14; Settlement Agreement, Ex. 1 to Heller Decl. – ECF No. 145-1 at 29–35 (§ IV.C); Claim Form, Ex. G to id. – ECF No. 145-1 at 88–89.

[26] Mot. – ECF No. 145 at 14.

[27] Id.; Settlement Agreement, Ex. 1 to Heller Decl. – ECF No. 145-1 at 31–34 (§ IV.C.4).

[28] Mot. – ECF No. 145 at 14 & n.4; Settlement Agreement, Ex. 1 to Heller Decl. – ECF No. 145-1 at 34–35 (§ IV.C.5).

[29] Mot. – ECF No. 145 at 19 & n.6; Settlement Agreement, Ex. 1 to Heller Decl. – ECF No. 145-1 at 44–47 (§ IX).

[30] Settlement Agreement, Ex. 1 to Heller Decl. – ECF No. 145-1 at 46 (§ IX.E).

[31] Id. at 24 (§ II.A.28); Weisbrot Decl. – ECF No. 145-6.

[32] Mot. – ECF No. 145 at 15; Weisbrot Decl. – ECF No. 145-6 at 2–3 (¶¶ 1–10); Angeion Group Resume, Ex. A to id. – ECF No. 145-6 at 11–31.

United States District Court
Northern District of California

Among other duties, Angeion will administer the notice program.[33] The notice program

consists of (1) direct notice to Settlement Class Members in the form of email, first-class mail, and

text message (the mailed notice will go only to those who do not receive the other direct notices,

and Angeion will use standard methods of updating addresses and re-mailing any mailed notices

that are returned undeliverable), plus reminder emails and text messages, (2) a social media

campaign using Facebook and Instagram, and (3) a Settlement Website and Toll-Free Number.[34]

The procedures for exclusion and objection are also in the Settlement Agreement.[35]

## ANALYSIS

### 1. Jurisdiction

The court has diversity jurisdiction under the Class Action Fairness Act (CAFA). 28 U.S.C. §

1332(d)(2).

### 2. Certification of Settlement Class

The court reviews the propriety of class certification under Federal Rule of Civil Procedure

23(a) and (b). When parties enter into a settlement before the court certifies a class, the court

"must pay 'undiluted, even heightened, attention' to class certification requirements" because the

court will not have the opportunity to adjust the class based on information revealed at trial. *Staton*

*v. Boeing Co.*, 327 F.3d 938, 952–53 (9th Cir. 2003) (quoting *Amchem Prods., Inc. v. Windsor*, 521

U.S. 591, 620 (1997)); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

Class certification requires the following: (1) the class is so numerous that joinder of all

members individually is "impracticable;" (2) there are questions of law or fact common to the

---

[33] Settlement Agreement, Ex. 1 to Heller Decl. – ECF No. 145-1 at 35 (§ V.1(a)).

[34] Mot. – ECF No. 145 at 16–18; Settlement Agreement, Ex. 1 to Heller Decl. – ECF No. 145-1 at 36–41 (§ VI); Weisbrot Decl. – ECF No. 145-6 at 3–8 (¶¶ 12–33); Email Notice, Ex. A to Settlement Agreement – ECF No. 145-1 at 64–66; Postcard Notice, Ex. B to *id.* – ECF No. 145-1 at 68–71; Website Notice, Ex. C to *id.* – ECF No. 145-1 at 73–80; Text Message Notice, Ex. D to *id.* – ECF No. 145-1 at 82; Reminder Email Notice, Ex. E to *id.* – ECF No. 145-1 at 84; Reminder Text Message Notice, Ex. F to *id.* – ECF No. 145-1 at 86.

[35] Settlement Agreement, Ex. 1 to Heller Decl. – ECF No. 145-1 at 41–44 (§§ VII–VIII).

1  class; (3) the claims or defenses of the class representatives are typical of the claims or defenses of

2  the class; and (4) the person representing the class will fairly and adequately protect the interests

3  of all class members. Fed. R. Civ. P. 23(a); *Staton*, 327 F.3d at 953. Also, the common questions of

4  law or fact must predominate over any questions affecting only individual class members, and the

5  class action must be superior to other available methods for fairly and efficiently adjudicating the

6  controversy. Fed. R. Civ. P. 23(b)(3).

