1   Roger N. Heller (State Bar No. 215348)        Daniel E. Seltz (admitted pro hac vice)
    rheller@lchb.com                               dseltz@lchb.com
2   Michael W. Sobol (State Bar No. 194857)        Avery S. Halfon (admitted pro hac vice)
    msobol@lchb.com                                ahalfon@lchb.com
3   Jallé Dafa (State Bar No. 290637)              LIEFF CABRASER HEIMANN &
    jdafa@lchb.com                                 BERNSTEIN, LLP
4   LIEFF CABRASER HEIMANN &                       250 Hudson Street, 8th Floor
    BERNSTEIN, LLP                                 New York, NY 10013-1413
5   275 Battery Street, 29th Floor                 Telephone: 212.355.9500
    San Francisco, CA 94111-3339                   Facsimile: 212.355.9592
6   Telephone: 415.956.1000
    Facsimile: 415.956.1008
7
    Daniel M. Hattis (State Bar No. 232141)
8   dan@hattislaw.com
    Paul Karl Lukacs (State Bar No. 197007)
9   pkl@hattislaw.com
    HATTIS & LUKACS
10  400 108th Ave NE, Ste. 500
    Bellevue, WA 98004
11  Telephone: (425) 233-8650
    Facsimile: (425) 412-7171
12
    *Settlement Class Counsel*

13

UNITED STATES DISTRICT COURT

14

NORTHERN DISTRICT OF CALIFORNIA

15

SAN FRANCISCO DIVISION

16

17

18  IAN VIANU, ELIZABETH BLUM, and          Case No. 3:19-cv-03602-LB
    DOMINIC GUTIERREZ, on behalf of
19  themselves and all others similarly situated,   **PLAINTIFFS' NOTICE OF MOTION
                                                    AND MOTION FOR FINAL APPROVAL
20              Plaintiffs,                         OF CLASS SETTLEMENT**

21  v.                                              Date:   November 3, 2022
                                                    Time:   9:30 a.m.
22  AT&T MOBILITY LLC,                              Judge:  Hon. Laurel Beeler

23              Defendant.

24

25

26

27

28

1    TO THE ABOVE-NAMED COURT AND TO THE PARTIES AND TO THEIR

2    ATTORNEYS OF RECORD:

3    PLEASE TAKE NOTICE that on November 3, 2022, at 9:30 a.m. at 450 Golden Gate

4    Avenue, Courtroom B, 15th Floor, San Francisco, CA, 94102, Plaintiffs Ian Vianu, Elizabeth

5    Blum, and Dominic Gutierrez (collectively, "Plaintiffs") will and hereby do move the Court for

6    an order pursuant to Fed. R. Civ. P. 23(e) granting Plaintiffs' Motion for Final Approval of Class

7    Settlement.

8    This motion is based on: this notice of motion and motion; the accompanying memorandum

9    of points and authorities; the Settlement[1] including all exhibits thereto; the declarations of Plaintiffs

10   Ian Vianu, Elizabeth Blum, and Dominic Gutierrez filed herewith; the declarations of Settlement

11   Class Counsel Roger N. Heller and Daniel M. Hattis filed herewith; the declaration of Steven Platt

12   of Settlement Administrator Angeion Group filed herewith; the materials filed in support of

13   Plaintiffs' motion for preliminary settlement approval (Dkt. 145); the Court's Preliminary Approval

14   Order dated June 16, 2022 (Dkt. 149, 149-1); the argument of counsel; all papers and records on file

15   in this matter; and such other matters as the Court may consider.

16   As discussed in the accompanying memorandum, the requested relief is appropriate because

17   the Settlement satisfies the standards for final approval under Fed. R. Civ. P. 23 and Ninth Circuit

18   precedent.

19   Dated: August 15, 2022                 Respectfully submitted,

20                                          LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

21                                          By: */s/ Roger N. Heller*

22                                              Roger N. Heller (SBN 215348)
                                                rheller@lchb.com
23                                              Michael W. Sobol (SBN 194857)
                                                msobol@lchb.com
24                                              Jallé H. Dafa (SBN 290637)
                                                jdafa@lchb.com
25                                              275 Battery Street, 29th Floor
                                                San Francisco, CA 94111-3339
26                                              Telephone: 415.956.1000
                                                Facsimile: 415.956.1008

27                                              Daniel E. Seltz (admitted pro hac vice)
                                                dseltz@lchb.com
28

---

[1] The Settlement is on file at Dkt. 145-1, Ex. 1.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Avery S. Halfon (admitted pro hac vice)
ahalfon@lchb.com
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY  10013-1413
Telephone:  212.355.9500
Facsimile:  212.355.9592

Daniel M. Hattis (SBN 232141)
dan@hattislaw.com
Paul Karl Lukacs (SBN 197007)
pkl@hattislaw.com
HATTIS & LUKACS
400 108th Ave NE, Ste. 500
Bellevue, WA 98004
Telephone: (425) 233-8650
Facsimile:  (425) 412-7171

*Settlement Class Counsel*

- 3 -

Roger N. Heller (State Bar No. 215348)
rheller@lchb.com
Michael W. Sobol (State Bar No. 194857)
msobol@lchb.com
Jallé Dafa (State Bar No. 290637)
jdafa@lchb.com
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  415.956.1000
Facsimile:  415.956.1008

Daniel M. Hattis (State Bar No. 232141)
dan@hattislaw.com
Paul Karl Lukacs (State Bar No. 197007)
pkl@hattislaw.com
HATTIS & LUKACS
400 108th Ave NE, Ste. 500
Bellevue, WA 98004
Telephone: (425) 233-8650
Facsimile:  (425) 412-7171

*Settlement Class Counsel*

Daniel E. Seltz (admitted pro hac vice)
dseltz@lchb.com
Avery S. Halfon (admitted pro hac vice)
ahalfon@lchb.com
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY  10013-1413
Telephone:  212.355.9500
Facsimile:  212.355.9592

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IAN VIANU, ELIZABETH BLUM, and DOMINIC GUTIERREZ, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AT&T MOBILITY LLC,<br><br>Defendant. | Case No. 3:19-cv-03602-LB<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**<br><br>Date:    November 3, 2022<br>Time:   9:30 a.m.<br>Judge:  Hon. Laurel Beeler |

# TABLE OF CONTENTS

| | | Page |
|---|---|---|
| INTRODUCTION | | 1 |
| BACKGROUND | | 2 |
| I. | Procedural History | 2 |
| II. | Settlement Class Counsel's Investigation and Discovery | 4 |
| III. | Settlement Negotiations | 5 |
| IV. | Preliminary Settlement Approval | 5 |
| SUMMARY OF THE SETTLEMENT TERMS | | 5 |
| I. | The Settlement Class | 5 |
| II. | The $14 Million Non-Reversionary Common Settlement Fund | 6 |
| | A. Payments to Settlement Class Members | 6 |
| | B. Administrative Costs | 7 |
| | C. Attorneys' Fees, Expenses, and Service Awards | 7 |
| III. | Release | 8 |
| IV. | The Notice Program Directed by the Court Is Being Implemented and Satisfies All Applicable Standards. | 8 |
| | A. Direct Notice to Settlement Class Members. | 8 |
| | B. Social Media Notice Campaign | 9 |
| | C. Settlement Website and Toll-Free Number. | 10 |
| | D. CLRA Notice | 10 |
| | E. CAFA Notice | 10 |
| V. | The Response from the Settlement Class to the Settlement Has Been Very Positive. | 10 |
| ARGUMENT | | 11 |
| I. | Overview of the Class Settlement Approval Process. | 11 |
| II. | Rule 23(e)(2) and the Ninth Circuit Factors. | 11 |
| III. | The Settlement Is Fair, Reasonable, and Adequate and Should Be Approved. | 12 |
| | A. The Settlement Represents a Strong Result for the Settlement Class, Particularly Given the Risks and Likely Duration of Ongoing Litigation (Fed. R. Civ. P. 23(e)(2)(C); Ninth Circuit factors 1, 2, 3, and 4). | 12 |
| | B. The Settlement is the Product of Good Faith, Informed, Arm's-Length Negotiations Informed by Significant Investigation, Discovery, and Motion Practice (Fed. R. Civ. P. 23(e)(2)(B); Ninth Circuit Factor 5). | 14 |
| | C. Plaintiffs and Settlement Class Counsel Have and Continue to Zealously Represent the Class, and Their Experience and Views Further Support Approval (Fed. R. Civ. P. 23(e)(2)(A); Ninth Circuit Factor 6). | 15 |

