1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                       NORTHERN DISTRICT OF CALIFORNIA

10                             San Francisco Division

11  IAN VIANU, ELIZABETH BLUM, and            Case No. 19-cv-03602-LB
    DOMINIC GUTIERREZ, on behalf of
12  themselves and all others similarly situated,
                                               **FINAL APPROVAL ORDER**
13                Plaintiffs,
                                               Re: ECF Nos. 152, 153
14           v.

15  AT&T MOBILITY LLC,

16                Defendant.

17

18                              **INTRODUCTION**

19       This is a class action against AT&T Mobility LLC. The plaintiffs — current and former

20  wireless-service customers of AT&T — allege that AT&T engages in a "bait-and-switch scheme"

21  with customers by advertising flat monthly rates for wireless-service plans but then (after

22  customers sign up) "covertly" adding a monthly administrative fee.[1] The plaintiffs' claims are for

23  violations of California's Unfair Competition Law (UCL), False Advertising Law (FAL), and

24  Consumer Legal Remedies Act (CLRA), plus permanent public injunctive relief and breach of the

25  implied covenant of good faith and fair dealing.[2] The parties settled their case and the court

26

27  [1] First Am. Compl. (FAC) – ECF No. 118 at 2 (¶ 1). Citations refer to material in the Electronic Case
    File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

28  [2] *Id.* at 27–36 (¶¶ 113–73).

approved the settlement preliminarily.[3] The plaintiffs moved for final approval of the settlement and for attorney's fees, expenses, and service awards.[4] The court held a fairness hearing on November 8, 2022. The court grants final approval to the settlement, including the fees, expenses, and service awards.

## STATEMENT

### 1.  The Lawsuit

The plaintiffs filed the lawsuit on June 20, 2019, claiming the following: (1) violations of the UCL, Cal. Bus. & Prof. Code § 17200, *et seq.*; (2) violations of the FAL, Cal. Bus. & Prof. Code § 17500, *et seq.*; (3) violations of the CLRA, Cal. Civ. Code § 1750, *et seq.*; (4) a claim for public-injunctive relief, pursuant to Cal. Civ. Code § 3422, to permanently enjoin the alleged false advertising and deception; and (5) breach of the implied covenant of good faith and fair dealing.[5] On August 16, 2019, AT&T moved to compel arbitration, but the court ultimately denied the motion.[6] AT&T later moved to dismiss, but the court denied the motion except for holding that, for statute-of-limitations purposes, the discovery rule did not apply and AT&T's conduct was not a continuing violation.[7] The plaintiffs then filed a first amended complaint on September 21, 2021, asserting the same five claims but replacing one of the named plaintiffs with two others and adding a request for damages for the CLRA claim.[8] AT&T answered the first amended complaint on October 21, 2021.[9]

At the time of settlement, AT&T had recently filed a motion to stay the case and a renewed motion to compel arbitration, prompted by the Supreme Court's grant of certiorari in *Viking River*

---

[3] Settlement Agreement, Ex. 1 to Heller Decl. in Supp. of Mot. for Prelim. Approval – ECF No. 145-1 at 14–62; Prelim. Approval Order – ECF No. 149.

[4] Mot. – ECF No. 152; Mot. for Attorney's Fees – ECF No. 153.

[5] Compl. – ECF No. 1.

[6] Mot. to Compel Arbitration – ECF No. 20; Order – ECF No. 56.

[7] Mot. to Dismiss – ECF No. 67; Order – ECF No. 88.

[8] FAC – ECF No. 118.

[9] Answer – ECF No. 124.

United States District Court
Northern District of California

*Cruises, Inc. v. Moriana*, 142 S. Ct. 1906 (2022).[10] Also at the time of settlement, the plaintiffs were close to filing their class-certification motion and planned to do so on March 23, 2022.[11]

The parties engaged in extensive discovery, including "reviewing more than 60,000 pages of internal documents," "deposing five pertinent AT&T executives/employees," reviewing and analyzing data on class members' accounts and fees paid, conducting third-party discovery of the work that two accounting firms did to assist AT&T with the administrative fee, and conducting "substantial" written discovery.[12]

The parties reached their settlement after two mediations. The first was on November 10, 2020, with Eric Green of Resolutions LLC. The second was on February 17, 2022, with Robert Meyer of JAMS. At the second mediation, the parties reached an agreement in principle to settle, and subsequently they finalized the settlement.[13] The settlement agreement was executed on May 10, 2022.[14]

On May 10, 2022, the plaintiffs moved for preliminary approval of the settlement.[15] The court held a hearing and granted the motion on June 16, 2022.[16] The plaintiffs then moved for final approval and for attorney's fees, expenses, and service awards.[17] The court held the final fairness hearing on November 3, 2022. The parties consented to magistrate-judge jurisdiction.[18]

---

[10] Heller Decl. – ECF No. 153-1 at 10 (¶ 21); Mot. for Stay – ECF No. 137; Mot. to Compel Arbitration – ECF No. 138.

[11] Mot. – ECF No. 152 at 23.

[12] Heller Decl. – ECF No. 153-1 at 12 (¶ 27).

[13] *Id.* at 12–13 (¶¶ 29–30).

[14] Settlement Agreement, Ex. 1 to Heller Decl. in Supp. of Mot. for Prelim. Approval – ECF No. 145-1 at 59–62.

[15] Mot. for Prelim. Approval – ECF No. 145.

[16] Prelim. Approval Order – ECF No. 149.

[17] Mot. – ECF No. 152; Mot. for Attorney's Fees – ECF No. 153.

[18] Consents – ECF Nos. 7, 19.

1

2. **The Proposed Settlement**

2       All defined terms in this Final Order have the same meaning as in the Settlement Agreement.

3  (The terms are capitalized below, even if that is grammatically awkward.)