7       The court finds (for settlement purposes only) that the proposed settlement class meets the

8  Rule 23(a) prerequisites of numerosity, commonality, typicality, and adequacy. Also, under Rule

9  23(b)(3) (and for settlement purposes only), common questions predominate over any questions

10  affecting only individual members, and a class action is superior to other available methods.

11       First, with over five million members, the class is numerous.

12       Second, there are questions of law and fact common to the class. The case is about an

13  administrative fee uniformly applied to all class members' AT&T accounts, thereby causing the

14  same alleged injury to all class members. Common questions include "whether AT&T's alleged

15  omissions were material, whether AT&T's characterization of the [administrative fee] on the bills

16  was accurate, and whether AT&T's charging of the [administrative fee] was unfair."[36] Thus, the

17  claims depend on common contentions, the determination of which "will resolve an issue that is

18  central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564

19  U.S. 338, 350 (2011); *Betorina v. Randstad US, L.P.*, No. 15-cv-03646-EMC, 2017 WL 1278758, at

20  *4 (N.D. Cal. Apr. 6, 2017). Furthermore, these common questions predominate over any questions

21  affecting only individual members.

22       Third, the claims of the representative parties are typical of the claims of the class. The

23  representative parties and all class members allege the same violations based on similar facts. All

24  representatives possessed the same interest and suffered the same injury as the rest of the class.

25  *See Betorina*, 2017 WL 1278758, at *4.

26

27

28  [36] Mot. – ECF No. 145 at 25.

United States District Court
Northern District of California

Fourth, the representative parties will fairly and adequately protect the interests of the class. Two factors are relevant to the adequacy determination: (1) whether the named plaintiffs and their counsel have potential conflicts with the other class members; and (2) whether counsel chosen by the representative party is qualified, experienced, and able to vigorously conduct the litigation. *In re Hyundai and Kia Fuel Econ. Litig.*, 926 F.3d 539, 566 (9th Cir. 2019) (citing *Hanlon*, 150 F.3d at 1020). Here, the named plaintiffs have shared claims and interests with the class (and no conflicts of interest), and they retained qualified and competent counsel who have prosecuted the case vigorously.[37] *See id.*; *Loc. Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001); *Hanlon*, 150 F.3d at 1021–22.

Finally, a class action is superior to other available methods for fairly and efficiently adjudicating the controversy, especially "given the relatively small amounts of alleged damages for each individual consumer."[38] Fed. R. Civ. P. 23(b)(3).

In sum, the prerequisites of Rule 23(a) and (b)(3) are met. The court certifies the class under Rule 23(b)(3) for settlement purposes only.

### 3.   Preliminary Approval of Settlement

A court may approve a proposed class-action settlement only "after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether":

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

---

[37] *Id.* at 26 & n.15.

[38] *Id.* at 27.

Fed. R. Civ. P. 23(e)(2). These factors "are substantially similar to those articulated" in *Hanlon*, 150 F. 3d at 1027. *Student A v. Berkeley Unified Sch. Dist.*, No. 17-cv-02510-JST, 2021 WL 6332353, at *2 n.2 (N.D. Cal. July 8, 2021).

In *Hanlon*, the Ninth Circuit identified factors relevant to assessing a settlement proposal: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class-action status throughout trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceeding; (6) the experience and views of counsel; (7) the presence of a government participant; and (8) the reaction of class members to the proposed settlement. 150 F.3d at 1026.

When parties "negotiate a settlement agreement before the class has been certified, settlement approval requires a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)." *Roes, 1–2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048 (9th Cir. 2019) (cleaned up). "Specifically, such settlement agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *Id*. at 1048–49 (cleaned up).

The court has evaluated the Settlement Agreement for overall fairness and concludes preliminarily that it is free of collusion and approval is appropriate.

First, the settlement provides good value. The plaintiffs offer two methods of assessing the settlement value, both informed by the extensive discovery conducted in this case. First, the plaintiffs' estimated $15–$29 individual payment amounts "represent[] a refund of approximately 6–11 months of the average [administrative] fees" charged by AT&T.[39] "As an additional point of comparison," the estimated individual payment amounts "represent[] a refund of approximately 8.3%–16.1% of the average total [administrative] fees paid during the class period."[40] These figures reflect a substantial recovery, especially given that they rely on the net rather than gross settlement amount. The figures are also similar to the settlement in a similar class action against

---

[39] *Id.* at 22.