**TABLE OF CONTENTS**
(continued)

Page

D. The Settlement Treats Class Members Equitably (Fed. R. Civ. P. 23(e)(2)(D). ............................................................................. 16

E. The Proposed Method of Distributing Relief Is Effective (Fed. R. Civ. P. 23(e)(2)(C)(ii)). ...................................................... 16

F. The Presence of a Governmental Participant (Ninth Circuit Factor 7). ........................................................................................ 16

G. The Reaction of the Class to the Settlement to Date Has Been Very Positive (Ninth Circuit Factor 8)................................................ 16

H. Settlement Class Counsel Seek Reasonable Attorneys' Fees and Reimbursement of Their Litigation Expenses (Fed. R. Civ. P. 23(e)(2)(C)(iii)). .................................................................... 17

IV. The Court Should Reaffirm Certification of the Settlement Class. ..................... 17

A. The Requirements of Rule 23(a) Are Satisfied. ....................................... 17

1. Numerosity (Rule 23(a)(1))............................................... 17

2. Commonality (Rule 23(a)(2)) ........................................... 18

3. Typicality (Rule 23(a)(3))................................................. 18

4. Adequacy of Representation (Rule 23(a)(4))..................... 18

B. The Requirements of Rule 23(b)(3) Are Satisfied. ................................. 19

CONCLUSION ............................................................................................................. 20

# TABLE OF AUTHORITIES

**Page**

## CASES

*Amchem Products, Inc. v. Windsor*,
  521 U.S. 591 (1997) .................................................................................................................. 20

*Butler v. Sears, Roebuck & Co.*,
  702 F.3d 359 (7th Cir. 2012) .................................................................................................... 19

*Churchill Village, L.L.C. v. Gen. Elec.*,
  361 F.3d 566 (9th Cir. 2004) .............................................................................................. 12, 17

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992) .................................................................................................. 14

*Ellis v. Naval Air Rework Facility*,
  87 F.R.D. 15 (N.D. Cal. 1980) *aff'd*, 661 F.2d 939 (9th Cir. 1981) ......................................... 15

*Evon v. Law Offices of Sidney Mickell*,
  688 F.3d 1015 (9th Cir. 2012) .................................................................................................. 18

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) .................................................................................................. 12

*Hernandez v. Cty. of Monterey*,
  305 F.R.D. 132 (N.D. Cal. 2015) ............................................................................................. 18

*In re First All. Mortg. Co.*,
  471 F.3d 977 (9th Cir. 2006) .................................................................................................... 19

*In re Syncor ERISA Litig.*,
  516 F.3d 1095 (9th Cir. 2008) .................................................................................................. 12

*Jimenez v. Allstate Ins. Co.*,
  765 F.3d 1161 (9th Cir. 2014) .................................................................................................. 18

*Just Film, Inc. v. Buono*,
  847 F.3d 1108 (9th Cir. 2017) .................................................................................................. 20

*Parsons v. Ryan*,
  754 F.3d 657 (9th Cir. 2014) .................................................................................................... 18

*Tyson Foods, Inc. v. Bouaphakeo*,
  136 S. Ct. 1036 (2016) .............................................................................................................. 19

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) .................................................................................................................. 18

*Wolin v. Jaguar Land Rover N. Am., LLC*,
  617 F.3d 1168 (9th Cir. 2010) .................................................................................................. 20

*Wong v. Arlo Techs., Inc.*,
  No. 5:19-CV-00372-BLF, 2021 WL 1531171 (N.D. Cal. Apr. 19, 2021) ............................... 12

## STATUTES

28 U.S.C. § 1715 ................................................................................................................... 10, 16

28 U.S.C. § 636(c) ........................................................................................................................ 2

Cal. Code Civ. Proc. §§ 1501.5, 1531 .......................................................................................... 7

- iii -

**TABLE OF AUTHORITIES**
(continued)

Page

**RULES**

Fed. R. Civ. P. 12(b) ................................................................................ 3
Fed. R. Civ. P. 23(a) ........................................................................ 17, 18
Fed. R. Civ. P. 23(b) ................................................................... 17, 19, 20
Fed. R. Civ. P. 23(c) ................................................................................ 8
Fed. R. Civ. P. 23(e) ............................................ 2, 5, 8, 11, 12, 14, 15, 17
Fed. R. Civ. P. 23(h) ............................................................................. 17

**TREATISES**

5 *Moore's Federal Practice—Civil* § 23.22 (2016) ...................................... 18

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>INTRODUCTION</u>**

This Court previously granted preliminary approval of the Settlement reached by the parties in this action, and approved the notice program. *See* Dkt. 149, 149-1. Notice has been, and is being, disseminated to the Settlement Class as directed by the Court. By this motion, Plaintiffs respectfully request that the Court conduct a final review of the Settlement, and approve the Settlement as fair, reasonable, and adequate.

As previously reported, the Settlement here is the product of nearly three years of hard-fought litigation and arms-length negotiations between the parties through an experienced and well-respected mediator, Robert Meyer, Esq. of JAMS. It follows extensive formal discovery and years of hard-fought litigation, including a litigated motion to dismiss and several motions regarding AT&T's attempt to compel individual arbitration and to stay the case. In negotiating the Settlement, the parties and their counsel were well informed about the issues, the strengths and weaknesses of their respective positions, and the risks faced by each side of continued litigation.

The Settlement here resolves claims on behalf of a statewide California class. Pursuant to the terms of the Settlement,[2] Defendant AT&T Mobility LLC ("AT&T") will pay $14 million to create a non-reversionary common Settlement Fund, from which payments will be made to Settlement Class Members. All Settlement Class Members are eligible to submit simple claims for settlement payments. Payments to current customers will be via automatic account credit, and payments to former customers will be via mailed check.

The Settlement also provides for a robust class notice program (previously approved and ordered by the Court) that includes direct notice to all Settlement Class Members via a combination of email, mail, and text message (SMS); a tailored social media notice program; reminder emails and reminder SMS notice; the establishment of a dedicated Settlement Website where Settlement Class Members can obtain additional information and submit claims online; and an informational Toll-Free Number. The notice program has been, and is being, implemented by the Settlement Administrator in accordance with this Court's Preliminary Approval Order.

While it has only been a couple of weeks since the dissemination of notice commenced, the

---

[2] The Settlement is on file at Dkt. 145-1, Ex. 1.

- 1 -

1  reaction of the Settlement Class thus far has been very positive.  The deadline to opt out or object is

2  September 29, 2022.  As of August 15, 2022, only 2 Settlement Class Member have opted-out and

3  just 1 objection has been submitted.  By contrast, as of August 15, 2022, 224,215 claims have

4  already been submitted, with an ongoing social media campaign, a reminder SMS notice, and

5  potentially a second round of reminder email notice to be sent in advance of the October 29, 2022,

6  Claim Deadline.

7  For the foregoing reasons and the others detailed below, the Settlement meets the standards

8  for final settlement approval and should be approved.