4      2.1    **Settlement Class**

5      The Settlement Class is defined as follows:

> All consumers residing in California (based on the Accountholder's last known
> billing address) with a post-paid wireless service plan from AT&T Mobility LLC
> through a Consumer or Individual Responsibility User (IRU) account and who
> were charged an Administrative Fee on such account between June 20, 2015 and
> the date of preliminary settlement approval.[19]

      The definition is limited to those with consumer or IRU accounts to specify that those with

"corporate responsibility user" accounts ("persons who receive [AT&T wireless] services through

a group plan" and whose employers pay the monthly bill) are not included.[20] Also excluded are

consumers "who assert claims and seek relief in connection with the Administrative Fee and who

have provided AT&T with an unresolved written Notice of Dispute (pursuant to AT&T's

contractual dispute resolution procedures) before the Execution Date."[21] The Execution Date was

May 10, 2022.[22]

      Under the Settlement Agreement, AT&T accounts are used to determine class membership:

"[o]nly one valid Claim may be submitted for each Settlement Class Account."[23] The parties

initially estimated there to be approximately 5,425,000 Settlement Class Accounts.[24] After

preliminary approval was granted, AT&T provided its customer data to the Settlement

Administrator, and that data yielded "5,647,781 unique account numbers."[25]

---

[19] Settlement Agreement, Ex. 1 to Heller Decl. in Supp. of Mot. for Prelim. Approval – ECF No. 145-1 at 24–25 (§ II.A.30).

[20] Mot. – ECF No. 152 at 13–14 & n.3.

[21] Settlement Agreement, Ex. 1 to Heller Decl. in Supp. of Mot. for Prelim. Approval – ECF No. 145-1 at 25 (§ II.A.30).

[22] *Id.* at 57 (§ XII.S), 59–62.

[23] *Id.* at 30 (§ IV.C.2.d).

[24] *Id.* at 25 n.1.

[25] Platt Decl. – ECF No. 152-1 at 3 (¶¶ 5–6).

ORDER – No. 19-cv-03602-LB          4

United States District Court
Northern District of California

1   The deadline for exclusions and objections was September 29, 2022. The Settlement

2   Administrator received fourteen requests for exclusion.[26]

3   **2.2   Settlement Amount and Allocation**

4   The Settlement Fund consists of $14,000,000 and is fully non-reversionary.[27] The Net

5   Distributable Funds — the funds recovered by the Settlement Class — will be determined after the

6   following deductions: (1) Administrative Costs (estimated at $1,211,791.26 and including an

7   Administrative Costs Advance of $600,000); (2) attorney's fees ($3,500,000) and litigation

8   expenses ($74,993.24); and (3) service awards for the named plaintiffs ($3,500 for each).[28]

9   The Net Distributable Funds will be distributed equally to all Settlement Class Members who

10   submit a claim form. Specifically, "[a]ll Settlement Class Accounts will be eligible to submit a

11   simple claim (electronically via the Settlement Website or by mail)" and "[a]ll Settlement Class

12   Accounts that submit a valid claim by the [Claim Deadline] will receive an equal share of the Net

13   Distributable Funds."[29] The plaintiffs estimate that the individual payment amounts will be about

14   $17.25.[30]

15   The method of payment to Settlement Class Members will depend on whether they are still

16   AT&T customers. If so, payment will be automatically credited to their AT&T accounts. If not,

17   payment "will be via mailed check, with appropriate steps taken to locate updated address

18   information and re-issue checks that are returned undeliverable."[31] Any residual funds remaining

19   one year after checks are initially mailed will be treated as the unclaimed property of the relevant

20   customers, subject to the procedures of the California Unclaimed Property Law. And any

---

[26] Platt Suppl. Decl. – ECF No. 159-1 at 5 (¶ 19); Exclusion List, Ex. A to *id.* – ECF No. 159-1 at 9.

[27] Settlement Agreement, Ex. 1 to Heller Decl. in Supp. of Mot. for Prelim. Approval – ECF No. 145-1 at 27–28 (§ IV.A).

[28] *Id.* at 21 (§ II.A.4), 27–28 (§ IV.A), 50 (§ XI.A), 51 (§ XI.F); Platt Decl. – ECF No. 152-1 at 9 (¶ 31); Platt Suppl. Decl. – ECF No. 159-1 at 7 (¶ 23); Mot. for Attorney's Fees – ECF No. 153 at 8–9 (requesting $3.5 million in fees, $74,993.24 in costs, and $10,500 in service awards).

[29] Mot. – ECF No. 152 at 14; Settlement Agreement, Ex. 1 to Heller Decl. in Supp. of Mot. for Prelim. Approval – ECF No. 145-1 at 29–35 (§ IV.C); Claim Form, Ex. G to *id.* – ECF No. 145-1 at 88–89.

[30] Pls.' Update – ECF No. 162 at 2.

[31] *Id.* at 14–15; Settlement Agreement, Ex. 1 to Heller Decl. in Supp. of Mot. for Prelim. Approval – ECF No. 145-1 at 31–34 (§ IV.C.4).

United States District Court
Northern District of California

administrative costs resulting from the residual-funds process "will be paid from the residual funds, and will reduce pro rata the respective unclaimed property amounts."[32]

### 2.3   Release

"Settlement Class Members will release AT&T and its affiliates from any claims about the issues in this case. The scope of the release substantively tracks the scope of the operative [first amended complaint]."[33] Settlement Class Members also waive their rights under California Civil Code § 1542 and any similar provisions of federal or state law.[34]

### 2.4   Administration

The court previously appointed Angeion Group as the Settlement Administrator.[35] Angeion was selected through a competitive bidding process and has administered many class-action settlements.[36] The administration procedures — including the notice program and procedures for exclusions and objections — were set forth in the Settlement Agreement.[37]

Among other duties, Angeion administered the notice program.[38] After receiving AT&T's customer data, Angeion sent notice to the Settlement Class Members on July 29, 2022, through a combination of email, mailed postcard, text message (from AT&T), social media advertising

---

[32] Mot. – ECF No. 152 at 15 & n.5; Settlement Agreement, Ex. 1 to Heller Decl. in Supp. of Mot. for Prelim. Approval – ECF No. 145-1 at 34–35 (§ IV.C.5).

[33] Mot. – ECF No. 152 at 16 & n.6; Settlement Agreement, Ex. 1 to Heller Decl. in Supp. of Mot. for Prelim. Approval – ECF No. 145-1 at 44–47 (§ IX).

[34] Settlement Agreement, Ex. 1 to Heller Decl. in Supp. of Mot. for Prelim. Approval – ECF No. 145-1 at 46 (§ IX.E).

[35] Prelim. Approval Order – ECF No. 149 at 11.