[40] *Id.*

AT&T, approval of which was granted.[41] *Roberts v. AT&T Mobility LLC*, No. 15-cv-03418-EMC, Order – ECF No. 215 (N.D. Cal. Aug. 20, 2021).

Second, the value of the settlement is significant compared to the litigation risks and uncertainties. At the time of settlement, AT&T was vigorously contesting the case and had recently filed motions to stay the case and compel arbitration, prompted by the Supreme Court's grant of certiorari in *Viking River Cruises, Inc. v. Moriana*, No. 20-1573 (U.S. cert. granted, Dec. 15, 2021).[42] Liability "remain[ed] very much disputed" and AT&T planned to assert various arguments and defenses.[43] In addition, the plaintiffs had not yet moved for class certification. When viewed against the risk of no recovery, this settlement is fair. *Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 331 (N.D. Cal. 2014) (litigation risks, including maintaining class-action status, favor settlement approval). Moreover, settlement allows payment to the Class Members now, before costly and protracted litigation.

Third, a class action allows class members — who otherwise would not pursue their claims individually because costs would exceed recoveries — to obtain relief.

Finally, the settlement is the product of serious, non-collusive, arm's-length negotiations and was reached after two mediations with experienced mediators.

In sum, viewed as a whole, the proposed settlement is sufficiently "fair, adequate, and reasonable" to warrant preliminary approval. *See Officers for Just. v. Civ. Serv. Comm'n of City and Cnty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982).

Settlement Class Counsel have not yet moved for attorney's fees, and in any case the court will address the issue of attorney's fees at the final fairness hearing. *See Hanlon*, 150 F.3d at 1029 (twenty-five percent is a benchmark in common fund cases); *cf. Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002) (twenty-five percent benchmark, though a starting point for analysis, may be inappropriate in some cases; fees must be supported by findings).

[41] Chart Comparing Cases, Ex. 3 to Heller Decl. – ECF No. 145-1 at 270–71.

[42] Mot. for Stay – ECF No. 137; Mot. to Compel Arbitration – ECF No. 138.

[43] Mot. – ECF No. 145 at 22.

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

### 4.   Appointment of Class Representative, Class Counsel, and Settlement Administrator

The court appoints the class representatives for settlement purposes only: Ian Vianu, Elizabeth Blum, and Dominic Gutierrez. They have claims that are typical of members of the class generally, and they are adequate representatives of the other members of the proposed class.[44]

The court appoints Angeion Group as the Settlement Administrator. It will administer the settlement in accordance with the requirements set forth in the Settlement Agreement.

The court also appoints Settlement Class Counsel: Roger N. Heller, Michael W. Sobol, and Daniel E. Seltz of Lieff, Cabraser, Heimann & Bernstein, LLP; and Daniel M. Hattis of Hattis & Lukacs. Fed. R. Civ. P. 23(a) & (g)(1). They have sufficient qualifications, experience, and expertise in prosecuting class actions.[45]

### 5.   Class Notice

The court approves the class notice and plan. The notice plan provides the best notice practicable, satisfies the notice requirements of Rule 23, adequately advises class members of their rights under the settlement agreement, and meets the requirements of due process. *Cf. In re Hyundai and Kia*, 926 F.3d at 567 ("Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.") (cleaned up).

The forms of notice fairly, plainly, accurately, and reasonably provide class members with all required information, including the following: (1) a summary of the lawsuit and claims asserted; (2) a clear definition of the class; (3) a description of the material terms of the settlement, including the estimated payment; (4) a disclosure of the release of the claims; (5) the date, time,

---

[44] Vianu Decl. – ECF No. 145-3; Blum Decl. – ECF No. 145-4; Gutierrez Decl. – ECF No. 145-5.