9  **BACKGROUND**

**I.    Procedural History**

10

11  Plaintiffs filed this case on June 20, 2019, asserting claims on behalf of themselves and a

proposed class of California AT&T post-paid wireless customers who were charged an

12  Administrative Fee ("Admin Fee") by AT&T.  Plaintiffs alleged, generally, that AT&T's

13  representations and advertisements regarding the monthly price of its post-paid wireless service

14  plans were misleading because the prices did not include the Admin Fee, and that AT&T

15  implemented and charged the Admin Fee in a deceptive and unfair manner.  Dkt. 1.  The parties

16  consented to have this Court conduct all proceedings in this action pursuant to 28 U.S.C. § 636(c).

17  Dkts. 7, 19.

18  On August 16, 2019, AT&T filed a motion compel individual arbitration of Plaintiffs'

19  claims and to stay this action.  Dkt. 20.  Plaintiffs opposed that motion on September 12, 2019, and

20  AT&T filed its reply on October 3, 2019.  Dkts. 30, 31.  The Court held a hearing on AT&T's

21  arbitration motion on October 31, 2019, after which the Court entered a tentative order denying

22  AT&T's motion based on application of California's *McGill* Rule and the non-severability clause in

23  AT&T's arbitration provision.  Dkt. 42.  The ruling was tentative pending the disposition of then-

24  pending *en banc* petitions in the *Tillage v. Comcast* and *McArdle v. AT&T* cases, in which the

25  defendants-appellants were asking the Ninth Circuit to hold that the *McGill* Rule was preempted by

26  the Federal Arbitration Act.  *Id.*

27  On March 2, 2020, after the *en banc* petitions in *Tillage/McArdle* were denied, the Court

28

- 2 -

1    entered an order denying AT&T's arbitration motion.  Dkt. 56.  AT&T filed a notice of appeal of

2    the Court's order denying arbitration on March 13, 2020.  Dkt. 59.  On March 2, 2020, AT&T filed

3    a motion to stay this case pending AT&T's appeal to the Ninth Circuit in this case and pending

4    anticipated petitions for *certiorari* review in *Tillage/McArdle*.  Dkt. 57.  Plaintiffs opposed AT&T's

5    motion to stay on March 11, 2020, and AT&T filed a reply on March 23, 2020.  Dkts. 58, 66.

6         On March 23, 2020, AT&T filed a motion to dismiss this case pursuant to Fed. R. Civ. P.

7    12(b)(1) and 12(b)(6).  Dkt. 67.

8         On April 9, 2020, following a hearing, the Court denied AT&T's motion to stay pending

9    appeal and tabled AT&T's request for a stay based on the *certiorari* petitions in *Tillage/McArdle* in

10   light of AT&T's pending motion to dismiss and the anticipated timing of a decision on the

11   *certiorari* petitions in *Tillage/McArdle*.  Dkts. 72, 73.

12        Plaintiffs filed their opposition to AT&T's motion to dismiss on April 20, 2020, and AT&T

13   filed a reply on May 11, 2020.  Dkts. 77, 79.  The Court held a hearing on AT&T's motion to

14   dismiss on May 28, 2020.  Dkt. 81.   On June 11, 2020, the Court entered an Order denying in part

15   and granting in part AT&T's motion.  Specifically, the Court denied AT&T's motion except that

16   the Court held that the discovery rule did not apply and that AT&T's conduct was not a continuing

17   violation.  Dkt. 88.

18        In the meantime, on June 1, 2020, the United States Supreme Court denied the *certiorari*

19   petitions in *Tillage/McArdle*.  Dkt. 84.  On June 25, 2020, AT&T filed its Answer to the Complaint.

20   Dkt. 89.  On August 17, 2020, AT&T voluntarily dismissed its appeal of this Court's order denying

21   arbitration.  Dkt. 99.

22        On August 31, 2020, the Court entered a stipulated order incorporating a request for

23   damages under the Consumers Legal Remedies Act into the existing Complaint and incorporating a

24   denial of same into AT&T's existing Answer.  Dkt. 101.  On September 21, 2021, the Court entered

25   a stipulated order substituting in new Plaintiffs Elizabeth Blum and Dominic Gutierrez for one of

26   the original plaintiffs, Irina Bukchin, and permitting Plaintiffs to file an amended complaint.  Dkt.

27   117.  On September 21, 2021, Plaintiffs filed their operative First Amended Complaint.  Dkt. 118

28   ("FAC").  On October 21, 2021, AT&T filed its Answer to the FAC.  Dkt. 124.

On February 7, 2022, following the United States Supreme Court's grant of *certiorari* in *Viking River Cruises, Inc. v. Moriana*, No. 20-1573 (U.S. cert. granted, Dec. 15, 2021) (involving California's *Iskanian* Rule), AT&T filed a motion to stay this case pending the outcome in *Viking River* and also filed a motion/renewed motion to compel individual arbitration of Plaintiffs' claims. Dkts. 137, 138.

On March 4, 2022, approximately three weeks before Plaintiffs were scheduled to file their motion for class certification, the parties filed a joint notice of settlement. Dkts. 133, 140.

## II.    Settlement Class Counsel's Investigation and Discovery

The Settlement in this case was negotiated by counsel who were well-informed about the issues and litigation risks as a result of their substantial investigation and discovery efforts. Prior to filing suit, and continuing through the course of the litigation, Settlement Class Counsel conducted an extensive investigation into the factual and legal issues raised in this litigation. These investigative efforts have included, *inter alia*, thoroughly investigating and analyzing AT&T's advertising, customer disclosures, and purchase/sign-up processes; analyzing the practices of AT&T's competitors; speaking with numerous AT&T wireless customers about their experiences; and investigating customer complaints and other pertinent public information. Settlement Class Counsel also extensively researched and analyzed the legal issues regarding the claims pled and AT&T's defenses and potential defenses. Declaration of Roger N. Heller, filed herewith ("Heller Decl."), ¶ 24.

Moreover, Settlement Class Counsel conducted extensive formal discovery in this case, including reviewing more than 60,000 pages of internal documents, marketing, and other materials produced by AT&T; deposing five pertinent AT&T executives/employees, including multiple Rule 30(b)(6) corporate designees; reviewing and analyzing customer data for a sample of class member accounts; reviewing and analyzing aggregate class-wide fee and other data; conducting third-party discovery of two accounting firms that assisted AT&T in connection with the Admin Fee; propounding and analyzing responses to substantial written discovery; and working with Plaintiffs to prepare responses to written discovery served by AT&T on Plaintiffs. *Id.* ¶ 27.

The parties were also informed by this Court's ruling on AT&T's motion to dismiss and by

PLAINTIFFS' MEM. IN SUPPORT OF MOT.
FOR FINAL APPROVAL OF CLASS SETTLEMENT
CASE NO. 3:19-CV-03602-LB

1    the proceedings and rulings on AT&T's various arbitration and stay motions.  *See id.* ¶¶ 25-26.