[36] Mot. – ECF No. 152 at 13; Platt Decl. – ECF No. 152-1 at 3 (¶ 3); Weisbrot Decl. in Supp. of Mot. for Prelim. Approval – ECF No. 145-6 at 2–3 (¶¶ 1–10); Angeion Group Resume, Ex. A to *id.* – ECF No. 145-6 at 11–31.

[37] Settlement Agreement, Ex. 1 to Heller Decl. in Supp. of Mot. for Prelim. Approval – ECF No. 145-1 at 36–44 (§§ VI–VIII).

[38] *Id.* at 35–41 (§§ V–VI); Platt Decl. – ECF No. 152-1 at 3 (¶ 4); Postcard Notice, Ex. 3 to *id.* – ECF No. 152-1 at 20–22; Email Notice, Ex. 4 to *id.* – ECF No. 152-1 at 23–26; Reminder Email Notice, Ex. 5 to *id.* – ECF No. 152-1 at 27–28; Facebook Advertisements, Ex. 6 to *id.* – ECF No. 152-1 at 29–32; CLRA Notice, Ex. 7 to *id.* – ECF No. 152-1 at 33–34.

United States District Court
Northern District of California

(targeted directly at individual class members), newspaper publication in the California regional edition of USA Today (pursuant to the CLRA), a settlement website, and a toll-free hotline.[39]

The results of the direct notice program were as follows. Angeion mailed the Postcard Notice (after obtaining updated address information) to 511,879 addresses, and 276 were returned undeliverable as of August 15, 2022. Those returned undeliverable were re-mailed after address-verification searches.[40] "In total, Angeion . . . mailed 911,386 Postcard Notices," with a successful delivery rate of "approximately 96.5%."[41] Angeion also disseminated 4,876,533 Email Notices, resending the notice to those email addresses to which delivery was initially unsuccessful, with an ultimate successful delivery rate of 93.97%.[42] AT&T successfully transmitted 2,987,198 SMS Notices, and sent 2,833,812 Reminder SMS Notices on October 12, 2022.[43] Additional Postcard Notices were sent to class members for whom the Email and SMS Notices were unsuccessful.[44] On August 13, 2022, Angeion transmitted 4,608,279 Reminder Email Notices to class members who had not yet submitted a claim form.[45] Finally, on October 17, 2022, Angeion sent the second Reminder Email Notice to 4,650,410 Class Members.[46]

On July 29, 2022, as the initial email notice was ongoing, the Settlement Website host detected suspicious traffic and blocked all incoming traffic for about 165 minutes. Angeion "promptly" paused the email notice process and, one day later, re-sent the 2,539,876 Email Notices that had been transmitted before the pause. Those re-sent Email Notices included an additional statement at the top that website access had been restored after the temporary outage.[47]

---

[39] Mot. – ECF No. 152 at 16; Platt Decl. – ECF No. 152-1 at 3–4 (¶¶ 6–8), 5–8 (¶ 11–27); Platt Suppl. Decl. – ECF No. 159-1 at 2–5 (¶¶ 6–17).

[40] Platt Decl. – ECF No. 152-1 at 5 (¶ 11–13).

[41] Platt Suppl. Decl. – ECF No. 159-1 at 3 (¶¶ 9–10).

[42] Platt Decl. – ECF No. 152-1 at 5–6 (¶ 14).

[43] *Id.* at 4 (¶ 8), 6 (¶¶ 16–17); Platt Suppl. Decl. – ECF No. 159-1 at 3–4 (¶ 12); Mot. – ECF No. 152 at 17.

[44] Platt Decl. – ECF No. 152-1 at 6–7 (¶ 18); Platt Suppl. Decl. – ECF No. 159-1 at 3 (¶ 8).

[45] Platt Decl. – ECF No. 152-1 at 7 (¶ 19).

[46] Platt Suppl. Decl. – ECF No. 159-1 at 4 (¶ 13).

[47] Platt Decl. – ECF No. 152-1 at 6 (¶ 15); Mot. – ECF No. 152 at 16 n.7.

1    The deadline for Class Members to submit a claim was October 29, 2022. As of November 2,

2    2022, Angeion had "validated 522,948 claims," and it was expected that once the validation

3    process was complete, the total number of valid claims would be "approximately 532,000." Thus,

4    the claims rate would be about 9.42%.[48] Additionally, two objections to the settlement were filed

5    with the court.[49]

6                                         **ANALYSIS**

7    **1.  Jurisdiction**

8        The court has diversity jurisdiction under the Class Action Fairness Act (CAFA). 28 U.S.C. §

9    1332(d)(2).

10

11   **2.  Certification of Settlement Class**

12       The court certifies the Settlement Class under Rule 23(b)(3) for settlement purposes only, as in

13   the preliminary-approval order.

14       The propriety of class certification is determined under Federal Rule of Civil Procedure 23(a)

15   and (b). When parties enter into a settlement before the court certifies a class, the court "must pay

16   'undiluted, even heightened, attention' to class certification requirements" because the court will

17   not have the opportunity to adjust the class based on information revealed at trial. *Staton v. Boeing

18   Co.*, 327 F.3d 938, 952–53 (9th Cir. 2003) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591,

19   620 (1997)); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998), *overruled on other

20   grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).

21       Class certification requires the following: (1) the class is so numerous that joinder of all

22   members individually is "impracticable;" (2) there are questions of law or fact common to the

23   class; (3) the claims or defenses of the class representatives are typical of the claims or defenses of

24   the class; and (4) the person representing the class will fairly and adequately protect the interests

25   of all class members. Fed. R. Civ. P. 23(a); *Staton*, 327 F.3d at 953. Also, the common questions of

26

27   [48] Pls.' Update – ECF No. 162 at 2.

28   [49] Objs. – ECF Nos. 150–51, 156–57.

United States District Court
Northern District of California

1   law or fact must predominate over any questions affecting only individual class members, and the

2   class action must be superior to other available methods for fairly and efficiently adjudicating the

3   controversy. Fed. R. Civ. P. 23(b)(3).

4       The court finds (for settlement purposes only) that the settlement class meets the Rule 23(a)

5   prerequisites of numerosity, commonality, typicality, and adequacy. Also, under Rule 23(b)(3) (and

6   for settlement purposes only), common questions predominate over any questions affecting only

7   individual members, and a class action is superior to other available methods.