[45] Heller Decl. – ECF No. 145-1 at 2–6 (¶¶ 3–8); Lieff Cabraser Firm Resume, Ex. 2 to *id.* – ECF No. 145-1 at 114–268; Hattis Decl. – ECF No. 145-2.

and location of the final fairness hearing; and (6) the identity of class counsel and the provisions

for attorney's fees, costs, and class-representative service awards.[46]

### 6. Service Awards

District courts must evaluate proposed awards individually, using relevant factors that include "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation." *Staton*, 327 F.3d at 977 (cleaned up). "Such awards are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009) (citation omitted). The Ninth Circuit has "noted that in some cases incentive awards may be proper but [has] cautioned that awarding them should not become routine practice." *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013) (discussing *Staton*, 327 F.3d at 975–78). District courts "must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives." *Id.* at 1164. In this district, a $5,000 incentive award is presumptively reasonable. *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 266 (N.D. Cal. 2015) (collecting cases).

The court defers consideration of the service awards until the Fairness Hearing.

### 7. Compliance with CAFA

The Settlement Agreement provides for compliance with CAFA: within ten days of the filing of the preliminary-approval motion, AT&T was to "serve a notice of the proposed Settlement, in

---

[46] Mot. – ECF No. 145 at 16–18; Settlement Agreement, Ex. 1 to Heller Decl. – ECF No. 145-1 at 36–41 (§ VI); Weisbrot Decl. – ECF No. 145-6 at 3–8 (¶¶ 12–33); Email Notice, Ex. A to Settlement Agreement – ECF No. 145-1 at 64–66; Postcard Notice, Ex. B to *id.* – ECF No. 145-1 at 68–71; Website Notice, Ex. C to *id.* – ECF No. 145-1 at 73–80; Text Message Notice, Ex. D to *id.* – ECF No. 145-1 at 82; Reminder Email Notice, Ex. E to *id.* – ECF No. 145-1 at 84; Reminder Text Message Notice, Ex. F to *id.* – ECF No. 145-1 at 86.

United States District Court
Northern District of California

accordance with 28 U.S.C. § 1715," on the appropriate state and federal officials.[47] Any final settlement approval will be more than ninety days after service as required by the Act.

### 8. Procedures for Final Approval Hearing

#### 8.1 Deadlines

The court approves the parties' proposed schedule set forth in paragraph 42 of the amended proposed order.[48] The Fairness Hearing will be on November 3, 2022, at 9:30 a.m.

#### 8.2 Fairness Hearing

At the hearing, the court will consider whether to (1) finally approve the settlement agreement and the releases in it, (2) finally approve the service awards, and (3) award attorney's fees and costs to Settlement Class Counsel. The court may, for good cause, extend any of the deadlines or continue the Fairness Hearing without further notice to the Settlement Class Members.

#### 8.3 Objections to or Exclusions from the Settlement

The objection and exclusion procedures will be those in the Settlement Agreement.[49]

### 9. Ancillary Items

If the Settlement does not occur for any reason, certification of the Settlement Class and any Settlement Class Representative or Settlement Class Counsel appointments, including this order, will be deemed void and vacated. The Parties preserve all rights and defenses as they existed prior to the execution of the Settlement Agreement and this order in the event the Settlement Agreement is not finally approved by the court or otherwise does not take effect.[50]

The court directs the Parties and Settlement Administrator to comply with all aspects of paragraphs 13 through 23 of the amended proposed order.[51]

---

[47] Settlement Agreement, Ex. 1 to Heller Decl. – ECF No. 145-1 at 40 (§ VI.7).

[48] Am. Proposed Order – ECF No. 147-1 at 13 (¶ 42).

[49] Settlement Agreement, Ex. 1 to Heller Decl. – ECF No. 145-1 at 41–44 (§§ VII–VIII).

[50] Am. Proposed Order – ECF No. 147-1 at 4 (¶ 7).

[51] *Id.* at 5–8 (¶¶ 13–23) (incorporated by this reference).

1    Within thirty days following entry of this Preliminary Approval Order, AT&T will pay the

2    Administrative Costs Advance to the Settlement Administrator in the amount of $600,000.[52]

3    By no later than fourteen days before the Fairness Hearing, the Settlement Administrator will

4    file (or provide to Settlement Class Counsel for filing) a declaration confirming that Notice

5    program has been implemented in accordance with the Settlement Agreement and this order

6    (including CAFA notice) and providing a final list of persons who submitted timely and valid

7    requests for requests for exclusion from the Settlement Class.[53]

8    By no later than fourteen days before the Fairness Hearing, the Settlement Administrator will

9    file (or provide to Settlement Class Counsel for filing) copies of any objections received by the