2    **III.    Settlement Negotiations**

3          The Settlement here is the product of hard-fought, arms-length negotiations.  The parties

4    and their counsel participated in an initial, full-day mediation with mediator Eric Green of

5    Resolutions LLC on November 10, 2020.  That first session did not result in a settlement.  On

6    February 17, 2022, the Parties and their counsel engaged in a second, full-day mediation with

7    Robert Meyer, Esq. of JAMS, at which, after extensive arms-length negotiations, the Parties

8    reached an agreement in principle to resolve this case. The parties did not discuss the issue of

9    Settlement Class Counsel's fees and expenses as part of the negotiations (other than that any

10    amount awarded would be paid from the common settlement fund).  After reaching an agreement in

11    principle, the parties worked diligently to draft the written settlement agreement, notices, and other

12    settlement exhibits, and to select the Settlement Administrator through a competitive bidding

13    process.  *Id.* ¶¶ 29-30; Dkt. 145-1 (Heller PA Decl.), ¶ 19.

14    **IV.    Preliminary Settlement Approval**

15          On May 10, 2022, Plaintiffs filed their Motion for Preliminary Approval of the Settlement,

16    and to Direct Notice under Rule 23(E).  Dkt. 145.  On June 16, 2022, the Court entered an Order

17    granting preliminary approval of the Settlement, certifying the Settlement Class for settlement

18    purposes, and directing that, under Fed. R. Civ. P. 23(e)(1), class notice be disseminated pursuant to

19    the parties' proposed notice program.  Dkt. 149, 149-1.

20    **SUMMARY OF THE SETTLEMENT TERMS**

21          The full Settlement terms are set forth in the Settlement Agreement, which is filed at Dkt.

22    145-1, Ex. 1.  The following is a summary of the Settlement terms.

23    **I.    The Settlement Class**

24          The Settlement Class, as certified by the Court, is defined as:

> All consumers residing in California (based on the accountholder's
> last known billing address) with a post-paid wireless service plan
> from AT&T Mobility LLC through a Consumer or Individual
> Responsibility User (IRU) account and who were charged an
> Administrative Fee on such account between June 20, 2015 and the
> date of preliminary settlement approval [June 16, 2022].
>
> Excluded from the Settlement Class are any Judge presiding over
> this Action and any members of their families; AT&T and affiliated

- 5 -

1

2            entities and individuals and their respective officers and directors;
and any otherwise covered consumers, other than Plaintiffs, who

3            assert claims and seek relief in connection with the Administrative
Fee and who have provided AT&T with an unresolved written

4            Notice of Dispute (pursuant to AT&T's contractual dispute
resolution procedures) before the Execution Date [May 10, 2022].

5   Settlement, § II.A.29; Dkt. 149-1, ¶ 5.[3]  According to AT&T's records, there are approximately

6   5,647,781 accounts in the Settlement Class.  Ex. A, Declaration of Steven Platt, filed herewith

7   ("Platt Decl."), ¶ 6.[4]

8   **II.**      **The $14 Million Non-Reversionary Common Settlement Fund**

9         Under the Settlement, AT&T will pay Fourteen Million Dollars ($14,000,000.00) to

10   establish a non-reversionary common Settlement Fund.  As detailed below, the Settlement Fund

11   will be used to pay:  the settlement payments to Settlement Class Members; the costs of notice and

12   other costs of the Settlement Administrator; and any attorneys' fees and expenses for Settlement

13   Class Counsel and any Plaintiffs' service awards granted by the Court.  (Settlement § IV)

14       **A.**      **Payments to Settlement Class Members**

15         The entirety of the Net Distributable Funds—*i.e.*, the $14 million Settlement Fund, less:

16   Administrative Costs, Court-awarded attorneys' fees and expenses for Settlement Class Counsel,

17   and any Plaintiffs' service awards—will be distributed to the Settlement Class.  All Settlement

18   Class Accounts will be eligible to submit a simple claim (electronically via the Settlement Website

19   or by mail) to receive a settlement payment, without the need to submit any substantiating

20   documents.  (Settlement § IV.C.2; Settlement Ex. G) All Settlement Class Accounts that submit a

21   valid claim by the October 29, 2022 Claim Deadline (90 days after the Notice Date) will receive an

22   equal share of the Net Distributable Funds.  (Settlement § IV.C)  Based on the estimated

23   Administrative Costs, and assuming the Court awarded attorneys' fees equal to 25% of the common

24   fund, Plaintiffs estimate the settlement payment amounts will be approximately $15.00-$29.00.

25         Payments to Settlement Class Members who are current AT&T customers will be via

26   [3] IRU, or "individually responsibility users," are consumers who receive AT&T post-paid wireless
services pursuant to a group (e.g., employer) plan but who are responsible for paying the monthly

27   bill themselves. By contrast, CRU, or "corporate responsibility users," are persons who receive such
services through a group plan but their employer is responsible for paying the monthly bill.  CRU

28   accounts are not included in the Settlement Class.
[4] That is approximately 4.1% higher than the 5,425,000 previously estimated.  Settlement, p.11, n.1.

1  automatic credit to their AT&T accounts.  Payments to Settlement Class Members who are former

2  AT&T customers will be via mailed check, with appropriate steps taken to locate updated address

3  information and re-issue checks that are returned undeliverable.  (Settlement § IV.C.4)

4      Any residual funds remaining one year after checks are initially mailed—consisting of

5  uncashed or undeliverable checks—will be treated as unclaimed property of the corresponding

6  customers, subject to applicable California unclaimed property procedures.  (Settlement § IV.C.5)[5]

7  In no event will any funds revert to AT&T.

8      **B.    Administrative Costs**

9      The fees and costs of the Settlement Administrator—in implementing the notice program,

10  administering the claims process, mailing checks, and performing the other administrative tasks

11  described in the Settlement—will be paid from the Settlement Fund.  (Settlement §§ II.A.2, IV.A,

12  V)  The Settlement Administrator currently estimates that the Administrative Costs in this case will

13  be approximately $842,057.  Platt Decl., ¶ 31.

14      **C.    Attorneys' Fees, Expenses, and Service Awards**

15      Settlement Class Counsel, in a separate contemporaneously filed petition, are requesting that

16  the Court award attorneys' fees of $3.5 million (*i.e.*, 25% of the Settlement Fund), plus

17  reimbursement of $74,993.24 in litigation expenses.  Settlement Class Counsel are also asking the

18  Court to grant services awards of $3,500 for each Plaintiff, to compensate them for their efforts and

19  commitment on behalf of the Settlement Class.  Settlement Class Counsel's fee application will be

20  available on the Settlement Website after it is filed.  Any attorneys' fees, expenses, and service

21  awards granted by the Court will be paid from the Settlement Fund.  (Settlement § XI)

22

23  [5] Any additional administrative costs associated with this residual process will be paid from the
residual funds, and will reduce *pro rata* the respective unclaimed property amounts for the

24  Settlement Class Members with uncashed or undeliverable checks.  (Settlement § IV.C.5)  The
unclaimed property process and timing vary by state.  In California, where most Settlement Class

25  Members are expected to reside, following a "dormancy period," during which the funds would be
claimable from the Settlement Administrator, and after a "due diligence" notice is sent to the

26  individuals in question, the funds that remain unclaimed, along with the corresponding names,
payment amounts, and last known addresses, would be sent to the California State Controller's

27  Office for deposit in the State's general fund.  At that point, the Settlement Class Members in
question will still be able to claim the funds by following the state unclaimed property procedure;

28  in California, there is no time limit for submitting such claims (*i.e.*, the funds would be available to
claim in perpetuity).  *See* Cal. Code Civ. Proc. §§ 1501.5, 1531; https://ucpi.sco.ca.gov/.