8       First, with over five million members, the class is numerous.

9       Second, there are questions of law and fact common to the class. The case is about an

10   administrative fee applied uniformly to all class members' AT&T accounts, thereby causing the

11   same alleged injury to all class members. Common questions include "whether AT&T's alleged

12   omissions were material, whether AT&T's characterization of the [administrative fee] on the bills

13   was accurate, and whether AT&T's charging of the [administrative fee] was unfair."[50] Thus, the

14   claims depend on common contentions, the determination of which "will resolve an issue that is

15   central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564

16   U.S. 338, 350 (2011); *Betorina v. Randstad US, L.P.*, No. 15-cv-03646-EMC, 2017 WL 1278758,

17   at *4 (N.D. Cal. Apr. 6, 2017). Furthermore, these common questions predominate over any

18   questions affecting only individual members.

19       Third, the claims of the representative parties are typical of the claims of the class. The

20   representative parties and all class members allege the same violations, based on similar facts. All

21   representatives possess the same interest and suffered the same injury as the rest of the class. *See*

22   *Betorina*, 2017 WL 1278758, at *4.

23       Fourth, the representative parties will fairly and adequately protect the interests of the class.

24   Two factors are relevant to the adequacy determination: (1) whether the named plaintiffs and their

25   counsel have potential conflicts with the other class members; and (2) whether counsel chosen by

26   the representative party is qualified, experienced, and able to vigorously conduct the litigation. *In*

---

[50] Mot. – ECF No. 152 at 26.

United States District Court
Northern District of California

*re Hyundai and Kia Fuel Econ. Litig.*, 926 F.3d 539, 566 (9th Cir. 2019) (citing *Hanlon*, 150 F.3d at 1020). Here, the named plaintiffs have shared claims and interests with the class (and no conflicts of interest), and they retained qualified and competent counsel who have prosecuted the case vigorously.[51] *See id.*; *Loc. Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001); *Hanlon*, 150 F.3d at 1021–22.

Finally, a class action is superior to other available methods for fairly and efficiently adjudicating the controversy, especially given "the relatively small amounts of alleged damages for each individual consumer."[52] Fed. R. Civ. P. 23(b)(3).

In sum, the prerequisites of Rule 23(a) and (b)(3) are met. The court certifies the class under Rule 23(b)(3) for settlement purposes only.

### 3.  Approval of Settlement

### 3.1  Whether the Settlement is Fair, Reasonable, and Adequate

A court may approve a proposed class-action settlement only "after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether":

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). These factors "are substantially similar to those articulated" in *Hanlon*, 150 F. 3d at 1027. *Student A v. Berkeley Unified Sch. Dist.*, No. 17-cv-02510-JST, 2021 WL 6332353, at *2 n.2 (N.D. Cal. July 8, 2021).

---

[51] *Id.* at 26–27; Heller Decl. & Exs. – ECF No. 153-1; Hattis Decl. & Exs. – ECF No. 153-2; Vianu Decl. – ECF No. 153-3; Blum Decl. – ECF No. 153-4; Gutierrez Decl. – ECF No. 153-5.

[52] Mot. – ECF No. 152 at 28.

United States District Court
Northern District of California

In *Hanlon*, the Ninth Circuit identified factors relevant to assessing a settlement proposal: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class-action status throughout trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceeding; (6) the experience and views of counsel; (7) the presence of a government participant; and (8) the reaction of class members to the proposed settlement. 150 F.3d at 1026.

When parties "negotiate a settlement agreement before the class has been certified, settlement approval requires a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)." *Roes, 1–2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048 (9th Cir. 2019) (cleaned up). "Specifically, such settlement agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *Id.* at 1048–49 (cleaned up).

The court has evaluated the Settlement Agreement for overall fairness and concludes that it is free of collusion and approval is appropriate.

First, the settlement provides good value. The plaintiffs offer two methods of assessing the settlement value, both informed by the extensive discovery conducted in this case. For one, the estimated $17.25 individual payment amounts constitute a refund of about six months of the average administrative fees charged by AT&T. "As an additional point of comparison," the estimated individual payment amounts constitute a refund of approximately eight percent "of the average total [administrative] fees paid during the class period."[53] These figures reflect a substantial recovery, especially given that they rely on the net rather than gross settlement amount. They are also comparable to the value of the court-approved settlement in another class action alleging misleading advertising by AT&T.[54] Order, *Roberts v. AT&T Mobility LLC*, No. 15-cv-03418-EMC (N.D. Cal. Aug. 20, 2021), ECF No. 215.

---

[53] *Id.* at 20–21; Reply – ECF No. 159 at 3 n.2; Pls.' Update – ECF No. 162 at 2.

[54] Chart Comparing Cases, Ex. 3 to Heller Decl. in Supp. of Mot. for Prelim. Approval – ECF No. 145-1 at 270–71.

1    Second, the value of the settlement is significant compared to the litigation risks and

2    uncertainties. At the time of settlement, AT&T was vigorously contesting the case and had filed

3    motions to stay the case and compel arbitration, prompted by the Supreme Court's grant of

4    certiorari in *Viking River Cruises, Inc. v. Moriana*, 142 S. Ct. 1906 (2022).[55] Following that

5    decision, litigants are contesting whether California's *McGill* rule — the basis for the court's

6    denial of AT&T's first motion to compel arbitration in this case — is still viable.[56]

7    Also at the time of settlement, liability "remain[ed] very much disputed" and AT&T planned

8    to assert various arguments and defenses, including that it adequately discloses the administrative

9    fee to prospective customers.[57] In addition, the plaintiffs had not yet obtained class certification.

10   Moreover, settlement allows payment to the Class Members now, before costly and protracted

11   litigation. When viewed against the risk of no recovery, this settlement is fair. *Dyer v. Wells Fargo

12   Bank, N.A.*, 303 F.R.D. 326, 331 (N.D. Cal. 2014) (litigation risks, including maintaining class-

13   action status, favor settlement approval).

14   Third, a class action allows class members — who otherwise would not pursue their claims

15   individually because costs would exceed recoveries — to obtain relief.

16   Fourth, the settlement is the product of serious, non-collusive, arm's-length negotiations and

17   was reached after two mediations with experienced mediators.