10   Settlement Administrator.[54]

11   The court approves the form and content of the proposed Claim Form, in the form attached as

12   Exhibit G to the Settlement Agreement, approves the Claims Process set forth in the Settlement

13   Agreement for Settlement Class Members to submit Claims, and directs the Parties and the

14   Settlement Administrator to implement the Claims Process.[55]

15   For objections and exclusions to be effective, Settlement Class Members must comply with

16   paragraphs 27 and 28 of the amended proposed order.[56]

17   In the event the court changes the date, time, and/or the format of the Fairness Hearing, the

18   Parties must ensure that the updated information is posted on the Settlement Website.[57]

19   If the Settlement Agreement, including any amendment made in accordance therewith, is not

20   approved by the Court or does not become effective for any reason whatsoever, the Settlement

21   Agreement and any actions taken or to be taken in connection therewith (including this

22   Preliminary Approval Order and any judgment entered herein), will be terminated and become

23

24   _____

[52] *Id.* at 8 (¶ 24).

25   [53] *Id.* (¶ 25).

26   [54] *Id.* at 11 (¶ 31).

27   [55] *Id.* at 9 (¶ 26).

     [56] *Id.* at 9–10 (¶¶ 27–28).

28   [57] *Id.* at 11 (¶ 33).

United States District Court
Northern District of California

null and void except for (i) any obligations to pay for any expense incurred in connection with Notice and administration as set forth in the Settlement Agreement, and (ii) any other obligations or provisions that are expressly designated in the Settlement Agreement to survive the termination of the Settlement Agreement.[58]

Other than such proceedings as may be necessary to carry out the terms and conditions of the Settlement Agreement, all proceedings in the Action are hereby stayed and suspended until further order of the court.[59]

Pending determination of whether the Settlement Agreement should be finally approved, Plaintiffs and all Settlement Class Members are barred and enjoined from filing, commencing, prosecuting, or enforcing any action against the Released Parties insofar as such action asserts Released Claims, directly or indirectly, in any forum.[60]

This Preliminary Approval Order, the Settlement Agreement, and all negotiations, statements, agreements, and proceedings relating to the Settlement, or any matters arising in connection with settlement negotiations, proceedings, or agreements, must not constitute, be described as, construed as, offered or received against AT&T or the other Released Parties as evidence or an admission of: (a) the truth of any fact alleged by Plaintiffs in the Action; (b) that any person suffered compensable harm or is entitled to any relief with respect to the matters asserted in this Action; (c) any liability, negligence, fault, or wrongdoing by AT&T or the Released Parties, including any of its affiliates, agents, representatives, vendors, or any other person or entity acting on its behalf; (d) that this Action or any other action was or may be properly certified as a class action for litigation, non-settlement purposes; (e) the arbitrability of the Action as to Plaintiffs and Settlement Class Members; or (f) the enforceability of any applicable contractual or statutory limitations period to limit any relief.[61]

---

[58] *Id.* at 12 (¶ 35).

[59] *Id.* (¶ 36).

[60] *Id.* (¶ 37).

[61] *Id.* at 12–13 (¶ 38).

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

The court retains jurisdiction over this Action to consider all further matters arising out of or connected with the Settlement, including enforcement of the Release provided for in the Settlement Agreement.[62]

Without further order of the court, the Parties may agree to make non-material modifications in implementing the Settlement that are not inconsistent with this Preliminary Approval Order.[63]

## CONCLUSION

The court (1) preliminarily approves the settlement and authorizes the notices as set forth in this order, (2) approves the notice plan, (3) provisionally appoints the class representatives and class counsel, (4) appoints Angeion Group as the settlement administrator, (5) orders the procedures in this order, and (6) orders the parties and Angeion to carry out their obligations pursuant to the Settlement Agreement. The schedule for all events is summarized in the chart in the amended proposed order.[64] The final fairness hearing is November 3, 2022, at 9:30 a.m.

This disposes of ECF No. 145.

**IT IS SO ORDERED.**

Dated: June 16, 2022

_____

LAUREL BEELER
United States Magistrate Judge

---

[62] *Id.* at 13 (¶ 39).

[63] *Id.* (¶ 41).

[64] *Id.* (¶ 42).

ORDER – No. 19-cv-03602-LB                                        16