**III.    Release**

In exchange for the consideration provided under the Settlement, Settlement Class Members will release AT&T and its affiliates from any claims about the issues in this case.  The scope of the release substantively tracks the scope of the operative FAC.[6]  (Settlement § IX)

**IV.    The Notice Program Directed by the Court Is Being Implemented and Satisfies All Applicable Standards.**

The notice program set forth in Section VI of the Settlement and approved by the Court in the Preliminary Approval Order (Dkt. 149 at 11-12; Dkt. 149-1, ¶¶ 11-25) has been, and is being, implemented.  *See generally* Platt Decl.  The Court-approved Notice program satisfies all applicable standards, including Fed. R. Civ. P. 23(e)(1) and 23(c)(2)(B), and includes the following:

**A.    Direct Notice to Settlement Class Members.**

Notice was timely sent directly to the entire Settlement Class.  Pursuant to the Court-approved Notice program, AT&T provided the Settlement Administrator with the Settlement Class Member contact information and other Customer Data.  Platt Decl., ¶ 5.  By July 31, 2022 (the "Notice Date" set by the Court; Dkt. 149-1, ¶ 42), the Settlement Administrator sent notice to the Settlement Class Members through a combination of email and first-class mail, and AT&T sent notice via SMS (text message).  Platt Decl., ¶¶ 11-19; Dkt. 149-1, ¶¶ 14-16.

*Email Notice:* On July 29, 2022, the Settlement Administrator emailed the Email Notice to every Settlement Class account for which an email address was included in the Customer Data.  Platt Decl., ¶ 14; Dkt. 149-1, ¶ 14.[7]

*SMS Notice:*  On July 29, 2022, AT&T sent, via text message, the SMS Notice to the AT&T cellular telephone number(s) for each Settlement Class account for which AT&T's Customer Data identified that both: (1) the account is a current AT&T account and (2) no accountholders for the

---

[6] *See* Settlement § IX.B (claims "arising from or relating to the allegations in the Complaint or First Amended Complaint in this Action"); Dkt. 118 (FAC).

[7] The Settlement Website experienced a temporary outage for approximately 165 minutes on the day the notices were sent.  The outage occurred when a firewall at the website host (Amazon Web Services) detected suspicious traffic and the vendor's security protocols temporarily blocked all incoming traffic.  The Settlement Administrator paused the email notice campaign when the outage was reported, and then resumed and completed the email notice campaign later the same day, after access to the website was promptly restored.  Approximately 2.6 million email notices were sent before the pause/resumption.  Though the outage was temporary, out of an abundance of caution, the next day (July 30, 2022), the Settlement Administrator re-sent email notices to the email notice recipients whose initial emails were sent before the pause/resumption.  The re-sent emails included an explanation about the outage and that website access had been restored.  Platt Decl., ¶ 15.

1   account had opted out of receiving such messages.  Platt Decl., ¶ 16; Dkt. 149-1, ¶ 15.  Both email

2   and SMS notices were sent to Settlement Class Members meeting the criteria for both.

3       *Mail Notice:*  On July 29, 2022, the Settlement Administrator sent, via first class U.S. mail,

4   postage pre-paid, the Postcard Notice to all Settlement Class accounts not eligible to receive email

5   notice and/or SMS notice.  Platt Decl., ¶ 12; Dkt. 149-1, ¶ 16.   Postcard notices will also be mailed

6   to Settlement Class accounts where either (1) AT&T attempted but was not successful in sending

7   SMS Notice, or (2) the Settlement Administrator sent Email Notice but received notice that the

8   Email Notice was not received (i.e., a "bounce-back").  Platt Decl., ¶ 18; Dkt. 149-1, ¶ 17.  The

9   Settlement Administrator will promptly re-mail any postcard notices returned undeliverable with

10  forwarding address information to the new address.  For postcard notices returned undeliverable

11  without forwarding address information, the Settlement Administrator will attempt an industry-

12  standard "skip trace" to identify updated address information and if successful will re-mail postcard

13  notices to the new address.  Platt Decl., ¶ 13; Dkt. 149-1, ¶ 18.

14      *Reminder Email Notice*:   On August 14, 2022, the Settlement Administrator sent a

15  Reminder Email Notice to each Settlement Class account that was sent the Email Notice.  Platt

16  Decl., ¶ 19.  Depending on the volume of Claim Form submissions and in consultation with the

17  parties, prior to the Claim Deadline, the Settlement Administrator may also send a second reminder

18  email notice to Settlement Class accounts that were sent the Reminder Email Notice or to a portion

19  of them that have not yet submitted a Claim Form.  Dkt. 149-1, ¶ 22.

20      *Reminder SMS Notice*:  Between 21 days and 14 days before the October 29, 2022 Claim

21  Deadline, AT&T will send via SMS a Reminder SMS Notice to the AT&T cellular telephone

22  number(s) for each Settlement Class account for which the SMS notice was previously sent

23  successfully and for which a Claim Form has not yet been submitted for the account.  Dkt. 149-1, ¶

24  23.

25      **B.      Social Media Notice Campaign**

26      The Settlement Administrator timely initiated, and will continue to implement, a targeted

27  social media notice campaign to provide additional notice to Settlement Class Members.  The social

28  media notice campaign includes: (a) a custom Facebook/Instagram campaign whereby additional

1   notice will provided directly via Facebook/Instagram to Settlement Class Members with identifiable

2   Facebook/Instagram accounts; and (b) a supplemental interest-based Facebook and Instagram

3   campaign designed to target Settlement Class Members.  Platt Decl., ¶¶ 20-22.; Dkt. 145-6

4   (Weisbrot PA Decl.), ¶¶ 23-30; Dkt. 149-1, ¶ 19; Settlement § VI.8.

5           **C.      Settlement Website and Toll-Free Number**

6           Before sending the Notices, the Settlement Administrator established the Settlement

7   Website (www.ATTVianuClassActionSettlement.com), where Settlement Class Members can view

8   the Settlement, a long-form Website Notice, and other key case documents, and obtain further

9   information about the Settlement and their rights.  Settlement Class Members can also submit

10  claims electronically via the Settlement Website.  The Settlement Website is optimized for display

11  on mobile phones.  The Settlement Administrator also timely established a Toll-Free Number

12  where Settlement Class Members will be able to obtain additional information and request that a

13  hard copy claim form be mailed to them.  The Settlement Website and Toll-Free number will be

14  operational until at least one year after settlement payment checks are mailed.  Platt Decl., ¶¶ 24-27;

15  Dkt. 149-1, ¶¶ 20-21.

16          **D.      CLRA Notice**

17          In light of provisions of the California Consumers Legal Remedies Act ("CLRA"), the

18  Settlement Administrator caused notice to be printed in the California regional edition of the USA

     Today for four consecutive weeks beginning August 1, 2022. Platt Decl., ¶ 23.

19          **E.      CAFA Notice**

20          The Settlement Administrator timely served notice of the Settlement, in accordance with

21  28 U.S.C. § 1715, upon the appropriate State and Federal officials.  Platt Decl., ¶ 9.

22  **V.      The Response from the Settlement Class to the Settlement Has Been Very Positive.**

23          The response from the Settlement Class thus far has been very positive.  The deadline to opt

24  out or object is September 29, 2022.  As of August 15, 2022, only 2 Settlement Class Member have

25  opted-out and just 1 objection has been submitted.  Platt Decl., ¶¶ 29-30.  By contrast, as of August

26  15, 2022, 224,215 claims have already been filed, *id.* ¶ 28—only about two weeks after the notices

27  were first sent and more than two months before the October 29, 2022 Claim Deadline, with

28  reminder SMS notices and potentially a second reminder email notice still to be sent in advance of

that deadline as well as an ongoing social media notice campaign. Plaintiffs will provide the Court

with updated opt-out, objections, and claims figures in advance of the November 3, 2022 Fairness

Hearing. Plaintiffs will also respond to any objections at that time.