18   Finally, with only two objections and fourteen exclusions, the reaction of the class is

19   favorable. A court "may appropriately infer that a class action settlement is fair, adequate, and

20   reasonable when few class members object to it." *Ching v. Siemens Indus.*, No. 11-cv-04838-MEJ,

21   2014 WL 2926210, at *6 (N.D. Cal. June 27, 2014) (cleaned up); *cf. Staton*, 327 F.3d at 959 (the

22   court should consider "reaction of the class members to the proposed settlement").

---

[55] Mot. for Stay – ECF No. 137; Mot. to Compel Arbitration – ECF No. 138.

[56] Mot. – ECF No. 152 at 21.

[57] *Id.*

*United States District Court*
*Northern District of California*

### 3.2   Resolution of Objections

The objection deadline was September 29, 2022, and the notices informed class members of the objection procedures.[58] There are two objectors and two filings that did not comply with the procedural requirements for objections.[59] They all lack merit.

"Any class member may object" to a proposed class-action settlement. Fed. R. Civ. P. 23(e)(5)(A). The objection must (1) "state whether it applies only to the objector, to a specific subset of the class, or to the entire class" and (2) "state with specificity the grounds for the objection." *Id.* Objectors also must have standing to object, and only "aggrieved" class members have standing. *Glasser v. Volkswagen of Am., Inc.*, 645 F.3d 1084, 1088 (9th Cir. 2011). Thus, "[i]f [effecting the objectors' requested change] would not actually benefit the objecting class member, the class member lacks standing." *Id.* (cleaned up). Objectors also must comply with the procedural requirements for objecting, as set forth in the settlement agreement or a prior court order. *See, e.g.*, *Perkins v. Linkedin Corp.*, No. 13-CV-04303-LHK, 2016 WL 613255, at *3 (N.D. Cal. Feb. 16, 2016); *In re Apple Inc. Sec. Litig.*, No. 5:06-cv-05208-JF (HRL), 2011 WL 1877988, at *3 n.4 (N.D. Cal. May 17, 2011).

First, Jennifer Wilson objected on the ground that the recovery is insufficient, asserting that the individual payment amounts are the "equivalent of nothing."[60] But as explained above, the recoveries here are adequate to justify approval. The settlement compensates class members for about six months of the average administrative fees charged by AT&T. And even if "the settlement could have been better," it can still be "fair, reasonable [and] adequate," because "[s]ettlement is the offspring of compromise." *Hanlon*, 150 F.3d at 1027.

Second, Eric Hughes objected to "the lack of any change in AT&T's current business practices." Specifically, he objected that the settlement does not address (1) AT&T's ability to charge the administrative fee, (2) "AT&T's lack of transparency about the purpose of the fee," (3)

---

[58] Platt Decl. – ECF No. 152-1 at 8–9 (¶ 30); *see, e.g.*, Email Notice, Ex. 4 to *id.* – ECF No. 152-1 at 25–26.

[59] Objs. – ECF Nos. 150–51, 156–57.

[60] Wilson Obj. – ECF No. 150.

United States District Court
Northern District of California

the fee's location on the billing statement, and (4) AT&T's "deceptive description" of the fee on its website. As to the allegedly deceptive description, Mr. Hughes pointed out that AT&T prefaces its list of the expenses the fee helps it to recover with the language "including but not limited to," thus allowing AT&T to "include any business expense[s] it desires" in the future. He also asserted that AT&T's billing statements are deceptive because they group the administrative fee with fees that "various levels of government require AT&T to pay."[61]

Mr. Hughes's objection is to the settlement's lack of injunctive relief, or in other words the settlement's adequacy. The settlement is a compromise, though — it takes into account the risks of continued litigation, including that of no recovery at all. Thus, rather than providing permanent injunctive relief plus compensation to the class, the settlement provides compensation for about six months of administrative fees. This partial recovery is reasonable. *See, e.g.*, *Alvarez v. Sirius XM Radio Inc.*, No. CV 18-8605 JVS(SSX), 2021 WL 1234878, at *7 (C.D. Cal. Feb. 8, 2021) (overruling an objection to the defendant's continued ability to charge a fee after the settlement, because "a full recovery is often not possible in a settlement — by its very nature a compromise — and a partial recovery does not render a settlement unreasonable").

Mr. Hughes also objected to the release and waiver provisions in the Settlement, taking issue with the settlement's effect on his "ability to legally challenge any future changes made to the [administrative] fee."[62] But the Settlement Agreement provided class members with the opportunity to exclude themselves from the settlement and thereby preserve their right to sue AT&T.[63] And even for those class members who did not exclude themselves, the release does not protect AT&T for any hypothetical future change to the administrative fee. Instead, the release covers only claims "arising from or relating to the allegations in the Complaint or First Amended Complaint in this Action."[64]

---

[61] Hughes Obj. – ECF No. 156.

[62] *Id.* at 1.

[63] Settlement Agreement, Ex. 1 to Heller Decl. in Supp. of Mot. for Prelim. Approval – ECF No. 145-1 at 41–43 (§ VII).

[64] *Id.* at 44–45 (§ IX.B).

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Third, two filings on the docket — by Stephanie August and David Ross — raised concerns about the functioning of the website.[65] They did not comply with the procedural requirements for objecting but the Settlement Administrator in any event addressed the issues.[66] *Perkins v. Linkedin Corp.*, 2016 WL 613255, at *3. Mr. Ross was concerned that the hyperlinks in the Email Notice were fake, and the Administrator contacted him to explain that they were legitimate.[67] Ms. August raised issues about whether the website was functioning and was ADA compliant.[68] The Administrator worked with her to resolve the issues, including setting up a call with her to troubleshoot the issue, ultimately finding that her browser security settings were blocking a certain file with JavaScript enabled. It then confirmed with her that it received her claim through U.S. Mail.[69] This is sufficient. Also, one court has held that a settlement website is not required to be ADA compliant because it is not "an enumerated place of public accommodation" under the Act, which covers only "actual, physical places." *Broomfield v. Craft Brew All., Inc.*, No. 17-cv-01027-BLF, 2020 WL 1972505, at *19 (N.D. Cal. Feb. 5, 2020) (noting that even if the ADA applied, the website likely complied). Here, given the declaration by the Settlement Administrator about its efforts to address the issue, it also seems likely that the website, like the website in *Broomfield*, is ADA compliant and the issue was related only to Ms. August's browser settings.[70]

In sum, viewed as a whole, the proposed settlement is sufficiently "fair, adequate, and reasonable." *See Officers for Just. v. Civ. Serv. Comm'n of City and Cnty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982). The court approves the settlement.