<u>**ARGUMENT**</u>

**I.    Overview of the Class Settlement Approval Process.**

Pursuant to Rule 23(e), a class action settlement must be approved by the court before it can

become effective. The process for court approval is comprised of two principal steps:

> (1)    Preliminary approval of the proposed settlement and direction of
> notice to the class; and

> (2)    A final approval hearing, at which argument concerning the
> fairness, adequacy, and reasonableness of the settlement is
> presented.

In granting preliminary approval of the Settlement and directing that notice be disseminated

to the Settlement Class, the Court took the first step in the process. Dkt. 149, 149-1. Moreover, as

summarized above, the Settlement Administrator has been, and is, implementing the notice program

as directed by the Court. *See generally* Platt Decl. By this motion, Plaintiffs respectfully request

that the Court take the final step by granting final approval of the Settlement.

**II.    Rule 23(e)(2) and the Ninth Circuit Factors.**

The overarching standard for class settlement approval is whether the proposed

settlemement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). As part of that

determination, Rule 23(e)(2) directs courts to consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i)   the costs, risks, and delay of trial and appeal;
>> (ii)  the effectiveness of any proposed method of distributing relief to the class,
>>       including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment;
>>       and
>> (iv)  any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

*Id.* "In the Ninth Circuit, courts traditionally [also] use a multi-factor balancing test to analyze

whether a given settlement is fair, adequate and reasonable. That test includes the following factors:

the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration

1
2
3

of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

4

*Wong v. Arlo Techs., Inc.*, No. 5:19-CV-00372-BLF, 2021 WL 1531171, at *5 (N.D. Cal. Apr. 19,

5

2021) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).  The Rule 23(e)(2)

6

factors and the traditional Ninth Circuit factors overlap somewhat, and courts look to both when

7

deciding whether to approve class action settlements, while remaining ultimately focused on the

8

underlying question of whether the settlement is fair, reasonable, and adequate.

9

In evaluating settlement approval, the Court should consider the strong public policy

10

favoring "settlements, particularly where complex class action litigation is concerned." *In re*

11

*Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *accord Churchill Village, L.L.C. v. Gen.*

12

*Elec.*, 361 F.3d 566, 576 (9th Cir. 2004).  The Settlement here meets all standards for final

13

settlement approval.

14

**III.    The Settlement Is Fair, Reasonable, and Adequate and Should Be Approved.**

15
16

**A.    The Settlement Represents a Strong Result for the Settlement Class, Particularly Given the Risks and Likely Duration of Ongoing Litigation (Fed. R. Civ. P. 23(e)(2)(C); Ninth Circuit factors 1, 2, 3, and 4).**

17

The Settlement provides substantial monetary relief—a $14 million non-reversionary fund.

18

Based on estimated Administrative Costs, and assuming the Court awarded attorneys' fees equal to

19

25% of the common fund, Plaintiffs estimate that the settlement payments for claimants will be

20

approximately $15.00-$29.00.[8]  That amount represents a strong result given the potential recovery

21

and the substantial risks and delay of ongoing litigation in this case.

22

To put the estimated settlement payment amount in perspective, according to AT&T's

23

records, Settlement Class Accounts paid an average of approximately $2.65 total per month in

24

Admin Fee charges (across all lines on the account) during the class period.[9]  The estimated $15.00-

25

$29.00 payment amount thus represents a refund of approximately 6-11 months of the average fees.

26
27

[8] The payment amount will depend in part on the claims rate.  Claims rates can vary based on a number of factors.  Plaintiffs are assuming a claims rate of between 6% and 12% for purposes of estimating the payment amount here.

28

[9] The monthly per-line Admin Fee amount changed three times during the class period, reaching its current rate of $1.99 per line per month in mid-2018.  Some accounts have multiple lines on the account.

As an additional point of comparison, according to AT&T's records Settlement Class Accounts were charged on average a *total* of approximately $180.00 in Admin Fees during the entire class period. The estimated $15.00-$29.00 payment amount thus represents a refund of approximately 8.3%-16.1% of the average total fees paid during the class period.

To be sure, there are multiple ways to measure potential damages in this case, but the above calculations provide useful perspective on the value and adequacy of the payment amount and the Settlement in this case. The estimated payment amount represents a strong result for the Settlement Class, particularly given the substantial risks, costs, and delay of continued litigation. Liability remains very much disputed in this case. Among other arguments and defenses that AT&T has asserted and/or indicated it will assert are: (a) AT&T adequately discloses the Admin Fee and true cost of the service to customers and prospective customers; (b) Settlement Class Members were on notice of the Admin Fee at least after it appeared on their initial bills and on each of their subsequent monthly bills; (c) the Admin Fee is appropriate in amount, accurately explained, and supported by AT&T's costs; and (d) AT&T's form terms of service permitted charging and increasing the Admin Fee. AT&T also is expected to argue that, as a matter of equity, any restitution here, if any, would need to be limited to only the initial month(s) of Admin Fee charges for each account given the fee's disclosure on each monthly bill. AT&T also disputes whether this case can be manageably tried on a class basis. Further, while Plaintiffs have thus far been able to overcome AT&T's efforts to compel arbitration, AT&T has continued to pursue that path. Most recently, AT&T filed a renewed arbitration motion after the U.S. Supreme Court granted *certiorari* review in the *Viking River* case. Parties in this District and elsewhere are litigating the impact of the Supreme Court's *Viking River* opinion—issued after the Settlement here was reached—on the viability of the *McGill* rule. AT&T has made clear its intent to re-raise arbitration if *McGill* were ever invalidated.

While Plaintiffs believe that they could overcome AT&T's defenses and challenges, they are indicative of the risks, hurdles, and delays that Plaintiffs and the Settlement Class would continue to face if this matter proceeded in litigation. The Settlement provides considerable monetary relief for the Settlement Class while allowing them to avoid the risks of unfavorable, and

1    in some cases dispositive, rulings on these and other issues.  The Settlement also provides another

2    important benefit—prompt relief.  Continued litigation would likely add several more years before

3    there is a resolution, given the remaining issues and likelihood of additional appeals.

        **B.    The Settlement is the Product of Good Faith, Informed, Arm's-Length**
4              **Negotiations Informed by Significant Investigation, Discovery, and Motion**
               **Practice (Fed. R. Civ. P. 23(e)(2)(B); Ninth Circuit Factor 5).**
5

6        "Before approving a class action settlement, the district court must reach a reasoned

7    judgment that the proposed agreement is not the product of fraud or overreaching by, or collusion

8    among, the negotiating parties."  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1290 (9th Cir.

9    1992); *see also* Fed. R. Civ. P. 23(e)(2)(B).  The Settlement submitted for the Court's consideration

10   here is the product of hard-fought, arms-length negotiations between the parties and their qualified

11   and informed counsel.  The parties participated in two full-day mediations with experienced and

12   well-respected mediators, Eric Green of Resolutions LLC and Robert Meyer, Esq. of JAMS,

13   respectively, and were able to reach an agreement on deal terms through those efforts.  The parties

14   worked diligently for months after reaching the agreement-in-principle to draft the written

15   settlement agreement, prepare the forms of notice and other settlement exhibits, and select a

16   Settlement Administrator through a competitive bidding process.  Heller Decl., ¶ 30.  Throughout

17   their negotiations, the parties were represented by counsel experienced in the prosecution, defense,

18   and settlement of complex class actions.[10]

19       Moreover, as discussed above, the Settlement is informed by counsel's substantial

20   investigation and discovery regarding the legal and factual issues in the litigation, which included,

21   *inter alia*, conducting a pre-filing factual investigation; reviewing and analyzing more than 60,000

22   pages of internal documents, marketing, and other materials produced by AT&T, customer data for

23   a sample of accounts, and substantial aggregate class-wide data; deposing five AT&T

24   employees/executives involved in the Admin Fee, including multiple Rule 30(b)(6) corporate

25   designees; conducting third-party discovery of two accounting firms that assisted AT&T regarding

26   the Admin Fee; substantial written discovery; and ongoing communications with class members.