[65] Ross Obj. – ECF No. 151; August Obj. – ECF No. 157.

[66] Prelim. Approval Order – ECF No. 149 at 14 & n.56; Settlement Agreement, Ex. 1 to Heller Decl. in Supp. of Mot. for Prelim. Approval – ECF No. 145-1 at 43 (§ VIII.A).

[67] Ross Obj. – ECF No. 151; Platt Suppl. Decl. – ECF No. 159-1 at 5–6 (¶ 21).

[68] August Obj. – ECF No. 157.

[69] Platt Suppl. Decl. – ECF No. 159-1 at 6 (¶ 22).

[70] *Id.*

1    **4.   Attorney's Fees and Expenses**

2        Class Counsel moved for $3,500,000 in attorney's fees (twenty-five percent of the Settlement

3    Fund) and $74,993.24 in expenses.[71] The court awards both amounts.

4        "In a certified class action, the court may award reasonable attorney's fees and nontaxable

5    costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).

6        The court must ensure that the award is reasonable. *In re Bluetooth Headset Prods. Liab. Litig.*,

7    654 F.3d 935, 941 (9th Cir. 2011). The court is not bound by the parties' settlement agreement as to

8    the amount of fees. *Id.* at 941–43. The court must review fee awards with special rigor:

9            Because in common fund cases the relationship between plaintiffs and their attorneys
             turns adversarial at the fee-setting stage, courts have stressed that when awarding

10           attorneys' fees from a common fund, the district court must assume the role of
             fiduciary for the class plaintiffs. Accordingly, fee applications must be closely

11           scrutinized. Rubber-stamp approval, even in the absence of objections, is improper.

12   *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052 (9th Cir. 2002) (cleaned up).

13       When counsel recovers a common fund that confers a "substantial benefit" on a class of

14   beneficiaries, counsel is "entitled to recover their attorney's fees from the fund." *Fischel v.*

15   *Equitable Life Assurance Soc'y of the U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002). In common-fund

16   cases, courts may calculate a fee award under either the "lodestar" or "percentage of the fund"

17   method. *Id.*; *Hanlon*, 150 F.3d at 1029.

18       The "percentage of the fund" method is typically used. The Ninth Circuit has established a

19   "benchmark" that fees should equal twenty-five percent of the settlement, although courts diverge

20   from the benchmark based on factors that include "the results obtained, risk undertaken by

21   counsel, complexity of the issues, length of the professional relationship, the market rate, and

22   awards in similar cases." *Morales v. Stevco, Inc.*, No. CIV-F-09-0704-AWI-JLT, 2013 WL

23   1222058, at *2 (E.D. Cal. Mar. 25, 2013); *Morris v. Lifescan, Inc.*, 54 F. App'x 663, 664 (9th Cir.

24   2003) (affirming thirty-three-percent fee award); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379

25   (9th Cir. 1995) (same).

26       Ninth Circuit precedent also requires courts to award class counsel fees based on the total

27

28   ───────────────
     [71] Mot. for Attorney's Fees – ECF No. 153.

1    benefits made available to class members rather than the actual amount ultimately claimed. *Young*

2    *v. Polo Retail, LLC*, No. C-02-4546-VRW, 2007 WL 951821, at *8 (N.D. Cal. Mar. 28, 2007)

3    ("district court abused its discretion in basing attorney fee award on actual distribution to class"

4    instead of amount made available) (citing *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026,

5    1027 (9th Cir. 1997)).

6        If the court applies the percentage method, it then typically calculates the lodestar as a "cross-

7    check to assess the reasonableness of the percentage award." *See, e.g.*, *Weeks v. Kellogg Co.*, No.

8    CV-09-8102-MMM-RZx, 2013 WL 6531177, at *25 (C.D. Cal. Nov. 23, 2013); *see also Serrano*

9    *v. Priest*, 20 Cal. 3d 25, 48–49 (1977); *Fed-Mart Corp. v. Pell Enters.*, 111 Cal. App. 3d 215, 226–

10   27 (1980). "The lodestar . . . is produced by multiplying the number of hours reasonably expended

11   by counsel by a reasonable hourly rate." *Lealao v. Beneficial Cal., Inc.*, 82 Cal. App. 4th 19, 26

12   (2000). "Once the court has fixed the lodestar, it may increase or decrease that amount by applying

13   a positive or negative 'multiplier' to take into account a variety of other factors, including the

14   quality of the representation, the novelty and complexity of the issues, the results obtained, and the

15   contingent risk presented." *Id.*; *accord Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 503–06

16   (2016) (holding, under California law, that "the percentage method to calculate [attorney's] fee[s]

17   in a common fund case" is appropriate and the trial court has "discretion to conduct a lodestar

18   cross-check on a percentage fee").

19       Based on counsel's declarations and the results they achieved in this litigation, the requested

20   fees are reasonable and appropriate as a percentage of the common fund, supported by a lodestar

21   cross-check (with the plaintiffs' suggested multiplier). First, Class Counsel obtained substantial

22   benefits for the class. The expected payment amounts represent a refund of about six months of

23   the average administrative fees charged by AT&T, or eight percent of the average total fees paid

24   during the class period. Second, Class Counsel skillfully and vigorously litigated the case, against

25   a skillful and vigorous defense, for more than three years. Third, there were significant risks

26   involved with the litigation.[72]

27

28   [72] *Id.* at 15–19.

United States District Court
Northern District of California

1    As for the lodestar cross-check, the billing rates are normal and customary for timekeepers

2 with similar qualifications and experience in the relevant market. *Cuviello v. Feld Ent., Inc.*, No.

3 13-cv-04951-BLF, 2015 WL 154197, at *2 (N.D. Cal. Jan. 12, 2015) ("The Court has broad

4 discretion in setting the reasonable hourly rates used in the lodestar calculation."); *Ketchum v.*

5 *Moses*, 24 Cal. 4th 1122, 1132 (2001) (court can rely on its own experience); *accord Open Source*

6 *Sec. v. Perens*, 803 F. App'x 73, 77 (9th Cir. 2020). Class Counsel also submitted a sufficient

7 breakdown of their hours to reach a conclusion about the lodestar and the positive multiplier.[73]

8 The modest multiplier falls within the range of multipliers that courts approve. *Vizcaino*, 290 F.3d

9 at 1051 n.6 ("Multiples ranging from one to four are frequently awarded in common fund cases

10 when the lodestar method is applied.") (cleaned up).