27   *See supra* Background § II.  Further, as the Court is aware, there was significant motion practice in

28   ──────────────────────────────
     [10] Heller Decl., ¶¶ 2-12; Declaration of Daniel M. Hattis, filed herewith ("Hattis Decl."), ¶¶ 2, 4-5,
     10-13.

1  this case, including a litigated motion to dismiss and several arbitration/stay-related motions.

2  Moreover, Plaintiffs were preparing their class certification motion, which was scheduled to be filed

3  on March 23, 2022, at the time the parties reached an agreement-in-principle.  In negotiating the

4  Settlement, the parties and their counsel were informed by their work in briefing these issues and,

5  of course, by the various court rulings.

6      **C.    Plaintiffs and Settlement Class Counsel Have and Continue to Zealously Represent the Class, and Their Experience and Views Further Support Approval (Fed. R. Civ. P. 23(e)(2)(A); Ninth Circuit Factor 6).**

7

8      Plaintiffs and Settlement Class Counsel have prosecuted this action on behalf of the

9  Settlement Class with vigor and dedication for three years.  *See* Fed. R. Civ. P. 23(e)(2)(A).  As

10  discussed above and in the attached declarations, Settlement Class Counsel have thoroughly

11  investigated and researched the factual and legal issues involved, conducted substantial discovery,

12  and engaged in extensive motions practice, and engaged and worked with experts, all in furtherance

13  of prosecuting the claims here.  *See supra* Background § II.  Likewise, Plaintiffs have personally

14  been actively engaged—they each provided pertinent information about their experiences and

15  AT&T accounts, searched for and provided documents and information in response to AT&T's

16  written discovery requests, and regularly communicated with their counsel up to and including

17  evaluating and approving the Settlement.[11]

18      Plaintiffs and Settlement Class Counsel view the Settlement as fair, reasonable, and

19  adequate.  Settlement Class Counsel here have extensive experience litigating and settling

20  consumer class actions and other complex matters, including cases involving alleged false

21  advertising, telecommunications services, and motions to compel arbitration.[12]  They have

22  conducted an extensive investigation into, and taken considerable discovery regarding, the factual

23  and legal issues raised.  The fact that qualified and well-informed counsel endorse the Settlement as

24  being fair, reasonable, and adequate weighs in favor of the Court approving the Settlement.  *Ellis v.*

25  *Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980) *aff'd*, 661 F.2d 939 (9th Cir. 1981)

26  ("[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought

---

27  [11] Declaration of Ian Vianu, filed herewith ("Vianu Decl."), ¶¶ 5-8, 12; Declaration of Elizabeth Blum, filed herewith ("Blum Decl."), ¶¶ 5-8, 12; Declaration of Dominic Gutierrez, filed herewith ("Gutierrez Decl."), ¶¶ 5-8, 12.

28  [12] Heller Decl., ¶¶ 2-12; Hattis Decl., ¶¶ 2, 4-5, 10-13.

negotiations is entitled to considerable weight.").

**D.      The Settlement Treats Class Members Equitably (Fed. R. Civ. P. 23(e)(2)(D).**

Under the Settlement, all Settlement Class Accounts are eligible to submit claims, and the settlement payment amounts will be equal for all claimants.  (Settlement § IV.C).  This allocation is fair, reasonable, and equitable.  As discussed above, the estimated settlement payment amount represents a refund of approximately 6-11 months of fees.  While Settlement Class Accounts incurred different amounts of total Admin Fees over the class period, all Settlement Class Accounts were subject to the same alleged deception and violation of their rights.  Moreover, AT&T has argued that Settlement Class Members should be deemed on notice of the Admin Fee after the initial month(s) of the charge appearing on their bills and that as a matter of equity their restitution, if any, should be capped accordingly.  While the parties disagree about this and other arguments, Plaintiffs and Settlement Class Counsel believe the Settlement's equal allocation of settlement funds is fair, reasonable, and equitable under the circumstances here.

Moreover, the claims process and claim form here are simple and user-friendly.  Claims can be submitted electronically via the Settlement Website, or by mail, and the direct notices include the URL and hyperlinks to the Settlement Website where online claims can be submitted, as well as unique Personal ID numbers, to facilitate submitting claims.

**E.      The Proposed Method of Distributing Relief Is Effective (Fed. R. Civ. P. 23(e)(2)(C)(ii)).**

The Settlement provides for an efficient and effective distribution of settlement payments.  Payments to current customers will be via automatic account credits to their AT&T accounts.  Payments to former customers will be via mailed checks, with appropriate steps taken to find updated address information and re-mail undeliverable checks as needed.  (Settlement § IV.C.4.e-g)

**F.      The Presence of a Governmental Participant (Ninth Circuit Factor 7).**

No governmental participant is a party to this case.  Notice was sent to the relevant governmental agencies pursuant to 28 U.S.C. § 1715.  Platt Decl., ¶ 9.  To date, no governmental entity has raised concerns about the Settlement.

**G.      The Reaction of the Class to the Settlement to Date Has Been Very Positive (Ninth Circuit Factor 8).**

Direct notice of the Settlement was sent to the entire Settlement Class.  The deadline for

1    Settlement Class Members to opt out or object is September 29, 2022.  As of August 15, 2022, only

2    2 Settlement Class Member have opted-out and just 1 objection has been submitted.  Platt Decl., ¶¶

3    29-30.  By contrast, as of August 15, 2022, 224,215 claims have already been filed (only about two

4    weeks after the notice program commenced), with an ongoing social media campaign, a reminder

5    SMS notice, and potentially a second round of reminder email notice to be sent in advance of the

6    October 29, 2022, Claim Deadline.  Platt Decl., ¶¶ 22, 28; Dkt. 149-1, ¶ 23.  The positive reaction

7    thus far further supports the conclusion that the Settlement is fair, reasonable, and adequate.  *See*

8    *Churchill Village*, 361 F.3d at 577 (upholding approval of class settlement with 45 objections and

9    500 opt-outs for a class of 90,000).  Plaintiffs will provide updated claims, opt-out, and objection

10    numbers in advance of the November 3, 2022 Fairness Hearing.  Plaintiffs will also respond to any

11    objections at that time.

**H.    Settlement Class Counsel Seek Reasonable Attorneys' Fees and Reimbursement of Their Litigation Expenses (Fed. R. Civ. P. 23(e)(2)(C)(iii)).**

12

13    Rule 23(e)(2)(C)(iii) requires the Court to consider "the terms of any proposed award of

14    attorney's fees, including timing of payment."  Here, Settlement Class Counsel are seeking

15    attorneys' fees and expenses in a concurrently filed motion.  That motion (and this motion) will be

16    available on the Settlement Website after filing, and Settlement Class Members will have the

17    opportunity to comment on or object under Fed. R. Civ. P. 23(h) prior to the Fairness Hearing.  As

18    with the payments to Settlement Class Members, any attorneys' fees and expenses awarded by the

19    Court will be paid from the Settlement Fund following the Effective Date of the Settlement.[13]

20    **IV.    The Court Should Reaffirm Certification of the Settlement Class.**

21    The Court previously provisionally certified the Settlement Class as part of the Preliminary

22    Approval Order.  Dkt. 149 at 6-8, Dkt. 149-1, ¶¶ 5-9.  The Court should reaffirm certification of the

23    Settlement Class, for settlement purposes, because the standards of Rule 23(a) and Rule 23(b)(3)

24    are satisfied.