11    The court thus grants Class Counsel's request for fees of twenty-five percent of the Settlement

12 Fund, in line with comparable cases.[74]

13    Class Counsel also are entitled to reimbursement of reasonable out-of-pocket expenses. Fed.

14 R. Civ. P. 23(h); *see Harris v. Marhoefer*, 24 F.3d 16, 20 (9th Cir. 1994) (attorneys may recover

15 reasonable expenses that would typically be billed to paying clients in non-contingency matters);

16 *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995) (approving reasonable

17 expenses in class action settlement). Compensable expenses include "nontaxable costs that are

18 authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).

19    The record establishes sufficiently the reasonableness of the requested expenses.[75] The court

20 approves the requested amount of $74,993.24.

21

22

23

24

---

[73] *Id.* at 20; Heller Decl. – ECF No. 153-1 at 16–19 (¶¶ 47–54); Lieff Cabraser Timekeeper Summary,
25 Ex. A to *id.* – ECF No. 153-1 at 21–23; Hattis Decl. – ECF No. 153-2 at 3–5 (¶¶ 8–9, 12–13); Hattis &
26 Lukacs Timekeeper Summary, Ex. A to *id.* – ECF No. 153-2 at 7–8.

[74] Mot. for Attorney's Fees – ECF No. 153 at 19 (collecting cases).

27 [75] *Id.* at 22–23; Heller Decl. – ECF No. 153-1 at 19 (¶¶ 52–54); Lieff Cabraser Expenses Summary,
Ex. B to *id.* – ECF No. 153-2 at 24–25; Hattis Decl. – ECF No. 153-2 at 5 (¶ 15); Hattis & Lukacs
28 Expenses Summary, Ex. B to *id.* – ECF No. 153-2 at 9–10.

United States District Court
Northern District of California

**5.   Appointment of Class Representative, Class Counsel, and Settlement Administrator**

  The court confirms its appointment of Ian Vianu, Elizabeth Blum, and Dominic Gutierrez as class representatives, for settlement purposes only. They have claims that are typical of members of the class generally, and they are adequate representatives of the other members of the class.[76]

  The court confirms its appointment of Angeion Group as the Settlement Administrator. Angeion was selected through a competitive bidding process and has administered many class-action settlements.[77] Angeion is entitled to $1,211,791.26, even though that is an increase over the initial estimate of $842,057, because of unanticipated but reasonable Postcard Notice costs.[78]

  The court also confirms its appointment of Settlement Class Counsel: Roger N. Heller, Michael W. Sobol, and Daniel E. Seltz of Lieff, Cabraser, Heimann & Bernstein, LLP; and Daniel M. Hattis of Hattis & Lukacs. They have sufficient qualifications, experience, and expertise in prosecuting class actions.[79]

**6.   Class Notice**

  As described above, the Settlement Administrator provided notice to the class in the form the court approved previously. The notice met all legal prerequisites: it was the best notice practicable, satisfied the requirements of Rule 23(c)(2), adequately advised class members of their rights under the settlement agreement, met the requirements of due process, and complied with the court's order regarding court notice. The forms of notice fairly, plainly, accurately, and reasonably provided class members with all required information, including (among other things): (1) a summary of the lawsuit and claims asserted; (2) a clear definition of the class; (3) a description of

---

[76] FAC – ECF No. 118 at 18–25 (¶¶ 67–101); Vianu Decl. – ECF No. 153-3; Blum Decl. – ECF No. 153-4; Gutierrez Decl. – ECF No. 153-5.

[77] Mot. – ECF No. 152 at 13; Platt Decl. – ECF No. 152-1 at 3 (¶ 3); Weisbrot Decl. in Supp. of Mot. for Prelim. Approval – ECF No. 145-6 at 2–3 (¶¶ 1–10); Angeion Group Resume, Ex. A to *id.* – ECF No. 145-6 at 11–31.

[78] Platt Decl. – ECF No. 152-1 at 9 (¶ 31); Platt Suppl. Decl. – ECF No. 159-1 at 7 (¶ 23).

[79] Heller Decl. – ECF No. 153-1 at 3–7 (¶¶ 2–6, 9); Lieff Cabraser Firm Resume, Ex. 2 to Heller Decl. in Supp. of Mot. for Prelim. Approval – ECF No. 145-1 at 114–268; Hattis Decl. – ECF No. 153-2 at 3–5 (¶¶ 2, 4–5, 10–11).

United States District Court
Northern District of California

the material terms of the settlement, including the estimated payment; (4) a disclosure of the release of the claims; (5) the date, time, and location of the final fairness hearing; and (6) the identity of class counsel and the provisions for attorney's fees, costs, and class-representative service awards.[80]

### 7. Service Awards

The plaintiffs moved for service awards of $3,500 for each class representative.[81] The court grants the motion.

District courts must evaluate proposed awards individually, using relevant factors that include "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation." *Staton*, 327 F.3d at 977 (cleaned up). "Such awards are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009) (cleaned up). The Ninth Circuit has "noted that in some cases incentive awards may be proper but [has] cautioned that awarding them should not become routine practice." *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013) (discussing *Staton*, 327 F.3d at 975–78). District courts "must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives." *Id.* at 1164. In this district, a $5,000 incentive award is presumptively reasonable. *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 266 (N.D. Cal. 2015) (collecting cases).

---

[80] Settlement Agreement, Ex. 1 to Heller Decl. in Supp. of Mot. for Prelim. Approval – ECF No. 145-1 at 36–41 (§ VI); Platt Decl. – ECF No. 152-1 at 3–8 (¶¶ 5–27); Postcard Notice, Ex. 3 to *id.* – ECF No. 152-1 at 20–22; Email Notice, Ex. 4 to *id.* – ECF No. 152-1 at 23–26; Reminder Email Notice, Ex. 5 to *id.* – ECF No. 152-1 at 27–28; Facebook Advertisements, Ex. 6 to *id.* – ECF No. 152-1 at 29–32; CLRA Notice, Ex. 7 to *id.* – ECF No. 152-1 at 33–34; SMS Notice, Ex. D to Settlement Agreement – ECF No. 145-1 at 82; Reminder SMS Notice, Ex. F to *id.* – ECF No. 145-1 at 86.