**A.    The Requirements of Rule 23(a) Are Satisfied.**

25

**1.    Numerosity (Rule 23(a)(1))**

26

27    Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is

---

[13] Finally, there are no agreements between the parties other than the Settlement.  *See* Fed. R. Civ.
28    P. 23(e)(3) ("the parties seeking approval must file a statement identifying any agreement made in
connection with the proposal").

PLAINTIFFS' MEM. IN SUPPORT OF MOT.
FOR FINAL APPROVAL OF CLASS SETTLEMENT
CASE NO. 3:19-CV-03602-LB

impracticable." Fed. R. Civ. P. 23(a)(1). A "class of 41 or more is usually sufficiently numerous." 5 *Moore's Federal Practice—Civil* § 23.22 (2016); *see also Hernandez v. Cty. of Monterey*, 305 F.R.D. 132, 153 (N.D. Cal. 2015). Numerosity is easily satisfied here. According to AT&T's records, the Settlement Class, as defined, includes more than 5.6 million accounts.

**2.    Commonality (Rule 23(a)(2))**

Rule 23(a)(2) requires that there be one or more questions common to the class. Commonality "does not turn on the number of common questions, but on their relevance to the factual and legal issues at the core of the purported class' claims." *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014). "Even a single question of law or fact common to the members of the class will satisfy the commonality requirement." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 369 (2011). This case raises multiple common questions, including whether AT&T's alleged omissions were material, whether AT&T's characterization of the Admin Fee on the bills was accurate, and whether AT&T's charging of the Admin Fee was unfair.

**3.    Typicality (Rule 23(a)(3))**

Under Rule 23(a)(3), a plaintiff's claims are "typical" if they are "reasonably coextensive with those of absent class members; they need not be substantially identical." *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (citation omitted). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs and whether other class members have been injured by the same course of conduct." *Hernandez*, 305 F.R.D. at 159 (citation and internal quotations omitted). Plaintiffs' claims and those of the Settlement Class are based on the same course of conduct and the same legal theories. Moreover, Plaintiffs and the Settlement Class Members all suffered the same type of alleged harm—i.e., incurred Admin Fees.

**4.    Adequacy of Representation (Rule 23(a)(4))**

Rule 23(a)(4)'s adequacy inquiry asks "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012). Settlement Class Counsel have extensive experience litigating and

resolving class actions, and are well qualified to represent the Settlement Class.[14]  Since filing this case, Settlement Class Counsel have vigorously prosecuted this action on behalf of the Settlement Class, including, *inter alia*, substantial motions practice, conducting extensive investigation and discovery, engaging experts, participating in multiple mediations, and negotiating the Settlement. They have and will continue to fairly and adequately protect the interests of the Settlement Class. *See supra* Background §§ I-II.  Likewise, Plaintiffs have demonstrated their commitment to the Settlement Class, including by providing pertinent information about their experiences and accounts, searching for and providing documents and information in response to AT&T's written discovery requests, regularly communicating with their counsel about the case, and reviewing and approving the Settlement.[15]  Finally, Plaintiffs' and Settlement Class Counsel's interests are aligned with and not antagonistic to the interests of the Settlement Class.  Plaintiffs and Settlement Class Members share an interest in obtaining relief from AT&T for the alleged violations.

**B.**     **The Requirements of Rule 23(b)(3) Are Satisfied.**

In addition to the requirements of Rule 23(a), at least one of the prongs of Rule 23(b) must be satisfied.  Here, Plaintiffs seek certification under Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

"The predominance inquiry 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'"  *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (citation omitted)).  At its core, "[p]redominance is a question of efficiency."  *Butler v. Sears, Roebuck & Co.*, 702 F.3d 359, 362 (7th Cir. 2012).  The Ninth Circuit favors class treatment of claims stemming from a "common course of conduct," like those alleged in this case.  *See In re First All. Mortg. Co.*, 471 F.3d 977, 989 (9th Cir. 2006).

Common questions predominate.  The Settlement Class Members' claims all arise under the same California laws and the same alleged course of conduct.  The questions that predominate

---

[14] Heller Decl., ¶¶ 2-12; Hattis Decl., ¶¶ 2, 4-5, 10-13.
[15] Vianu Decl., ¶¶ 5-8, 12; Blum Decl., ¶¶ 5-8, 12; Gutierrez Decl., ¶¶ 5-8, 12.

1    include whether AT&T's alleged omissions were material, whether AT&T's characterization of the

2    Admin Fee on the bills was accurate, and whether AT&T's charging of the Admin Fee was unfair.

3    Moreover, under the Settlement, there will not need to be a class trial, meaning there are no

4    potential concerns about any individual issues, if any, creating trial inefficiencies.  *See Amchem*

5    *Prods., Inc. v. Windsor,* 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only

6    class certification, a district court need not inquire whether the case, if tried, would present

7    intractable management problems …for the proposal is that there be no trial.").

8        Fed. R. Civ. P. 23(b)(3)'s superiority inquiry calls for a comparative analysis of whether a

9    class action is "superior to other available methods for the fair and efficient adjudication of the

10   controversy."  *Id.* at 615; *see also Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175

11   (9th Cir. 2010) ("[T]he purpose of the superiority requirement is to assure that the class action is the

12   most efficient and effective means of resolving the controversy.").  Class treatment is superior to

13   other methods for the resolution of this case, including from a judicial efficiency perspective and

14   given the relatively small amounts of alleged damages for each individual consumer.  *See Just Film,*

15   *Inc. v. Buono*, 847 F.3d 1108, 1123 (9th Cir. 2017) (class action superior where the "risks, small

16   recovery, and relatively high costs of litigation make it unlikely that plaintiffs would individually

17   pursue their claims") (internal quotation marks omitted).  Moreover, Settlement Class Members

18   remain free to exclude themselves if they wish to do so.

19                                   **CONCLUSION**

20       For the foregoing reasons, Plaintiffs respectfully request that the Court grant final

21   approval of the Settlement.

22    Dated: August 15, 2022              Respectfully submitted,

23                                        */s/ Roger N. Heller*
                                          Roger N. Heller (SBN 215348)
24                                        rheller@lchb.com
                                          Michael W. Sobol (SBN 194857)
25                                        msobol@lchb.com
                                          Jallé Dafa (SBN 290637)
26                                        jdafa@lchb.com
                                          LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
27                                        275 Battery Street, 29th Floor
                                          San Francisco, CA 94111-3339
28                                        Telephone: 415.956.1000

1    Facsimile: 415.956.1008

2    Daniel E. Seltz (admitted pro hac vice)
     dseltz@lchb.com
3    Avery S. Halfon (admitted pro hac vice)
     ahalfon@lchb.com
4    LIEFF CABRASER HEIMANN &
     BERNSTEIN, LLP
5    250 Hudson Street, 8th Floor
     New York, NY  10013-1413
6    Telephone:  212.355.9500
     Facsimile:  212.355.9592
7
     Daniel M. Hattis (SBN 232141)
8    dan@hattislaw.com
     Paul Karl Lukacs (SBN 197007)
9    pkl@hattislaw.com
     HATTIS & LUKACS
10   400 108th Ave NE, Ste. 500
     Bellevue, WA 98004
11   Telephone: (425) 233-8650
     Facsimile:  (425) 412-7171
12
     *Settlement Class Counsel*
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2441755.4