[81] Mot. for Attorney's Fees – ECF No. 153.

The record establishes sufficiently the efforts of the three class representatives.[82] The court approves awards of $3,500 for each.

### 8.  Compliance with CAFA

On May 20, 2022, the Settlement Administrator provided the notices required by CAFA, 28 U.S.C. § 1715, to the appropriate officials. Updated notices were sent on July 6, 2022.[83] The court's final approval hearing was more than ninety days after service, as required by CAFA.

### 9.  Ancillary Items

The Parties and Settlement Administrator are directed to consummate and implement the Settlement Agreement in accordance with its terms, including distributing settlement payments to the Settlement Class Members and other disbursements from the Settlement Consideration as provided by the Settlement Agreement.[84]

This Action is hereby dismissed with prejudice and without costs to any Party, other than as specified in the Settlement Agreement and this Final Order.[85]

Each of the Settlement Class Members and Releasing Parties have, by operation of this Final Order, released all Released Claims against all Released Parties. The terms of the Settlement Agreement, which are incorporated by reference into this Final Order, will have res judicata and other preclusive effects as to the Released Claims as against the Released Parties. Thus, the Released Parties may file the Settlement Agreement and/or this Final Order in any other litigation to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good-faith settlement, judgment bar or reduction, or any similar defense or counterclaim.[86]

---

[82] Vianu Decl. – ECF No. 153-3; Blum Decl. – ECF No. 153-4; Gutierrez Decl. – ECF No. 153-5.

[83] Platt Decl. – ECF No. 152-1 at 4–5 (¶¶ 9–10); CAFA Notice, Ex. 1 to *id*. – ECF No. 152-1 at 10–16; July 6 CAFA Update, Ex. 2 to *id*. – ECF No. 152-1 at 17–19.

[84] Proposed Final Order – ECF No. 160 at 6 (¶ 15).

[85] *Id.* (¶ 16).

[86] *Id.* at 6–7 (¶ 17).

United States District Court
Northern District of California

1      All Settlement Class Members and Releasing Parties have covenanted not to sue any Released

2  Party with respect to any Released Claim, and are permanently barred and enjoined from

3  instituting, commencing, prosecuting, continuing, or asserting any Released Claim against any

4  Released Party. This permanent bar and injunction is necessary to protect and effectuate the

5  Settlement Agreement and this Final Order, and the court's authority to effectuate the Settlement,

6  and is ordered in aid of the court's jurisdiction and to protect its judgments. Notwithstanding the

7  foregoing, nothing in this Final Order will preclude an action to enforce the terms of the

8  Settlement Agreement.[87]

9      Pursuant to the terms of the Settlement Agreement, the plaintiffs, Settlement Class Counsel,

10 AT&T, and AT&T's Counsel have released each other from any and all claims and requests for

11 relief relating in any way to any Party or counsel's conduct in this Action, including but not

12 limited to any claims of abuse of process, malicious prosecution, or any other claims or requests

13 for relief arising out of the institution, prosecution, assertion or resolution of this Action, including

14 claims for attorneys' fees, costs of suit, or sanctions of any kind, except as otherwise expressly set

15 forth in the Settlement Agreement.[88]

16      Without affecting the finality of this Final Order in any way, the court retains jurisdiction over:

17 (a) implementation of the Settlement Agreement and the terms of the Settlement Agreement; (b)

18 Settlement Class Counsel's motion for attorneys' fees, costs, and service awards; (c) distribution

19 of the settlement consideration, Settlement Class Counsel attorneys' fees and expenses, and the

20 service awards; and (d) all other proceedings related to the implementation, interpretation,

21 validity, administration, consummation, and enforcement of the terms of the Settlement

22 Agreement. The time to appeal from this Final Order commences upon its entry.[89]

23      In the event that the Settlement Agreement Effective Date does not occur, this Final Order will

24 be rendered null and void and will be vacated, nunc pro tunc, as set forth in the court's Preliminary

25

26 ――――――――――――――

27 [87] *Id.* at 7 (¶ 18).

[88] *Id.* (¶ 19).

28 [89] *Id.* (¶ 21).

United States District Court
Northern District of California

1   Approval Order, except insofar as expressly provided to the contrary in the Settlement Agreement,

2   and without prejudice to the status quo ante rights of the plaintiffs, Settlement Class Members, and

3   AT&T.[90]

4       This Final Order, the Preliminary Approval Order, the Settlement Agreement, and all

5   negotiations, statements, agreements, and proceedings relating to the Settlement Agreement, or

6   any matters arising in connection with settlement negotiations, proceedings, or agreements, cannot

7   constitute, be described as, construed as, offered or received against AT&T or the other Released

8   Parties as evidence or an admission of: (a) the truth of any fact alleged by Plaintiffs in the Action;

9   (b) that any person suffered compensable harm or is entitled to any relief with respect to the

10  matters asserted in this Action; (c) any liability, negligence, fault, or wrongdoing by AT&T or the

11  Released Parties, including any of its affiliates, agents, representatives, vendors, or any other

12  person or entity acting on its behalf; (d) that this Action or any other action was or may be

13  properly certified as a class action for litigation, nonsettlement purposes; (e) the arbitrability of the

14  Action as to the plaintiffs and Settlement Class Members; or (f) the enforceability of any

15  applicable contractual or statutory limitations period to limit any relief.[91]

16

17                                      **CONCLUSION**

18      The court approves the class-action settlement, including attorney's fees and expenses,

19  administrative costs, and service awards. To ensure that it captured all the matters the party

20  wanted captured, the court will separately enter the proposed judgment filed at ECF No. 160.

21      This disposes of ECF Nos. 152 and 153.

22      **IT IS SO ORDERED.**

23      Dated: November 8, 2022

24                                      _____

25                                      LAUREL BEELER
                                        United States Magistrate Judge
26

27  [90] *Id.* at 8 (¶ 22).

28  [91] *Id.* (¶ 23).

United States District Court
Northern District of California